## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

RICHARD L. WILLIAMS and         :
MICHAEL E. PETERS,              :
                                     :
                Plaintiffs,           :
                                       :
           v.                      :          Civil Action No.:  05-0435 (GMS)
                                       :
DOVER DOWNS, INC.,           :
                                       :
                Defendant.        :

## OPENING BRIEF IN SUPPORT OF
## <u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

Date:  May 17, 2006                 Noel C. Burnham (DE Bar No. 3483)
                                         Richard M. Donaldson (DE Bar No. 4367)
                                         Montgomery, McCracken, Walker & Rhoads, LLP
                                         300 Delaware Avenue, Suite 750
                                         Wilmington, DE  19801
                                         (302) 504-7840

                                         *Counsel for Defendant Dover Downs, Inc.*

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING.................. 1

III.    SUMMARY OF THE ARGUMENT .................................................................... 2

IV.     CONCISE STATEMENT OF FACTS ................................................................. 2

        A.      Plaintiffs Were Disgruntled Employees.............................................. 2

        B.      Plaintiffs Received a Written Warning For Being Insubordinate.......... 3

        C.      Plaintiffs Were Involved in an Unlawful and Unauthorized Drag Race on
                Company Property While They Were Working at Dover Downs. ....... 4

        D.      Dover Downs Disciplined All Individuals Involved in the Drag Race. ....... 5

V.      ARGUMENT: THE COURT SHOULD GRANT SUMMARY JUDGMENT IN
        FAVOR OF DOVER DOWNS ON PLAINTIFFS' COMPLAINT BECAUSE
        THERE IS NO DISPUTE OF MATERIAL FACT AND DOVER DOWNS IS
        ENTITLED TO JUDGMENT AS A MATTER OF LAW............................................ 8

        A.      Plaintiffs' Claim Must Pass the Requisite McDonnell-Douglas Test.......... 8

        B.      Dover Downs Had A Legitimate, Nondiscriminatory Reason For
                Plaintiffs' Termination, Which Plaintiffs Cannot Rebut. ...................... 9

        C.      The Court Should Dismiss Any State Law Claim Alleged by Plaintiffs............. 12

VI.     CONCLUSION.................................................................................................. 14

# TABLE OF AUTHORITIES

**Page**

**CASES**

Avallone v. Wilmington Medical Center
    553 F. Supp. 931 (D. Del. 1982) ..................................................................... 13

Borough of West Mifflin v. Lancaster
    45 F.3d 780 (3d Cir. 1994) ............................................................................. 12

Fuentes v. Perskie
    32 F.3d 759 (3d Cir. 1994) ............................................................................... 9

Keller v. Orvix Credit Alliance
    130 F.3d 1101 (3d Cir. 1997) .......................................................................... 9

Merrill v. Crothall-American, Inc.
    606 A.2d 96 (Del. 1992) ................................................................................. 12

Miller v. State of Delaware
    158 F. Supp. 2d 406 (D. Del. 2001) ............................................................... 10

Peace v. Shellhorn & Hill, Inc.
    C.A. No. 03-1007 (GMS), 2005 U.S. Dist. LEXIS 2533 (D. Del. Feb., 18, 2005)..... 10, 11

Saldana v. Kmart Corp.
    260 F.3d 228 (3d Cir. 2001) ............................................................................ 8

**STATUTES**

28 U.S.C. § 1367 ............................................................................................. passim

29 U.S.C. § 621 ............................................................................................... passim

I.     **INTRODUCTION**

Plaintiffs Richard L. Williams ("Williams") and Michael E. Peters ("Peters") (collectively, "Plaintiffs") are former employees of Defendant Dover Downs, Inc. ("Dover Downs" or "Company").  Dover Downs terminated Plaintiffs' employment after they participated in an unlawful and unauthorized drag race on Company property.  Plaintiffs admittedly did nothing to prevent or stop the drag race, and instead, Plaintiffs blocked the gate to the race so that other people could not enter.  The drag race resulted in a horrific accident, in which one of the drivers nearly suffered life-threatening injuries.

Plaintiffs have brought this lawsuit, alleging that they were terminated because of their age.  The undisputed evidence shows, however, that Dover Downs had a legitimate, nondiscriminatory reason for terminating Plaintiffs' employment.  For obvious reasons, the unauthorized race was a serious matter, and Dover Downs properly disciplined all employees who were involved, including Plaintiffs.

Accordingly, Dover Downs respectfully requests that the Court grant summary judgment in its favor and against Plaintiff.

II.    **STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING**

Plaintiffs bring a claim of age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq.  The parties have completed discovery in this matter, and it has become clear through discovery that Plaintiffs have no basis for their claim.  Accordingly, Dover Downs asks this Court to enter summary judgment in its favor on Plaintiffs' Complaint.

III.    **SUMMARY OF THE ARGUMENT**

Dover Downs is entitled to summary judgment because Dover Downs had a legitimate, nondiscriminatory reason for terminating Plaintiffs' employment, which Plaintiffs cannot rebut.

IV.    **CONCISE STATEMENT OF FACTS**

A.    **Plaintiffs Were Disgruntled Employees.**

Peters began working at Dover Downs in 1984, while Williams started in 1978. See Appendix to Defendants' Opening Brief in Support of its Motion for Summary Judgment ("Defs.' App.") at A0002 (Peters Dep. at 13); A0014 (Williams Dep. at 18). At the time of their terminations in December 2003, Plaintiffs worked in the Outside Maintenance Department, which was responsible for the maintenance of the harness and auto race tracks, the grandstands, and the outside grounds of the property. There were three levels of maintenance mechanics – I, II, and III – with I being the highest level. Id. at A0015-A0016 (Williams Dep. at 28-29). Both Plaintiffs held the position of Maintenance Mechanic I at the time of their terminations. Id. at A0135-A0136 (Roberts Decl. ¶ 3).

As Maintenance Mechanic Is, Plaintiffs performed a variety of duties, such as electrical work, painting, and repairing the concrete race track and grandstands. Id. at A0003 (Peters Dep. at 20); A0064-A0065 (Job Description). One of the requirements for the position was the ability to "lead a work force" and to provide "support to staff and assign job duties." Id. at A0064-A0065 (Job Description). Additionally, the job responsibilities of a Maintenance Mechanic I included, among other things, "direct[ing] tasks for Maintenance II and III[s]" and "perform[ing] any reasonable task as directed by management." Id.; see also id. at A0045, A0046 (Morrison Dep. at 39, 51).

The salary cap for the Maintenance Mechanic I position was $19.50 per hour in 2003, and both Plaintiffs received the maximum hourly rate at that time. Id. at A0017-A0018

(Williams Dep. at 36-37); A0004 (Peters Dep. at 51-52). Plaintiffs were disgruntled about the cap, and they made their dissatisfaction known to their co-workers. Id. at A0004, A0006 (Peters Dep. at 50, 61); A0018-A0019 (Williams Dep. at 40-41). Peters even attached a large golden screw to the front of his Company vehicle, indicating his unhappiness with the Company's salary cap. Id. at A0004 (Peters Dep. at 50-51).

In 2003, Tom Curtis was the Outside Maintenance Supervisor. Id. at A0037-A0038 (Curtis Dep. at 4-5). Curtis reported to the Outside Maintenance Manager, and as of mid-November 2003, Robert Morrison was the Outside Maintenance Manager. Id. at A0043 (Morrison Dep. at 6). Plaintiffs did not like Robert Morrison, and Williams "avoided him as much as possible." Id. at A0020 (Williams Dep. at 48); A0007 (Peters Dep. at 77). When asked to explain his dislike for Morrison, Williams stated that it was "just a feeling." Id. at A0020 (Williams Dep. at 48).

### B.      Plaintiffs Received a Written Warning For Being Insubordinate.

Because Tom Curtis was beginning a vacation on December 1, 2003, Morrison needed someone to monitor the Outside Maintenance Mechanics in Curtis's absence. Id. at A0045 (Morrison Dep. at 38). Morrison first called Williams and then Peters into his office, and requested that each lead the work force, i.e., direct tasks for the Maintenance Mechanic IIs and IIIs, while Curtis was on vacation. Id. at A0046-A0047 (Morrison Dep. at 52-53). Although it was part of their job description, both individuals refused to perform Morrison's request. Id. at A0046 (Morrison Dep. at 52). Williams stated at his deposition that he told Morrison that he did not like supervising other people and that he did not get paid to supervise. Id. at A0021 (Williams Dep. at 52). Similarly, Peters testified that he told Morrison that he "didn't want to do that supervisor's job" and that one of the reasons why he did not want to perform Morrison's request was because of the salary cap. Id. at A0005 (Peters Dep. at 59-60).

Both Williams and Peters received Written Warnings as a result of their refusal to perform tasks that were clearly within their job description. Id. at A0072, A0074 (Disciplinary Warning Notices for R. Williams and M. Peters).[1] The Warnings advised Plaintiffs that they could face possible termination in the event that they had further misconduct. See id.

**C.    Plaintiffs Were Involved in an Unlawful and Unauthorized Drag Race on Company Property While They Were Working at Dover Downs.**

The Outside Maintenance Department held its Christmas party at lunchtime on December 23, 2003. Id. at A0022 (Williams Dep. at 68). Plaintiffs refused to go because they did not like Morrison. Id. at A0023 (Williams Dep. at 70); A0007 (Peters Dep. at 77).[2] Instead, at the time of the party, Plaintiffs attended an unlawful and unauthorized drag race between two co-workers on Company property.

The two employees, Ernie Carlisle and Brian Williams (Richard Williams's son), had arranged to drag race each other on December 23, 2003. The race occurred on the pit road of the stock car race track. Id. at A0061 (B. Williams Dep. at 9); A0135 (Roberts Decl. ¶ 2). The pit road is the part of the track where pit crews wait to fuel and repair the stock cars during races. The race started at approximately 12:00 noon, and Carlisle and Brian Williams raced their cars three separate times on the pit road. Id. at A0034-A0035 (Carlisle Dep. at 51-57). During the fourth race, Brian Williams lost control of his car and hit the wall. Id. at A0036 (Carlisle Dep. at 58-59). His car was wrecked, and Brian Williams suffered what could have been life-threatening injuries. His body was thrown across the car, and his head broke the side window. Id. at A0025

---

[1] Plaintiffs' acts also violated the Employee Handbook, which prohibits "[e]ngaging in insubordination" and "[r]efusing to carry out a work assignment or reasonable request by [an employee's] supervisor or other member of management." See Defs.' App. at A0069-A0070 (Employee Handbook).

[2] Williams had planned an "anti-party," and bought pizza and sodas for co-workers who did not attend the Department party. See Defs.' App. at A0023 (Williams Dep. at 70); A0007 (Peters Dep. at 78).

(Williams Dep. at 84). His body began convulsing, and he went in and out of consciousness. Id. at A0025-A0026 (Williams Dep. at 84-85). According to Richard Williams, "it was the most horrific thing [he has] ever seen in [his] whole life," and he was afraid that his son had suffered some type of spine or head damage. Id. at A0025 (Williams Dep. at 84). The Dover Police Department arrived on the scene, and Carlisle and Brian Williams were issued citations for their reckless driving. Id. at A0078 (Investigative Report).[3] Paramedics were called, and Brian Williams was rushed to the hospital in an ambulance. Id. at A0062 (B. Williams Dep. at 13-14).

As Plaintiffs admitted, they were present at the drag race and did nothing to prevent or stop it. Id. at A0088, A0091 (Investigative Report); A0027-A0028 (Williams Dep. at 92-93); A0008, A0010 (Peters Dep. at 81, 90). Instead, Plaintiffs parked their Company vehicles at the gate of the race track to prevent other people from entering the race. Id. at A0008, A0010, A0011 (Peters Dep. at 83, 90, 101); A0024-A0025 (Williams Dep. at 79-82). There were four additional Dover Downs' employees who observed the race. Eight employees were involved altogether: the two drivers, the two blockers of the gate (Plaintiffs), and four other observers. Id. at A0135 (Roberts Decl. ¶ 2).

**D.     Dover Downs Disciplined All Individuals Involved in the Drag Race.**

The drag race on December 23, 2003 violated several provisions of the Dover Downs Employee Handbook. Id. at A0025-A0026 (Employee Handbook). These violations included unauthorized or illegal use of the Dover Downs facility, unauthorized or illegal use of customer facilities, misconduct, and disregarding safety procedures. Id.; A0056 (Sutor Dep. at 33, 35). All eight employees who were present at the drag race were immediately placed on investigative suspension following the incident, and Dover Downs conducted an investigation to "assess what

---

[3] Because of Brian Williams's condition, the police issued his citation at a later time, and not on the scene. See Defs.' App. at A0063 (B. Williams Dep. at 24); A0078 (Investigative Report).

had happened and who had participated in the activity." Id. at A0051, A00554 (Sutor Dep. at 8, 17).

Dover Downs viewed the drag race as a very significant incident, as it possibly could "have led to the death or severe injury of one of [its] employees." Id. at A0051 (Sutor Dep. at 8). Moreover, the race was an illegal activity that occurred on Company property, and it could have jeopardized Dover Downs' license to operate. Id. at A0051, A0055 (Sutor Dep. at 8, 27). Due to the significant nature of the matter, Executive Vice President and Chief Operating Officer, Ed Sutor, became involved, and Sutor had the ultimate responsibility for determining the proper consequences for the drag race participants. Id. at A0050, A0051 (Sutor Dep. at 4, 7-8). Sutor directed the Company's Security Department to investigate who was involved in the incident and what degree of participation each had. Id. at A0052 (Sutor Dep. at 10-12). Sutor also involved other people in the decision-making process, including Robin Roberts, Vice President of Human Resources. Id.[4]

Joe McNair, a Dover Downs Investigator, interviewed all eight employees present at the race, including Plaintiffs. Id. at A0040 (McNair Dep. at 5, 7). Williams told McNair that when he arrived at the drag race, "he observed Mike Peters to be parked halfway across the road as if to be blocking the road so no one could enter." Id. at A0091 (Investigation Report); A0029, A0031 (Williams Dep. at 98, 113); A0041 (McNair Dep. at 24). Williams further admitted to McNair that he, too, helped to block the gate to the race. Id. at A0091 (Investigative Report). Accordingly, the investigation revealed that Plaintiffs were culpable participants in the unlawful drag race.

Based on the results of the investigation, Dover Downs disciplined the following

---

[4] Neither Sutor nor Roberts knew of any other drag race on Company property. See Defs.' App. at A0137 (Sutor Decl. ¶ 2); A0135-A0136 (Roberts Decl.¶ 5).

employees for their involvement in the drag race:

| Employee | Involvement | Age | Position | Discipline |
|----------|-------------|-----|----------|------------|
| Ernie Carlisle | Driver | 71 | Maint. Mech. II | Termination |
| Brian Williams | Driver | 29 | Maint. Mech. III | Termination |
| Michael Peters | Blocked gate | 52 | Maint. Mech. I | Termination |
| Richard Williams | Blocked gate | 55 | Maint. Mech. I | Termination |
| Russell Hands | Observer | 68 | Maint. Mech. II | Suspension |
| William Larnick | Observer | 45 | Maint. Mech. II | Suspension |
| Michael Monahan | Observer | 38 | Maint. Mech. I | Suspension |
| John Patterson | Observer | 24 | Maint. Mech. III | Suspension |

Id. at A0053-A0054 (Sutor Dep. at 15, 17); A0135 (Roberts Decl. ¶ 2).

Plaintiffs were terminated on December 31, 2003.  Id. at A0130, A0133 (Disciplinary Warning Notices dated December 31, 2003).  The termination notices stated that Plaintiffs, who were already on Written Warnings for their recent insubordination, had blocked the gate to the race and did nothing to prevent or report the race at any time during the 3.5 runs on the pit road. Id.  The notices continued that Plaintiffs had a "responsibility to report any suspicious, unsafe or reckless behavior of any type involving [their] fellow co-workers."  Id.

Sutor reiterated the basis for terminating Plaintiffs' employment at his deposition, explaining that Plaintiffs were culpable participants because they were "supervisory people who used their vehicle to block the entrance to the [race] facility."  Id. at A0053 (Sutor Dep. at 16). Sutor further stated that, based on their age and experience, i.e., individuals who had "25 years of experience in this type of business," Plaintiffs should have understood that the drag race was "not only forbidden by the company, but also unsafe."  Id. at A0057, A0058-A0059 (Sutor Dep. at 48, 52-53).

Sutor viewed Plaintiffs' prior discipline as "piling on" additional reasons for terminating their employment, and believed that he would have terminated Plaintiffs even without the prior discipline because of the egregious nature of the incident and Plaintiffs' involvement.  Id. at A0055 (Sutor Dep. at 26).  The prior disciplines were raised in discussions concerning Plaintiffs'

termination, however, and Robin Roberts, as the Vice President of Human Resources, placed a greater emphasis on the Written Warnings – which Plaintiffs received less than two weeks prior to the drag race.  Id. at A0049 (Roberts Dep. at 19); A0135 (Roberts Decl. ¶ 4); A0055 (Sutor Dep. at 25-26).  Other than Plaintiffs, no other employee present at the drag race was on a disciplinary warning.  Id. at A0135-A0136 (Roberts Decl. ¶ 4).

Despite their involvement in the drag race, Plaintiffs filed a Complaint with this Court, alleging that they were terminated because of their age.[5]

**V.     ARGUMENT: THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF DOVER DOWNS ON PLAINTIFFS' COMPLAINT BECAUSE THERE IS NO DISPUTE OF MATERIAL FACT AND DOVER DOWNS IS ENTITLED TO JUDGMENT AS A MATTER OF LAW.**

**A.     Plaintiffs' Claim Must Pass the Requisite McDonnell-Douglas Test.**

A court should grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Once the moving party demonstrates an absence of material fact, the nonmoving party – in order to avoid summary judgment – must then establish the existence of each element on his claims for which he has the burden of proof.  Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001).  The nonmoving party cannot avert summary judgment with mere speculation or allegations, but rather, must present enough competent evidence from which a jury could reasonably find in its favor.  Id.  If the nonmoving party fails to make a sufficient showing on an essential element, the moving party is entitled to judgment as a matter of law.  Id.

In order to survive summary judgment in an age discrimination case, a plaintiff's claim

---

[5] Richard Williams testified at his deposition that he also believes Plaintiffs were terminated because "Morrison viewed [them] as a threat to his job."  See Defs.' App. at A0032 (Williams Dep. at 121).

must pass the requisite burden-shifting paradigm of <u>McDonnell-Douglas</u> and its progeny.  A plaintiff first must make out a prima facie case of discrimination by proving that: (1) he is a member of the protected class, <u>i.e.</u>, at least 40 years of age; (2) he is qualified for the position; (3) he suffered an adverse employment action; and (4) he was replaced by a sufficiently younger person to create an inference of age discrimination.  <u>Keller v. Orvix Credit Alliance</u>, 130 F.3d 1101, 1108 (3d Cir. 1997).

If the plaintiff is able to establish a prima facie case, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for its decision.  <u>See</u> <u>Fuentes v. Perskie</u>, 32 F.3d 759, 763 (3d Cir. 1994).  The plaintiff then has an opportunity to point to some evidence to show that the defendant's articulated reason is a pretext for discrimination.  <u>See</u> <u>id.</u> at 764-65.  In order to discredit the defendant's proffered reason, the plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered reason that a reasonable factfinder could either disbelieve the reason or believe that discrimination was more likely than not the reason for the employer's action.  <u>See</u> <u>id.</u>

Here, Plaintiffs' claim cannot pass the requisite test to survive summary judgment, as Dover Downs had a legitimate, nondiscriminatory reason for terminating their employment – which Plaintiffs cannot rebut.

### B.    Dover Downs Had A Legitimate, Nondiscriminatory Reason For Plaintiffs' Termination, Which Plaintiffs Cannot Rebut.

It is undisputed that there was an unlawful, unauthorized, and almost deadly drag race that occurred on Company property on December 23, 2003.  Obviously, the incident was of a serious nature, and Dover Downs took the appropriate actions to prevent any further incidents from occurring in the future, and properly disciplined all eight employees who were present at the race.

Plaintiffs admit that they were present at the race and further admit that they did nothing

to stop or prevent the race.  See Defs.' App. at A0088, A0091 (Investigative Report); A0027-A0028 (Williams Dep. at 92-93); A0008, A0010 (Peters Dep. at 81, 90).  To the contrary, Plaintiffs parked their Company vehicles at the gate so that they could block the race.  Id. at A0008, A0010, A0011 (Peters Dep. at 83, 90, 101); A0024-A0025 (Williams Dep. at 79-82).  Plaintiffs' actions were in violation of Dover Downs' policies and were clearly inappropriate, particularly in light of their experience and leadership role at Dover Downs.  Id. at A0069-A0070 (Employee Handbook); A0053, A0056 (Sutor Dep. at 16, 33, 35).  Plaintiffs were Maintenance Mechanic Is, and as such, they were responsible for directing the tasks of other maintenance mechanics and for leading a workforce when necessary.  Id. at A0064-A0065 (Job Description).  Consequently, Plaintiffs had leadership responsibilities, and their behavior on December 23, 2003 was even more reprehensible in light of their role within Dover Downs.  As Ed Sutor stated at his deposition, Plaintiffs, with nearly 25 years of experience in the business, should have known that the drag race was both prohibited by the Company and unsafe.  Id. at A0057, A0058-A0059 (Sutor Dep. at 48, 52-53).[6]

Accordingly, Dover Downs had a legitimate, nondiscriminatory reason for terminating Plaintiffs' employment, and no reasonable jury could conclude that their age played a factor in the decision.  See, e.g., Peace v. Shellhorn & Hill, Inc., C.A. No. 03-1007 (GMS), 2005 U.S. Dist. LEXIS 2533, at *12 (D. Del. Feb. 18, 2005) (finding that plaintiff's "insubordinate, unprofessional, and disrespectful behavior" was legitimate, nondiscriminatory reason); Miller v. Del., 158 F. Supp. 2d 406, 413 (D. Del. 2001) (finding that defendant had legitimate, nondiscriminatory reason for termination because, among other things, plaintiff failed to report

---

[6] Moreover, this was not Plaintiffs' first act of misconduct.  Plaintiffs received Written Warnings for their insubordination less than two weeks before the drag race.  See Defs.' App. at A0072, A0074 (Disciplinary Warning Notices).

loss of gun).

Plaintiffs have no evidence to rebut Dover Downs' proffered reason. Instead, the undisputed evidence shows that the disciplinary actions taken against the eight employees involved in the drag race had no correlation with their ages. In fact, Dover Downs did not terminate the oldest person involved at the drag race, Russell Hands. See Defs.' App. at A0135 (Roberts Decl. ¶¶ 2-3). Hands was a Maintenance Mechanic II who was not on a disciplinary warning at the time of the incident, and unlike Plaintiffs, the investigation did not reveal that Hands was an active participant in the race. Id. Dover Downs suspended Hands without pay, which was the same disciplinary action it issued to the other three employees who were merely present at the race and who had no prior discipline. Id. To this day, Hands remains employed by Dover Downs – at 71 years of age. Id. Clearly, if Dover Downs had intended to discriminate based on the employees' ages, it would have terminated Hands.

Plaintiffs' claim is further belied by the relevant statistics. Since Plaintiffs' termination, there has been an increase – and not a decrease – in the average age of the employees in the Outside Maintenance Department. Specifically, as of November 1, 2003, the average age of the employees was 43.5; as of November 1, 2005, that average age increased to 44.8. See Defs.' Resp. to Interrog. Nos. 18-19. Moreover, five of the 18 employees in the Department in November 2005 were over 50 years of age – three of which were over 60. Id. Clearly, "[t]he picture this profile paints is not of a company that discriminates against older workers." Peace v. Shellhorn & Hill, Inc., C.A. No. 03-1007 (GMS), 2005 U.S. Dist. LEXIS 2533, at *22 (D. Del. Feb. 18, 2005).

Accordingly, no reasonable jury could find that Dover Downs discriminated against Plaintiffs on the basis of their age, and this Court should grant summary judgment in favor of Dover Downs.

C.    **The Court Should Dismiss Any State Law Claim Alleged by Plaintiffs.**

It does not appear from the Complaint that Plaintiffs are alleging any separate state law claim.  The language contained in Paragraphs 32 and 33 of the Complaint, however, could be construed as asserting claims of breach of the covenant of good faith and fair dealing and intentional infliction of emotional distress; therefore, Dover Downs will address the reasons why such claims should be dismissed in the event that they are being alleged in this matter.

The Court should dismiss any alleged state law claim because the Court lacks jurisdiction – in the absence of Plaintiffs' federal claim.  See 28 U.S.C. § 1367(c) (authorizing court to dismiss supplemental state law claims if all claims over which it has original jurisdiction have been dismissed); see also Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995) ("When the federal claims are dismissed prior to trial, the district court "must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.") (emphasis added).  Here, because Plaintiffs' federal claim under the ADEA is being dismissed prior to trial, there is no justification for this Court to retain jurisdiction over any pendent state law claim.

Even if this Court were to exercise jurisdiction, it should still dismiss any alleged state law claim.  Plaintiffs, who were at-will employees, cannot succeed on a breach of covenant of good faith and fair dealing claim because there is no evidence to suggest that Dover Downs' actions constituted "an aspect of fraud, deceit or misrepresentation."  See Merrill v. Crothall-American, Inc., 606 A.2d 96, 101 (Del. 1992) (holding that there is a limited implied covenant of good faith and fair dealing in connection with at-will employment contracts and stating that "[t]o constitute a breach of the implied covenant of good faith, the conduct of the employer must constitute an aspect of fraud, deceit or misrepresentation").

Similarly, Plaintiffs cannot succeed on a claim of intentional infliction of emotional

distress.  In order to establish such a claim under Delaware law, Plaintiffs must prove that:
(1) Dover Downs' conduct was outrageous in character and extreme in degree, and (2) Plaintiffs suffered mental distress of a very serious nature.  <u>See, e.g.,</u> <u>Avallone v. Wilmington Med. Ctr.</u>, 553 F. Supp. 931, 938 (D. Del. 1982) ("An essential element of that tort is that the victim not only suffer mental stress, but also bodily injury or sickness.").  Here, Plaintiffs cannot meet either of the requisite elements.  Dover Downs' actions were reasonable and legitimate, as stated above, and Plaintiffs have suffered no injury as a result of Dover Downs' alleged actions.

Accordingly, the Court should dismiss any state law claim alleged by Plaintiffs, and should enter judgment in favor of Dover Downs on Plaintiffs' Complaint.

## VI.    <u>CONCLUSION</u>

For the reasons set forth above, Defendant Dover Downs, Inc. requests that the Court enter summary judgment in its favor and against Plaintiffs Richard L. Williams and Michael E. Peters on Plaintiffs' Complaint.

Respectfully submitted,


Dated: May 17, 2006                                  _____*/s/ Richard M. Donaldson*_____
                                                               Noel C. Burnham (DE Bar No. 3483)
                                                               Richard M. Donaldson (DE Bar No. 4367)
                                                               Montgomery, McCracken, Walker & Rhoads, LLP
                                                               300 Delaware Avenue, Suite 750
                                                               Wilmington, DE  19801
                                                               (302) 504-7840

                                                               *Counsel for Defendant Dover Downs, Inc.*

Of Counsel:
Edward T. Ellis
Beth A. Friel
Montgomery, McCracken,
    Walker & Rhoads, LLP
123 South Broad Street
Philadelphia, PA  19109
(215) 772-1500