

D 0386

A0129

## DISCIPLINARY WARNING NOTICE

/ee's Name:    Michael Peters                        Date of Notice:    12/31/03

ment:    Maintenance                    Position:    Maintenance Mechanic I

**ON TAKEN**    *(Depending on the type of offense, the Company may bypass any of these steps in its discretion)*

_____    Verbal Warning
_____    Written Warning
_____    Final Written Warning    *OR*    Suspension    (From _____    To _____ )
__X__    Termination

: OF INCIDENT:    !2/23/03                    INCIDENT REPORTED BY:    Security

URE OF INCIDENT:

you know, you were issued a written warning on December 12, 2003 for insubordination and refusal to carry out a work request
your Manager. Eleven days after that warning was issued, on December 23, 2003, you were present during a "drag race" on Pitt
oad of the Dover International Speedway .This drag race was between two fellow maintenance employees in their own personal
ehicles. It has been reported that your work vehicle, which was stationed at Gate 1, was positioned so as to block anyone from
getting on to the track. In addition, you admitted seeing the two employees drag race 3.5 times. At no time during these 3.5 "runs"
did you report this event to Management or Security, or attempt to stop it from happening. As a Mechanic I it is your responsibility
to report any suspicious, unsafe or reckless behavior of any type involving your fellow co-workers. You did not report this
behavior to anyone. In view of the fact that you had very recently been issued a written warning for insubordination, and the fact
that you did not report this very serious incident, you are hereby being terminated.

---

### TO EMPLOYEE:

- **PLEASE READ THIS <u>ENTIRE</u> DISCIPLINARY WARNING NOTICE CAREFULLY BEFORE SIGNING BELOW.**
- **You are being issued this Notice to make you aware of the severity of this situation.**
- **THIS NOTICE SHOULD NOT BE TAKEN LIGHTLY.**
- *ANY FURTHER VIOLATIONS OF ANY COMPANY RULES, POLICIES OR PROCEDURES MAY RESULT IN ADDITIONAL ACTION BEING TAKEN, UP TO AND INCLUDING TERMINATION OF YOUR EMPLOYMENT.*
- If you have any questions regarding this matter, please discuss them with the head of your Department.

| EMPLOYEE'S PRINTED NAME | EMPLOYEE'S SIGNATURE | DATE SIGNED |
|---|---|---|
| Michael Peters | X *(signature)* | |

*    Signing this Notice does not imply that you agree with the action taken, only that you acknowledge receipt of this Notice.

*    ☐ Check here if Employee refuses to acknowledge receipt of this Notice.

The undersigned manager / supervisor has discussed this Notice and the action taken with the employee.

A0130

| MANAGER / SUPERVISOR'S PRINTED NAME | MANAGER / SUPERVISOR'S SIGNATURE | DATE SIGNED |
|---|---|---|
| RICHARD WERTZ | *Richard Wertz* | |
| HR REPRESENTATIVE'S PRINTED NAME<br>Robin M. Roberts | *[signature]* | 12-31-03 |

D 0281

A0131

# DISCIPLINE FILE REPORT

This Discipline File Report is recommended in connection with the issuance of a Disciplinary Warning Notice. Before deciding on discipline, consider the seriousness of the problem; the employee's overall past record including prior warnings, the employee's attitude, rules and regulations violated, and precedents.

*This File Report is an attachment to the following Disciplinary Warning Notice:*

Employee's Name:   Michael Peters _____      Date of Notice:   12/31/03 _____

## *DETAILS OF INCIDENT*

*Name(s) of Employee(s) Involved in the Incident*

_____

*Name(s) of All Witnesses to the Incident*

_____
_____

*Details of the Incident* (Location and time incident occurred. Explain cause, reasons why, how it occurred, cost to Company, impact on customers, etc.)

_____

*Statement of Employee(s) Involved* (Attach additional sheets if necessary. Employees must sign and date their statements.)

_____

*Statement of Witnesses* (Attach additional sheets if necessary. Witnesses must sign and date their statements.)

_____

## *PRIOR INCIDENTS OR WARNINGS*
### *(List prior warnings employee has received)*

| DESCRIPTION | DATE | ACTION TAKEN |
|---|---|---|
| Insubordination | 12/12/03 | Written Warning |
| | | |
| | | |

**D 0282**

**A0132**

## DISCIPLINARY WARNING NOTICE

Employee's Name: **Richard Williams**                     Date of Notice: 12/31/03

Department: **Maintenance**          Position: **Maintenance Mechanic I**

**ACTION TAKEN**    *(Depending on the type of offense, the Company may bypass any of these steps in its discretion)*

```
_____ Verbal Warning
_____ Written Warning
_____ Final Written Warning    OR    Suspension        (From _____ To _____ )
   X    Termination
```

DATE OF INCIDENT: **December 23, 2003**    *INCIDENT REPORTED BY:*  **Security**

*NATURE OF INCIDENT:*

As you know, you were issued a written warning on December 12, 2003 for insubordination and refusal to carry out a work request by your Manager. Eleven days after that warning was issued, on December 23, 2003, you were present during a "drag race" on Pit Road of the Dover International Speedway. This drag race was between two fellow maintenance employees in their own personal vehicles. In a conversation with Joe McNair, Security Investigator, on that same day, you admitted that you pulled your work vehicle next to Michael Peters' work vehicle, which was stationed at Gate 1, and that you thought that was a good idea since that would prevent anyone from coming in during the race. In addition, it was reported by several witnesses that the employees raced 3.5 times down Pit Road. At not time during these 3.5 "runs" did you report this event to Management or Security, or attempt to stop it from happening. As a Mechanic I it is your responsibility to report any suspicious, unsafe or reckless behavior of any type involving your fellow co-workers. You did not report this behavior to anyone. In view of the fact that you had very recently been issued a written warning for insubordination, and the fact that you did not report this very serious incident, you are hereby terminated.

---

### TO EMPLOYEE:

- **PLEASE READ THIS <u>ENTIRE</u> DISCIPLINARY WARNING NOTICE CAREFULLY BEFORE SIGNING BELOW.**
- **You are being issued this Notice to make you aware of the severity of this situation.**
- **THIS NOTICE SHOULD NOT BE TAKEN LIGHTLY.**
- *ANY FURTHER VIOLATIONS OF ANY COMPANY RULES, POLICIES OR PROCEDURES MAY RESULT IN ADDITIONAL ACTION BEING TAKEN, UP TO AND INCLUDING TERMINATION OF YOUR EMPLOYMENT.*
- **If you have any questions regarding this matter, please discuss them with the head of your Department.**

---

| EMPLOYEE'S PRINTED NAME | EMPLOYEE'S SIGNATURE* | DATE SIGNED |
|---|---|---|
| Richard Williams | | |

\* Signing this Notice does not imply that you agree with the action taken, only that you acknowledge receipt of this Notice.

\* ☑ Check here if Employee refuses to acknowledge receipt of this Notice.

The undersigned manager / supervisor has discussed this Notice and the action taken with the employee.

**D 0135**

**A0133**

| MANAGER / SUPERVISOR'S PRINTED NAME | MANAGER / SUPERVISOR'S SIGNATURE | DATE |
|---|---|---|
| Richard Wertz | *Richard Wertz* | 12·31·03 |
| HR REPRESENTATIVE'S PRINTED NAME | HR REPRESENTATIVE'S SIGNATURE | DATE SIGNED |
| | | 12-31-03 |

*Page 1 of 3*
*(1103)*

# DISCIPLINE FILE REPORT

This Discipline File Report is recommended in connection with the issuance of a Disciplinary Warning Notice. Before deciding on discipline, consider the seriousness of the problem, the employee's overall past record including prior warnings, the employee's attitude, rules and regulations violated, and precedents.

***This File Report is an attachment to the following Disciplinary Warning Notice:***

Employee's Name:  **Richard Williams**                    Date of Notice:   12/31/03

## *DETAILS OF INCIDENT*

*Name(s) of Employee(s) Involved in the Incident*

*Name(s) of All Witnesses to the Incident*

*Details of the Incident* (Location and time incident occurred. Explain cause, reasons why, how it occurred, cost to Company, impact on customers, etc.)

*Statement of Employee(s) Involved* (Attach additional sheets if necessary. Employees must sign and date their statements.)

*Statement of Witnesses* (Attach additional sheets if necessary. Witnesses must sign and date their statements.)

## *PRIOR INCIDENTS OR WARNINGS*
### *(List prior warnings employee has received)*

| DESCRIPTION | DATE | ACTION TAKEN |
|---|---|---|
| Insubordination | 12/12/03 | Written Warning |
|  |  |  |
|  |  |  |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RICHARD L. WILLIAMS and<br>MICHAEL E. PETERS, | : | |
| Plaintiffs, | : | |
| v. | : | Civil Action No.: 05-0435 (GMS) |
| DOVER DOWNS, INC., | : | |
| Defendant. | : | |

## DECLARATION OF ROBIN ROBERTS

I, Robin Roberts, hereby aver as follows under penalty of perjury:

1.  I am the Vice President of Human Resources for Dover Downs, Inc. ("Dover Downs").

2.  On December 23, 2003, there was a drag race between two Dover Downs' employees on Company property. Following an investigation into the matter, Dover Downs disciplined all eight individuals who were present at the race:

| Name of Employee | Age | Position | Involvement | Disciplinary Action |
|---|---|---|---|---|
| Ernie Carlisle | 71 | Maint. Mech. II | Driver | Termination |
| Brian Williams | 29 | Maint. Mech. III | Driver | Termination |
| Michael Peters | 52 | Maint. Mech. I | Blocked gate | Termination |
| Richard Williams | 55 | Maint. Mech. I | Blocked gate | Termination |
| Russell Hands | 68 | Maint. Mech. II | Observer | Suspension |
| William Larnick | 45 | Maint. Mech. II | Observer | Suspension |
| Michael Monahan | 38 | Maint. Mech. I | Observer | Suspension |
| John Patterson | 24 | Maint. Mech. III | Observer | Suspension |

3.  Russell Hands is 71 years of age and is an employee of Dover Downs.

4.  As Vice President of Human Resources, one of the factors I consider in determining the appropriate disciplinary action to take against an employee is whether that employee is on a

disciplinary warning. Richard Williams and Michael Peters were the only employees involved in the December 23, 2003 drag race who were on disciplinary warnings.

5. Besides the December 23, 2003 incident, I have no knowledge of any other unauthorized drag race between Dover Downs' employees on Company property.

I make the foregoing statements under penalty of perjury pursuant to 28 U.S.C. § 1746.

_Robin Roberts_

Dated: 1-16-06

-2-

A0136

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RICHARD L. WILLIAMS and      :
MICHAEL E. PETERS,          :
                                    :
            Plaintiffs,     :
                                    :
     v.                   :     Civil Action No.:  05-0435 (GMS)
                                    :
DOVER DOWNS, INC.,         :
                                    :
            Defendant.    :

## DECLARATION OF EDWARD SUTOR

I, Edward Sutor, hereby aver as follows under penalty of perjury:

1. I am the Executive Vice President and Chief Operating Officer of Dover Downs, Inc. ("Dover Downs").

2. On December 23, 2003, there was a drag race between two Dover Downs' employees on Company property. Besides the December 23, 2003 incident, I have no knowledge of any other unauthorized drag race between Dover Downs' employees on Company property.

I make the foregoing statements under penalty of perjury pursuant to 28 U.S.C. § 1746.

_____
Edward Sutor

Dated: _5/16/06_

Get a Document by Party Name - peace
Case 1:05-cv-00435-GMS   Document 36-8   Filed 05/17/2006   Page 10 of 21
Page 1 of 12

Source: Legal > / . . . / > DE Federal District Courts ⓘ
Terms: name(peace) (Edit Search | Suggest Terms for My Search)

✦Select for FOCUS™ or Delivery
☐

*2005 U.S. Dist. LEXIS 2533, **

WAYNE **PEACE,** Plaintiff, v. SHELLHORN & HILL, INC., Defendant.

C.A. No. 03-1007 (GMS)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2005 U.S. Dist. LEXIS 2533

February 18, 2005, Decided

**DISPOSITION:** Defendant's motion for summary judgment granted. Complaint dismissed.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff former employee sued defendant, his former employer, and alleged unlawful age discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C.S. § 621 et seq. The employer moved for summary judgment.

**OVERVIEW:** The employee was 57 at the time was terminated; the employer conceded he was qualified for the position; he was terminated; and the employee was replaced by two worker who were both younger and less experienced than the employee. The court held the employer offered legitimate, nondiscriminatory reasons for the termination. Thus, the employee presented a prima facie case of discrimination under the ADEA. The employee's strongest evidence arose from the fact that he was replaced by two younger workers. However, it seemed reasonable to presume that the chances were substantial that a 57 year-old employee would be replaced by someone younger. So, this fact alone would not support an inference of discrimination. The employee pointed to several older workers who were discharged, laid off, or harassed and forced to retire. However, the court found employees terminated from the employer with the following ages: 23, 27, 31, 36, 37, 38, 30s, 40, 41, 45, 40s, 50, 50s, 55, 57, 60, 60s. Furthermore, seventeen long-term employees with the following ages: 77, 52, 62, 45, 56, 52, 63, 53, 43, 44, 59, 59, 55, 53, 40, 53, 58 were working for the employer.

**OUTCOME:** The employer's motion for summary judgment was granted.

**CORE TERMS:** prong, territory, salesman, terminated, customer, termination, replaced, summary judgment, proffered, younger, factfinder, age discrimination, ultimatum, retire, prima facie case, discriminatory, older, sales force, replacement, salesmen, inconsistency, nonmovant, genuine issue of material fact, determinative, motivating, favorable, unworthy, credence, infer, bias

**LexisNexis(R) Headnotes** ✦ Hide Headnotes

Civil Procedure > Summary Judgment > Evidence 

A0138

Civil Procedure > Summary Judgment > Standards > Appropriateness 

Civil Procedure > Summary Judgment > Standards > Materiality 

HN1 Summary judgment is appropriate when there are no genuine issues of material fact. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the case, and an issue is genuine if the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmovant. When deciding a motion for summary judgment, the court must evaluate the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. The nonmoving party, however, must demonstrate the existence of a material fact supplying sufficient evidence--not mere allegations--for a reasonable jury to find for the nonmovant. To raise a genuine issue of material fact, the nonmovant need not match, item for item, each piece of evidence proffered by the movant but simply must exceed the "mere scintilla" of evidence standard. The nonmovant's evidence, however, must be sufficient for a reasonable jury to find in favor of the party, given the applicable burden of proof. More Like This Headnote

Labor & Employment Law > Discrimination > Age Discrimination > Proof > Direct Evidence 

Labor & Employment Law > Discrimination > Age Discrimination > Proof > Mixed Motive 

Labor & Employment Law > Discrimination > Disability Discrimination > Proof > General Overview 

HN2 Allegations of age discrimination under the Age Discrimination in Employment Act, 29 U.S.C.S. § 621 et seq., are analyzed under either Price Waterhouse burden-shifting framework (for so-called "direct evidence" cases), or the familiar McDonnell Douglas burden-shifting framework (for so-called "indirect evidence" cases). More Like This Headnote

Labor & Employment Law > Discrimination > Age Discrimination > Proof > Burdens of Proof 

Labor & Employment Law > Discrimination > Age Discrimination > Proof > Circumstantial Evidence 

Labor & Employment Law > Discrimination > Disparate Treatment > Proof > Burden Shifting 

HN3 Under the McDonnell Douglas framework, an Age Discrimination in Employment Act, 29 U.S.C.S. § 621 et seq., plaintiff bears the initial burden of establishing a prima facie case of unlawful discrimination. This requires the plaintiff to produce evidence that (1) he was 40 years old or older at the time of his termination, (2) he was qualified for the position, (3) he was terminated, and (4) he was replaced by a sufficiently younger person to create an inference of age discrimination. Once the plaintiff successfully establishes a prima facie case, the burden shifts to the defendant to proffer a nondiscriminatory reason for the plaintiff's termination. The burden then shifts back to the plaintiff to point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action. More Like This Headnote

Civil Procedure > Summary Judgment > Evidence 

Labor & Employment Law > Discrimination > Age Discrimination > Proof > General Overview 

A0139

Labor & Employment Law > Discrimination > Disparate Treatment > Proof > Burden Shifting 

*HN4* Under the first prong of Fuentes, an employment discrimination plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence. However, a plaintiff cannot simply show that the employer's decision is wrong or mistaken, since the factual dispute at issue is whether discriminatory animus has motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. Alternatively, under the second prong of Fuentes, the plaintiff must identify evidence in the summary judgment record that allows the fact finder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action. In other words, under this prong, the plaintiff must point to evidence that proves age discrimination in the same way that critical facts are generally proved--based solely on the natural probative force of the evidence. If the plaintiff is unable to carry his burden under either Fuentes prong, then summary judgment must be granted in favor of the defendant. More Like This Headnote

**COUNSEL:** **[*1]** For Wayne Peace, Plaintiff: John M. LaRosa, Law Office of John M. LaRosa, Wilmington, DE; Thomas S. Neuberger, The Neuberger Firm, P.A., Wilmington, DE.

For Shellhorn & Hill Inc, a Delaware corporation, Defendant: Sheldon N. Sandler, Young, Conaway, Stargatt & Taylor, Wilmington, DE.

For Shellhorn & Hill Inc, Counter Claimant: Sheldon N. Sandler, Young, Conaway, Stargatt & Taylor, Wilmington, DE.

For Wayne Peace, Counter Defendant: John M. LaRosa, Law Office of John M. LaRosa, Wilmington, DE; Thomas S. Neuberger, The Neuberger Firm, P.A., Wilmington, DE.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Gregory Moneta Sleet

**OPINION: MEMORANDUM**

### I. INTRODUCTION

On November 4, 2003, Plaintiff Wayne Peace filed a complaint (D.I. 1) against Defendant Shellhorn & Hill, Inc. ("Shellhorn") alleging unlawful age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"). 29 U.S.C. § 621 et seq. Presently before the court is Shellhorn's motion for summary judgment. (D.I. 22.) For the following reasons, the court will grant Shellhorn's motion.

### II. JURISDICTION

The court has subject matter jurisdiction **[*2]** pursuant to 28 U.S.C. § 1331 (1993).

### III. STANDARD OF REVIEW

*HN1* Summary judgment is appropriate when there are no genuine issues of material fact. See Fed. R. Civ. P 56(c). A fact is material if it might affect the outcome of the case, and an issue is genuine if the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmovant. See In re Headquarters Dodge, Inc., 13 F.3d 674, 679 (3d Cir.

**A0140**

1993) (citing _Anderson v. Liberty Lobby, Inc.,_ 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)). When deciding a motion for summary judgment, the court must evaluate the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. _See Pacitti v. Macy's,_ 193 F.3d 766, 772 (3d Cir. 1999). The nonmoving party, however, must demonstrate the existence of a material fact supplying sufficient evidence - not mere allegations - for a reasonable jury to find for the nonmovant. _See Olson v. GE Astrospace,_ 101 F.3d 947, 951 (3d Cir. 1996) (citation omitted). To raise a genuine issue of material **[*3]** fact, the nonmovant "need not match, item for item, each piece of evidence proffered by the movant but simply must exceed the 'mere scintilla' [of evidence] standard." _Petruzzi's IGA Supermarkets, Inc. v Darling-Delaware Co.,_ 998 F.2d 1224, 1230 (3d Cir. 1993) (citations omitted). The nonmovant's evidence, however, must be sufficient for a reasonable jury to find in favor of the party, given the applicable burden of proof. _See Anderson,_ 477 U.S. at 249-50.

## IV. BACKGROUND

For many years, Shellhorn & Hill has supplied heating oil, and has sold and serviced home heaters and air conditioners to customers in Wilmington, Delaware and the surrounding area. In 1963, Wayne Peace began as a trainee in Shellhorn's service department. (Peace Dep. at 13:10-13.) With the exception of a brief period in the early 1970s, Peace was continuously employed by Shellhorn until February 2002. (Id. at 14:7-8, 22:8-23:20.) In 1984, Peace became a salesman at Shellhorn. (Id. at 23:4-6.) In the late 1980s or early 1990s, Peace was also an assistant service manager. (Id. at 26:1-7.) However, Peace went back to sales full time in 1997. (Id. at 29:23-30:18.) During **[*4]** his nearly 40 years at Shellhorn, Peace only received one written reprimand, and that was before he became a salesman in 1984. (Hill Dep. at 10:11-21.) In fact, as part of his 1993/1994 Annual Performance/Pay Review, Peace received a $ 5,000 bonus and a 5% pay increase. (D.I. 26 at B083.) In general, the evidence reflects that Peace was very competent at his job.

In spite of this, Peace did not always have good relationships with his co-workers. In 1999, Shellhorn added 46 year-old Tim Johnson to its sales force. (Johnson Dep. at 6:5-8.) n1 And in 2001, Shellhorn added 36 year-old Joe Grajek to its sales force. (Grajek Dep. at 7:19-21.) n2 Peace says that he and Johnson did not get along all because Peace was frustrated by the fact that Shellhorn's president, Mike Hill, permitted Johnson to do his job improperly. (Peace Dep. at 41:14-21.) It was Peace's opinion that Johnson was consistently underpricing jobs. On one occasion, Peace asked Johnson how he had arrived at an estimate for a particular job. He replied that it was none of Peace's business, to which Peace responded by telling Johnson that he "was going to punch him in his nose." (Id. at 42:1-20.)

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Johnson's date of birth is August 23, 1952. (Johnson Dep. at 5:6-7.) **[*5]**

n2 Grajek's date of birth is August 1, 1965. (Grajek Dep. at 4:20-21.)

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The addition of Johnson to Shellhorn's sales force also required Peace to relinquish some of his sales territory. (Id. at 42:17-20.) Under the new arrangement, each salesman was assigned to particular zip codes. However, Peace had the first opportunity to choose the zip codes he wanted. (Id. at 43:4-16.) Unless a customer asked for either Peace or Johnson by name, Shellhorn's receptionist would route customer calls to the appropriate salesman based

on the customer's zip code. (Id. at 43:21-44:11.) Sometimes a customer from a particular salesman's zip code would call when that salesman was out of the office. If the customer was not content to leave a voice mail, he or she was routed to whichever salesman was available at the time. That salesman would then pass the message on to the other salesman. (Grajek Dep. at 22:11-23:15.) Even in such cases, the commission went to the salesman who was assigned to that customer's zip code. (Hill Aff. P 12.)

On Friday, February 15, 2002 and Monday, February 18, 2002, events transpired that **[*6]** resulted in the end of Peace's employment with Shellhorn. However, the precise details of those events are in dispute. According to Peace, while he was out of the office on Friday, Johnson called to tell him that a call had come in from Peace's territory. Peace was upset and asked Johnson why he was getting Peace's calls. Johnson's response was that Hill had given him the call. Peace then went to the office and asked Hill why he was giving calls to Johnson. Hill said, "Because he was here." The same thing happened the following Monday. Once again, Peace went to the office to speak to Hill. (Peace Dep. at 44:23-47:1.) Peace says he confronted Hill and asked why Johnson was getting his calls. Hill allegedly answered by saying that Johnson "didn't sit on his ass like [Peace] did." (Id. at 58:2-5.) Peace contends Hill "wanted to get rid of me and he just pushed all the right buttons." (Id. at 45:18-19.) Peace says the conversation ended with Hill saying "Have [your wife] come and pick you up. It's time for you to retire." (Id. at 45:19-20.)

Hill, on the other hand, says Peace was furious on Friday and did not seem to accept his explanation as to why Johnson had been given the call. **[*7]** (Hill Aff. P 12.) After another call was transferred to Johnson on Monday, Hill says Peace was enraged and accused Johnson of "stealing [his] calls." (Id. P 13.) Hill says he suggested to Peace that he go home and calm down, but Peace declined. Apparently because Hill heard through the rumor mill that Peace had been discussing retirement, Hill asked Peace if he wanted to discuss the topic. Again Peace declined, and then proceeded to give Hill an ultimatum: either fire Johnson, or Peace would not work for the company any longer. Hill allegedly said he was not going to fire Johnson, so Peace should find a ride home. (Id. P 17.) Hill says he considered Peace's confrontations on Friday and Monday to be disrespectful and unprofessional. (Id. P 18.)

Although Hill insists he did not intend to terminate Peace (Hill Dep. at 18:4-6), it was Peace's impression that he was in fact terminated (see Peace Dep. at 23:18-20). Construing the facts in the light most favorable to Peace, the court will assume he was terminated. At that time, Peace was 57 years old. n3 After Peace left Shellhorn, Johnson and Grajek were the only two remaining salesmen. Between the two of them, they assumed Peace's former **[*8]** territory. (Grajek Dep. at 12:9-13:19.) However, in March 2003 Grajek was terminated for having less than desirable "work ethics." (Grajek Dep. at 6:22-7:6, 25:12-21.) He was replaced by Tim Johnson's brother, Kelly Johnson. (Second Hill Aff. P 3.)

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 Peace's date of birth is May 7, 1944. (Peace Dep. at 2:8-9.)

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Subsequent to his termination, Peace filed a Charge of Discrimination with the Delaware Department of Labor. (D.I. 26 at B077.) His charge was dismissed and he appealed to the Equal Employment Opportunity Commission. The EEOC issued a right-to-sue letter on August 8, 2003. (Id. P 4.) On November 4, 2003, Peace brought the present action alleging three counts of unlawful age discrimination in violation of the ADEA. (Id. PP 45-65.) Shellhorn filed this motion for summary judgment on September 10, 2004. (D.I. 22.)

A0142

## V. DISCUSSION

HN2 Allegations of age discrimination under the ADEA are analyzed under either *Price Waterhouse* burden-shifting framework (for so-called "direct evidence" cases), or the **[\*9]** familiar *McDonnell Douglas* burden-shifting framework (for so-called "indirect evidence" cases). In this case, Peace has conceded that his is an indirect evidence case, and hence, should be analyzed under <u>McDonnell Douglas Corp. v. Green, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973)</u>. (D.I. 46 at 2:25-3:2.) HN3 Under that framework, the plaintiff bears the initial burden of "establishing a prima facie case of unlawful discrimination." <u>Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994)</u> (quoting <u>McDonnell Douglas, 411 U.S. at 802</u>). This requires the plaintiff to produce evidence that (1) he was 40 years old or older at the time of his termination, (2) he was qualified for the position, n4 (3) he was terminated, and (4) he was replaced by a sufficiently younger person to create an inference of age discrimination. <u>Keller v. Orix Credit Alliance, 130 F.3d 1101, 1108 (3d Cir. 1997)</u>. Once the plaintiff successfully establishes a prima facie case, the burden shifts to the defendant to proffer a nondiscriminatory reason for the plaintiff's termination. <u>Fuentes, 32 F.3d at 763</u>. The burden then shifts back to the plaintiff to "point to **[\*10]** some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated reasons [*Fuentes* prong 1]; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action [*Fuentes* prong 2]." <u>Id.</u> at 764.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -


n4 Shellhorn contends that the plaintiff must also show that he was performing his position to the expectations of his employer. However, the case it cites for this proposition describes the plaintiff's burden as requiring him to "produce evidence that is sufficient to convince a reasonable factfinder to find . . . . that the plaintiff was qualified for the job." <u>Keller v. Orix Credit Alliance, 130 F.3d 1101, 1108 (3d Cir. 1997)</u>. Thus, the court will disregard this aspect of Shellhorn's argument.


- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -


HN4 Under the first prong of *Fuentes,* the plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions **[\*11]** in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." <u>Id.</u> at 765 (internal quotations omitted). However, "the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Id.* Alternatively, under the second prong of *Fuentes,* the plaintiff "must identify evidence in the summary judgment record that 'allows the fact finder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action.' <u>Fuentes, 32 F.3d at 762</u>. In other words, under this prong, [the plaintiff] must point to evidence that proves age discrimination in the same way that critical facts are generally proved - based solely on the natural probative force of the evidence." <u>Keller, 130 F.3d at 1111</u>. If the plaintiff is unable to carry his burden under either *Fuentes* prong, then summary judgment must be granted in favor of the defendant.

In this case, Peace **[\*12]** has established a prima facie case: (1) he was 57 at the time he parted employment with Shellhorn; (2) Shellhorn concedes he was qualified for the position (D.I. 46 at 52:12-53:1); (3) he was terminated; and (4) he was replaced by Johnson and Grajek, who were both younger (49 and 36, respectively) and less experienced than Peace.

n5 Although Shellhorn denies actually terminating Peace, its proffered reasons for the termination are (1) Peace's insubordinate, unprofessional, and disrespectful behavior during the Friday and Monday confrontations, and (2) the ultimatum. These are indeed legitimate, nondiscriminatory reasons. Thus, in order to survive summary judgment, Peace must present sufficient evidence under one of the two *Fuentes* prongs.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n5 Shellhorn argues that Peace was not replaced, but rather that his duties were merely redistributed among the remaining salesmen. The record shows that Peace (involuntarily) gave up some sales territory in 1999, when Shellhorn made Johnson a salesman. (Peace Dep. at 42:17-20.) Grajek became Shellhorn's third salesman in 2001, and Peace's remaining territory was mostly given to Grajek when Peace was terminated in 2002. (Johnson Dep. at 21:18-23.) Viewing the facts in the light most favorable to Peace, this series of events could be evidence of an attempt by Shellhorn to "young up" its sales force. Although such evidence standing alone is not enough to pass the second prong of *Fuentes,* it is sufficient for the purpose of establishing Peace's prima facie case -- which is not meant to be a particularly onerous burden. *See* Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[*13]**

## A. *Fuentes* - Prong One

Under the first prong of *Fuentes,* Peace makes four arguments. First, Peace says Shellhorn's subsequent explanations of his termination to its employees and customers are inconsistent with its proffered reasons. In particular, Hill told Shellhorn's employees that Peace "had left the company." (Johnson Dep. at 25:16.) Someone at Shellhorn also told one customer that Peace had retired (Spadden Decl. P 6), and someone told another customer that Peace was no longer with the company (Sheesley Decl. P 11). These statements, although possibly inconsistent, certainly do not render Shellhorn's proffered reasons unworthy of credence. Shellhorn was under no obligation to tell any of its employees or customers the reasons for or terms of Peace's departure. In fact, Shellhorn might unnecessarily expose itself to liability if it freely told employees and customers the (proffered) reasons for Peace's termination. So the fact that Shellhorn gave a benign and concise -- albeit slightly inaccurate -- explanation of Peace's departure to uninvolved persons cannot be used against it in this context.

Second, Peace points to Hill's deposition testimony, in which he **[*14]** is quoted as saying Kelly Johnson replaced Peace in June 2003. (Hill Dep. at 19:5-9.) Peace argues it is implausible to believe Kelly Johnson was his replacement because Peace was terminated in early 2002, which would have left a gap in the sales force for over a year. However, Hill subsequently clarified his deposition testimony through an affidavit, in which he says he intended to say "Kelly Johnson took over the territory that Wayne Peace had handled when he was with the company," but "when Wayne Peace left the company, his territory was divided among the two remaining salesmen, Johnson and Joe Grajek." (Second Hill Aff. P 3.) Given this unrebutted explanation coupled with the fact that Kelly Johnson replaced Grajek, the court does not find any implausibilities in the time line. Nevertheless, Peace insists that there are other inconsistencies. For example, he contends that Kelly Johnson was in sales when Peace began working in sales. The court assumes Peace is arguing that Kelly Johnson could not have been a replacement for Peace if he was already in sales with him. Again, there is no real inconsistency here because Shellhorn admits that Kelly Johnson worked as a salesman alongside **[*15]** Peace for a few months in 1997. (Second Hill Aff. PP 1-2; see also Kelly Johnson Aff. P 4.) It was not until Grajek was terminated in 2003 that Kelly Johnson was re-hired as a salesman and assumed Peace's old territory. (Second Hill Aff. P 3;

Kelly Johnson Aff. P 7.) Peace also argues that Hill's statement that Peace's sales territory was split between Tim Johnson and Grajek is inconsistent with the testimony of both salesmen. Tim Johnson and Grajek testified that Grajek assumed essentially all of Peace's territory. (Johnson Dep. at 21:12-23; Grajek Dep. at 12:9-13.) However, Grajek's testimony also reveals that he exchanged some of Peace's former territories for some of Tim Johnson's territories. (Grajek Dep. at 12:15-13:24.) In fact, this is consistent with Hill's testimony:

> Q Do you recall you the sales territory was split? Was it equally divided between Grajek and [Tim] Johnson?
>
> A My recollection was that I asked the two of them to work it out between them and give me a new list of zip codes, which is what took place.

(Hill Dep. at 19:20-24.) Essentially, in order to find inconsistency Peace implicitly urges the court to strictly construe Hill's use of the **[*16]** word "split" to mean "divided in half." Even if it was reasonable to do so (which it is not), Peace misses the point of the prong-one *Fuentes* inquiry. Peace's arguments about who replaced him and how his territory was divided do not show that Shellhorn has strayed from its proffered reasons: (1) Peace was insubordinate, unprofessional, and disrespectful, and (2) the ultimatum. Thus, the court does not find Peace's second argument persuasive.

Peace's third argument is also unpersuasive. At the outset, he contends Hill's testimony regarding the ultimatum is incoherent:

> Q Why did Mr. Peace's employment end on [February 18, 2002]?
>
> A Mr. Peace suggested a contingency for his continued employment and I didn't accept it.
>
> Q What do you mean or what did he mean by contingency?
>
> A Mr. Peace said he would not continue to work for Shellhorn & Hill if Tim Johnson worked for the company.
>
> Q And how did you respond to that?
>
> A I said, "I'm not firing Tim, so you'd better find a ride home."

(Hill Dep. at 18:10-19.) The court fails to grasp exactly what is incoherent about this testimony. Even if Hill's testimony is not incoherent, Peace contends it is inconsistent **[*17]** with Grajek's statement that "all [he] really heard was Mike [Hill] telling Wayne [Peace] to go home." (Grajek Dep. at 14:21-22.) Once again, the court does not understand how this is inconsistent with Hill's testimony. Nevertheless, Peace further argues that Hill's testimony is contradicted by Peace's own testimony in which he denies having presented Hill with an ultimatum. (Peace Dep. at 49:2-4.) However, in *Pamintuan v. Nanticoke Mem'l Hosp.,* the Third Circuit held that a mere "contrary statement" by the plaintiff is insufficient to create a genuine issue of material fact under the first prong of *Fuentes.* 192 F.3d 378, 387 (3d Cir. 1999). Peace's mere denial that he gave Hill an ultimatum is similarly insufficient to withstand summary disposition.

**A0145**

Finally, Peace takes issue with Hill's claim that he "merely asked Peace 'if [the two of them] should discuss retirement [for Plaintiff].'" (D.I. 45.) Peace argues that this "is weak because Plaintiff previously never approached Hill about retirement." (Id.) Even if true, it would be unreasonable to deem Shellhorn's proffered reasons unworthy of credence based on this alone.

In sum, none of Peace's arguments, **[*18]** viewed individually or collectively, persuade the court that a genuine issue of material fact is present under the first prong of *Fuentes*. Thus, the only avenue remaining available to Peace is prong two.

## B. *Fuentes* -- Prong Two

Under the second prong of *Fuentes*, Peace argues that the natural probative force of the record evidence is sufficient to allow a reasonable factfinder to conclude that discrimination was more likely than not a motivating or determinative cause of his termination. First is the set of statements by Hill, which Peace contends is direct evidence of age bias. At some point during the Monday confrontation, Hill allegedly "made a comment that Tim Johnson didn't sit on his ass like [Peace] did." (Peace Dep. at 58:4-5.) Peace argues that this comment is evidence of bias because Johnson is younger than Peace. The court disagrees. The most it would be reasonable to infer from this comment standing alone is that Hill thought Peace was lazy. Peace's next assertion is that during the same conversation Hill said, "Have [your wife] come and pick you up. It's time for you to retire." (Peace Dep. at 45:19-20.) Also, according to Peace, several years prior **[*19]** Hill commented that "an employee who has been with the Company over ten years is a waste or a liability." n6 Taken in combination, these statements might support Peace's contention. It could be argued that the "ten years" comment demonstrates Hill's generally negative attitude toward older workers, n7 and that the "time for you to retire" comment supplies a causal link between Hill's attitude and Peace's termination. However, in order to accept this argument, a factfinder must infer, by a preponderance of the evidence, that the "ten years" comment is in fact a manifestation of Hill's attitude toward older workers, and that the "time for you to retire" comment does in fact supply the necessary causal link. In other words, because Hill did not explicitly say "I am firing you because you are old," the factfinder must infer that his comments amounted to such a statement in order to accept Peace's argument. Such an inference would be reasonable only if it is supported by other evidence in the record. n8

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n6 The timing of this statement is unclear from the record. The declaration of Mark Smith, a former Shellhorn employee, does not specify the date he allegedly heard Hill make the comment. Peace also claims to have heard a similar comment from Hill "when Judy Daley [sic] left the company" (Peace Dep. at 64:5-15), which would have been in April 1999 (Dailey Aff. P 4). Yet counsel for Peace stated that he believes the comment was made around ten years prior. (D.I. 46 at 34:18.) In any case, it was at least several years before Peace was terminated. **[*20]**

n7 In opposition to this proposition, Shellhorn cites to *EEOC v. Clay Printing Co.*, 955 F.2d 936 (4th Cir. 1992). In that case, the Fourth Circuit was confronted with an employer's statement that "if employees had been there 10 years or more, they needed to move on." *Id.* at 942. The court rejected the plaintiff's contention that such a statement was evidence of age bias because it "applies equally to employees under age 40 as well as employees over age 40." *Id.* This court respectfully disagrees. It certainly might be reasonable to conclude that the employer was merely talking about length of service. However, that does not mean it would be unreasonable, in light of other evidence, to conclude that the employer was

A0146



talking about age. Therefore, the court finds Shellhorn's reliance on *Clay Printing* to be misplaced.

n8 The court does *not* hold that a plaintiff cannot prevail absent explicitly discriminatory statements by the employer. Rather, the court merely holds that when the plaintiff introduces only *arguably* discriminatory statements and seeks to equate them with *explicitly* discriminatory statements, an inferential leap is required which would be unreasonable in the absence of other record evidence.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[\*21]**

Peace's strongest evidence arises from the fact that he was replaced by two younger workers.n9 In 1999, 46 year-old Johnson was transferred into sales. (Johnson Dep. at 5:6-7; 6:5-8.) As a result, Peace was forced to give up some of his sales territory. (Peace Dep. at 42:17-20.) Then in 2001, 36 year-old Grajek was brought into sales. (Grajek Dep. at 4:20-21; 7:13-21.) Therefore, Shellhorn's termination of the 57 year-old Peace shortly thereafter, might also support his contention. However, whenever an employee of Peace's age (57) is let go, it seems reasonable to presume the chances are substantial that he will be replaced by someone younger. So while his replacement is sufficient to establish a prima facie case, absent other evidence, this fact alone will not support an inference of discrimination.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n9 Peace breaks this into two pieces: (1) "Hill's youth movement to bring younger sales people into the sales department;" and (2) Hill's "usurpation of Plaintiff's sales territory." (D.I. 25 at 26.) Both ideas are encapsulated by re-framing the issue as Peace's replacement by two younger workers. Peace also includes the 1998 termination of 41 year-old salesman Mark Smith within the "youth movement." (Id. at 6.) However, Johnson was transferred into sales in 1999 at the age of 46. (Johnson Dep. at 5:6-7; 6:5-8.) Therefore, the evidence does not support Peace's contention that Smith was terminated as part of a "youth movement."

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[\*22]**

In spite of Peace's assertions to the contrary, the record simply does not contain such evidence. Peace points to several older workers who Hill "discharged, laid off, or harassed and forced to retire." (D.I. 25 at 26.) To test these allegations, the court extracted as much of an age. profile of Shellhorn's employees as the record permits. The picture this profile paints is not of a company that discriminates against older workers. For example, the court found employees terminated n10 from Shellhorn with the following ages: 23, 27, 31, 36, 37, 38, 30s, 40, 41, 45, 40s, 50, 50s, 55, 57, 60, 60s. n11 (Hill Aff. P 19; Second Hill Aff. P 4(b); Peace Dep. at 61:5-15, 68:21-69:1, 71:12-72:6, 74:16-20, 75:7-14, 76:13-77:14, 83:10-14; Stigler Decl. P 6; Smith Decl. P 7; Grajek Dep. at 26:3-4.) The court also found four employees hired by Shellhorn with the following ages: 52, 58, 50s, 50s. (Hill Aff. PP 20, 21; Peace Dep. at 74:2-11, 74:21-75:5.) Shellhorn employs seventeen long-term employees with the following ages: 77, 52, 62, 45, 56, 52, 63, 53, 43, 44, 59, 59, 55, 53, 40, 53, 58. (Hill Aff. P 22.) Finally, as of June 2002, Shellhorn had the following age distribution among its employers: **[\*23]**

    70s: 1 employee;
    60s: 2 employees;
    50s: 19 employees;

**A0147**

40s: 15 employees;
30s: 12 employees; and
20s: 10 employees.

(D.I. 24 at A 106.) Therefore, Peace's assertion that Shellhorn engages in a pattern or practice of discrimination is belied by the record, and thus, does not support a reasonable inference of discrimination.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n10 Shellhorn disputes whether several of these employees were actually terminated. For the purposes of this motion, the court assumes they were in fact terminated.

n11 For the sake of their privacy, the court declines to recount the names of these ex-employees in its opinion. The age at termination of certain ex-employees is unclear from the record. In those case, the best evidence indicates that the employee was in a certain age range, such as thirties (30s).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The same is true of his remaining arguments under prong two. In particular, Peace points to Shellhorn's explanation of his departure to its employees and customers, and to the lack of criticism he received in **[*24]** the performance of his job. The court has already discussed and disposed of the first of these issues. As to the lack of criticism, the fact that he performed his job competently does little to support an inference of discrimination. Certainly, the court can see the relevance of this evidence (perhaps more appropriately in the context of the first prong of *Fuentes*) if it is coupled with other evidence. However, the only other pieces of evidence with any potentially probative value are Hill's "ten years" and "time for you to retire" comments, and Peace's replacement by younger salesmen. Taken together, this evidence is greatly overshadowed by Shellhorn's employee profile. Thus, given the fact that Peace has adduced a mere scintilla of evidence, he has failed to carry his burden under prong two of *Fuentes*.

## VI. CONCLUSION

Because Peace has failed to carry his burden under either prong of *Fuentes,* the court is obliged to grant the Shellhorn's motion for summary judgment.

Dated: February 18, 2005

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

## ORDER

IT IS HEREBY ORDERED THAT:

1. The defendant's motion for summary judgment be GRANTED; and

2. **[*25]** The plaintiff's complaint be DISMISSED with prejudice.

**A0148**

Dated: February 18, 2005

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

Source: Legal > / . . . / > **DE Federal District Courts** ℹ️
Terms: **name(peace)** (Edit Search | Suggest Terms for My Search)
View: Full
Date/Time: Saturday, May 13, 2006 - 4:52 PM EDT

* Signal Legend:
 - Warning: Negative treatment is indicated
Q - Questioned: Validity questioned by citing refs
△ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
Ⓘ - Citation information available
* Click on any *Shepard's* signal to *Shepardize*® that case.

About LexisNexis | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

**A0149**