

SECURITY DEPARTMENT                    **STATEMENT**

Date Of Report _12-29-03_                                    Case # _03-2521_

Time of Report _8:45 A.M._                                    Page _2 of 2_

The following statement taken from _____ who

resides at _16 INVERNESS CT._      _DOVER_      _DE._
Street Address              City              State _19904_

Phone Number: _____ (If Dover Downs Employee, Substitute Department Name and Position for Residency)

1. _NO._

2. _WHO WAS YOUR SUPERVISOR AT THE TIME OF THE RACE?_

3. _DAVE PELLY._

4. _HAVE YOU EVER RACED ON THE TRACK?_

5. _NO._

6. _WHO WAS PRESENT WHEN YOU HEARD DISCUSSION OF_

7. _THE RACE AT 10:30 A.M. THAT MORNING?_

8. _JUST BRIAN WILLIAMS AND BILL LARNICK._

9.

10.

11.

12.

13.

14.

15.

16.

17.

18.

19.                                                      **D 0363**

20.
                                        **B-81**
Signature _Stephen Nelson_                          Date _12/29/03_

Statement taken at _SECURITY OFFICE_    Witnessed by _Paul Beck_

DOS-113

N w 1

**SLOTS**

SECURITY DEPARTMENT

**STATEMENT**

Date Of Report  12-26-03

Case #  03-2531

Time of Report  2:35 P.M.

Page  1/2

The following statement taken from  RICHARD WERTZ  who

resides at  105 KEVIN COURT  DOVER  DE,

Street Address          City          State 19904

Phone Number:  678-0748  (If Dover Downs Employee, Substitute Department Name and Position for Residency)

1.  WHAT IS YOUR NAME AND POSITION WITH DOVER DOWNS?

2.  RICHARD WERTZ AND I AM DIRECTOR OF FACILITES

3.  WHO IS YOUR BOSS?

4.  JERRY DUNNING.

5.

6.  I WAS IN MY OFFICE AT APPROXIMATELY 12:30 P.M. I

7.  RECEIVED A PHONE CALL FROM BOB MORRISON (CELL PHONE)

8.  BOB INFORMED ME OF TWO EMPLOYEES INVOLVED IN

9.  AN ACCIDENT ON TURN FOUR. I ASKED HIM IF ANYBODY

10.  WAS HURT. HE REPLIED, YES, BRIAN WILLIAMS AND

11.  PAREMEDICS WERE ENROUTE, I ASKED HIM IF SECURITY

12.  HAD BEEN NOTIFIED AND HE REPLIED, YES.

13.  DID YOU KNOW PREVIOUSLY THIS RACE WAS TO BE?

14.  NO

15.  DO YOU KNOW OF ANYBODY THAT IS EMPLOYEE THAT

16.  HAVE HAVE RACED ON THE TRACK ANYTIME?

17.  NO .                                               D 0364

18.  DID YOU GO TO THE SCENE OF THE ACCIDENT?

19.  NO.

20.  WERE YOU AT THE CHRISTMAS PARTY IN THE CHALET?
YES.

Signature  Richard Wertz  12-26-03

Date  12-26-03

Statement taken at  SECURITY OFFICE  Witnessed by  Fred G. Imel  B-82

DDS-113



SECURITY DEPARTMENT                    **STATEMENT**

Date Of Report _12-26-03_                                    Case # _D3-2531_

Time of Report _2:35 P.M._                                  Page _2 of 2_

The following statement taken from _RICHARD WERTZ_
_____ who

resides at _105 KEVIN COURT_    _DOVER_         _DE._
            Street Address        City            State  _19904_

Phone Number: _____ (If Dover Downs Employee, Substitute Department Name and Position for Residency)

1. _WHO WAS AT THE PARTY?_
2. _RICH DUNCAN, AL (I DON'T KNOW HIS LAST NAME, ANN_
3. _I RODE OVER TO THE PARTY TOGETHER, LINDA RENNINGER,_
4. _AND SOME THAT I CAN'T REMEMBER, AL'S LAST NAME IS BALDWIN._
5. _WAS ALCOHOL PRESENT AT THE PARTY?_
6. _No._
7. _THAT IS ALL I CAN SAY ABOUT THIS INCIDENT_
8. _____
9. _____
10. _____
11. _____
12. _____
13. _____
14. _____
15. _____
16. _____
17. _____
18. _____
19. _____
20. _____

                                                    D 0365

Signature _Richard Wertz   12-26-03_                        B-83

Statement taken at _SECURITY OFFICE_    Witnessed by _Frank M. Mayer_   Date _____

DDS-113

NW 2
2003-2521



DOVER
DOWNS
ENTERTAINMENT
INC.

AFTER ACTION REPORT
Accident – Pit Road / Infield
23 Dec, 2003

D 0366

### Facility Grounds Maintenance
Dec 23, 2003

**To:**  Director of Facilities, Rich Wertz
**From:** Manager, Facility Grounds Maintenance, Bob Morrison

**Memorandum for Record**
**Subject:** Preliminary Report / Accident on Pit Road, 23 December, 2003

I am capturing what happened now so as to keep the actions that were executed during this event clear, so they can be used in forming lessons learned and future reference. This will also serve as a timeline of how events went down as observed by myself.

On December 23, 2003 at approximately 12:16 p.m., while at the chalet preparing the area for the department Christmas party scheduled for 12:30 p.m. The following indicates a timeline of events:

- **Timeline**

Approximate time

- *12:16 p.m.*   While at chalet heard radio traffic stating " Call 911, Call 911" I radioed back to the caller who I have not identified because the person was yelling the call over the radio to where the ambulance was needed; they replied " The infield".

- *12:17 p.m.*   I called 911 from the chalet in which I reached Surveillance and Scott, a Surveillance Operator. I relayed to him that we had an accident at the infield and to call for an ambulance. I did not have any further information at this time. Further attempts were made to get information via radio but nobody responded.

- *12:19 p.m.*   I departed the chalet in route to the accident location, via my personnel vehicle.

- *12:24 p.m.*   I arrived on site and found that a black ford mustang was on the track and pointed southeast toward the stands about a third of the way up the track just coming out of the turn 4, about 100 feet from the entrance to pit road.

- *12:25 p.m.*   After stopping my vehicle, I proceeded to the passenger side of the vehicle and found Rich Williams cradling Brian Williams upper body in his arms. Brian Williams' upper body was lying across onto the passenger side of the vehicle and his feet still on the driver's side.

I asked Rich what happened, at which time he stated that Brian had a seizure. I asked his age (29) and if he was breathing, which he appeared he was and was told "Yes"

I called back to Surveillance and talked to Rich Ogden, Surveillance Supervisor and brought him up to date on the information I had received once on the ground. At this time I had not checked the driver's side and had not been told there was damage to the left side of the vehicle. I informed Rich at that time that there was NOT a vehicle accident but a seizure. This information was relayed via my personnel cell phone.

**Summary:**

Understand two individuals were racing on pit road headed southbound, subjects involved were Ernie Carlisle, H-0725, and Brian Williams, H-1280. I understand that other individuals were assisting by blocking avenues into the area and observing, but this is still under investigation and hearsay. Vehicle was moved to the Busch Garage area off the track until it can be removed. The car appeared to not be derivable

Compiled and Submitted by:

Bob Morrison
Maintenance



NW 3

**SECURITY DEPARTMENT**                    **STATEMENT**

Date Of Report  Dec 24, 03

Time of Report  1440

Case #  ~~2003 - 2521~~

Page  1

The following statement taken from  Jerry Clifton #725

who

resides at  15 W Center St          Harrington          De
          Street Address              City              State

Phone Number:  X3279          (If Dover Downs Employee, Substitute Department Name and Position for Residency)

1. I arrived at work around 12:30 on Dec 23, 2003 after the
2. accident had already taken place.
3. I had no prior knowledge of this incident and was not
4. aware if it was pre arranged.
5.
6. No knowledge of prior races.
7.
8. Attended the Christmas party at the chalet around 12:30 pm.
9. No alcohol at the party.
0. My supervisor is Charles Lockhart je

1.
2.
3.
4.
5.
6.
7.
8.
9.                                        D 0369
0.

Signature  Jerry Clifton                    Date  Dec 24, 03

Statement taken at  DD Conference room #1    Witnessed by  Joe McNair     B-87

IS-113



NW 4

SECURITY DEPARTMENT                    **STATEMENT**

Date Of Report 12-24-03

Time of Report 1300                                                Case # 2003-2521

                                                                  Page 1 of 1

The following statement taken from _Thomas Curtis  5871  Supervisor_ _____ who

resides at 1015 Proctors Purchase Rd    Hartly                          DE
          Street Address                City                          State

Phone Number: _____ (If Dover Downs Employee, Substitute Department Name and Position for Residency)

1. I was at the maintenance shop when I heard the
2. call over the radio, to call 911 at that time I
3. went to the scene to see what had taken
4. place. At this time I saw Brian Williams had
5. crashed his car into Pit Road wall. At the
6. scene I also saw, Rich Williams, Mike Monahan, Mike
7. Peters, Bob Morrison, Ernie Carlisle, John Patterson
8. and Russel Hands. Then security showed up. I also
9. saw Larry Barner & Frank Outten. I saw
10. John Patterson had controll of Brians neck, along
11. with Rich Williams. Then the ambulance came, to-
12. Brian away. At this time I went to lunch,
13. then was cleared to move mustang from Auto
14. track the the Busch Garage. I did not attend
15. the party at the chalet, I did not see any
16. Artole anywhere at anytime = years ago, I heard
17. of some dragracing on Pit Road. But that is
18. All I know. TC

                                                                  D 0370

Signature _____    B-88

Statement taken at OD Conf. room #7        Witnessed by _Joe McNeir_    Date 12/24/03

NW 5

**SLOTS**

SECURITY DEPARTMENT                    **STATEMENT**

Date Of Report Dec 24, 2003                                    Case # 03-2521

Time of Report 1020                                            Page 1 OF 2

The following statement taken from Larry Barner Emp # 5870 _____ who

resides at S Finish Line Drive    Dover    19901    DE
                Street Address        City          State

Phone Number: 674-4600 X 3216 ____ (If Dover Downs Employee, Substitute Department Name and Position for Residency)

1. Maintenance
2. BoB, Tom curtis
3. I was outside of shop, AT heard on radio call 911 so I call
4. and got security and told them to call then, on radio I heard
5. they are on the way so Then I went down there
6. I was up the shop talking to Frank Outten when all this happen
7.
8. No I did not know about the race.
9. The only people on track racing is monster Racing
10. No Permission giving to any one to race on track
11. When I got there the only thing I saw was the car sitting on turn 4
12. and people around helping then the car started to roll back
13. So I put my truck behind it to stop it from rolling.
14. Did not hear anything about the race
15. I was up the shop when this race happen
16. Bill said he was there
17. Yes People did race in the past. it was years ago over 5 years
18. No I was not at christmas party
19. Don't know (10) at the christmas party                      D 0371
20. Bob & Tom on duty 12/23/03 (13) unknow did not go to party, (15) No never heard

Signature Larry Barner                                          Date 12/24/03

Statement taken at Dover Downs Safety Office    Witnessed by ___ Ross 0762    B-89

DDS-113

*HW 5*
*2003-2521*

Interview of Larry Barner Emp. No. 5870 conducted on Dec. 24, 2003 at 1020 in the Safety Office. In addition to his statement Larry told me that he was talking to Frank Otten outside the Maintenance Shop getting ready to get into his vehicle to leave for lunch when he heard the radio transmission for someone to call 911. He thought that "Donny had got caught in the electric wires." He further explained that he does not frequent the break room or hang around inside, to have heard any talk of a race. He knew of none personnaly racing their privately owned vehicles on the track, but had heard stories of it.                    Erv Ross 0762  24 Dec 2003

Witness

D 0372



*NWB*

**SECURITY DEPARTMENT**                    **STATEMENT**

Date Of Report *12-24-03*                                    Case # *03-2531*

Time of Report *9:00 A.m.*                                    Page *1 of 3*

The following statement taken from *George Courtney* _____ who

resides at *323 Cambridge Rd.*    *Camden*        *Del.*
        Street Address        City        State

Phone Number: _____ (If Dover Downs Employee, Substitute Department Name and Position for Residency)

1. *What is your name and position with Dover Downs?*
2. *My name is George Courtney and I am a Security*
3. *Officer assigned to Outside Patrol.*
4. *How long have you worked as the Outside Security*
5. *Rover?*
6. *I have worked the day shift outside for three years*
7. *Have you ever seen anyone of our Dover Downs Employees*
8. *race on the track at anytime?*
9. *No, I have never seen any employee race on*
10. *the track ever.*
11. *Have you heard of any employee racing on the track?*
12. *No, I never have.*
13. *Have you ever seen any employee on the track*
14. *in a personal vehicle?*
15. *No I have never seen any of them on the*
16. *track in any vehicle. Other then company vehicles.*
17. *Has anyone ever told you they have knowledge*
18. *of any employee that talked of racing on the track?*
19. *No.*

D 0373

20. *What were you doing when the race occurred at noon*

Signature *George Courtney*                         Date *12-24-03*

Statement taken at *Security Office*    Witnessed by *Frank G. Melwe Jr*    B-91

*HW 6*

**SLOTS**

SECURITY DEPARTMENT   **STATEMENT**

Date Of Report  *12 - 24 - 03*

Time of Report  *7 : 00 A.M.*

Case #  *03 - 2531*

Page  *2 of 3*

The following statement taken from  *George Courtney*  who

resides at  Street Address  *SAME*   City   State

Phone Number: _____   (If Dover Downs Employee, Substitute Department Name and Position for Residency)

1. *on 12-23-03*
2. *I was on the Telephone in the Casino. I was*
3. *talking to Scott in Surveillance.*
4. *Did you respond to the scene of this accident?*
5. *I was dispatched by Rich Ogden in Surveillance.*
6. *to an accident on the fourth turn of the track and*
7. *I proceeded there.*
8. *What did you find when you arrived?*
9. *Bob Monson, Tom Curtis, Mike Monohan, Frank*
10. *the Carpenter, I don't know his name.*
11. *What was this location?*
12. *At the entrance to Pit Row on Turn Four.*
13. *What actions did you take?*
14. *I asked if anyone was hurt and they said*
15. *not seriously.*
16. *Who were drivers of the vehicles?*     D 0374
17. *The 1987 Mustang was driven by Brian Williams.*
18. *The Camaro was driven by Ernie. I Don't know*
19. *his last name.*
20. *Where were they located when you arrived?*

Signature  *George Courtney*

Date  *12 - 24 - 03*

Statement taken at  *Security Office*   Witnessed by  *Frank A. Melvin Jr.*   B-92



*HWB*

**SECURITY DEPARTMENT**                          **STATEMENT**

Date Of Report   12-24-03                                    Case # 08-25-31

Time of Report   9:00 AM                                     Page   3 of 3

The following statement taken from   GEORGE COURTNEY
                                                                          who

resides at _____ SAME _____
          Street Address              City                      State

Phone Number: _____ (If Dover Downs Employee, Substitute Department Name and Position for Residency)

1. Brian was still in his vehicle. Ernie was standing
2. near Brian's vehicle.
3. What did you do next?
4. I was asked to get Samantha Muncy (Shift Manager)
5. and took her to the scene.
6. What else can you tell me about this accident?
7. I think Samantha told me that the two were
8. racing and the hood on one of them flew up and
9. blinded the view of who the vehicle was traveling.
10. I took pictures for Samantha for her report
11. of the incident and I cannot add anything further
12. _____
13. _____
14. _____
15. _____
16. _____
17. _____
18. _____
19. _____        D 0375
20. _____

Signature   George Courtney          B-93

Statement taken at   Security Office          Witnessed by   Frank G. Welge          Date   12-24-03



NW 1

SECURITY DEPARTMENT

**STATEMENT**

Date Of Report  12-24-03

Time of Report  1:25 P.M.

Case #  03-2521

Page  1 of 3

The following statement taken from ___ DONALD SYLVESTER ___ who

resides at  149 CHARLES POKERD.  DOVER

Street Address          City

Phone Number:  730-0275  (If Dover Downs Employee, Substitute Department Name and Position for Residency)

State  19904

1.  DONALD SYLESTER IS MY NAME AND I AM

2.  AN ELECTRICIAN FOR DOVER DOWNS.

3.  WHO IS YOUR BOSS?

4.  BOB MORRISON

5.  WHAT DO YOU KNOW ABOUT THE ACCIDENT ON

6.  THE TRACK ON 12-23-03 ?

7.  I WAS WORKING ON THE LIGHTS ON THE TRACK

8.  I HAD A DIESEL RUNNING AND HEARD NOTHING

9.  WHILE I WAS ON THE LIFT AND HEARED ABOUT

10.  THE ACCIDENT OVER THE RADIO, I STARTED

11.  LOOKING AROUND AND SAW A FEW PEOPLE

12.  GATHERING ON THE TRACK. I WAS ONE THOUSAND

13.  FEET AWAY.

14.  DID YOU RECOGNIZE ANYONE GATHERING?

15.  NO.

D 0376

16.  I SAW THE COPS COME AND AMBULANCE.

17.  DID YOU HEAR ABOUT THE RACE BEFORE IT

18.  HAPPENED ?

19.  I DON'T RECALL HEARING ANYTHING PRIOR.

20.  DID YOU HEAR ANYTHING AFTER THE RACE

Signature  _Donald M Sylvester_

Statement taken at  _Security Office_          Witnessed by  _Fisher Mosley_

Date  12-24-03

DDS 112

B-94



*N W 7*

**SECURITY DEPARTMENT**

### STATEMENT

Date Of Report ___12-24-03___

Time of Report ___1:25 P.M.___

Case # ___03-2521___

Page ___2 of 2___

The following statement taken from ___DONALD SYLVESTER___ _____ who

resides at ___SAME___ _____
　　　　　Street Address　　　　　　　　　　　City　　　　　　　　　　　　　State

Phone Number: ___SAME___ _____
　　　　　　　　　　(If Dover Downs Employee, Substitute Department Name and Position for Residency)

1. I CAME OFF THE LIFT AND WENT TO THE
2. SCENE. I SAW A WRECKED CAR SITTING.
3. I DIDN'T GET THAT CLOSE.
4. DID YOU ATTEND THE PARTY AT THE CHALET?
5. I WAS THERE A LITTLE AFTER NOON.
6. WAS ANY ALCOHOLIC BEVERAGES AT THE
7. CHALET?
8. NO, WATER AND SODA.
9. DO YOU KNOW WHERE YOUR BOSS WAS AT
10. THE TIME OF THE ACCIDENT?
11. I DON'T KNOW.
12. HAVE YOU EVER HEARD OF ANYONE RACING
13. ON THIS TRACK BEFORE?
14. I HAVE HEARD OF THEM RACING. BUT I
15. HAVE NEVER SAW IT. I DON'T KNOW OF
16. ANYONE SPECIAL THAT SAID IT. I AM
17. A LONE WOLF ELECTRICIAN.
18. WHO WAS AT THE PARTY WHILE YOU WERE THERE?
19. DEAN COOKING WING, RICHARD WERTS AND RICHARD
20. DUNCAN WERE THERE, BOB MORRISON AND HIS

D 0377

Signature ___Donald M. Sylvester___

Statement taken at ___Security Office___　　Witnessed by ___Frank Milly___　　Date ___12-24-03___

DDS 112　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　B-95



*Nw 7*

SECURITY DEPARTMENT                    **STATEMENT**

Date Of Report   *12-24-03*                                    Case # *03-2521*

Time of Report   *1:25 P.M.*                                   Page   *343*

The following statement taken from _____ *DONALD SYLVESTER* _____ who

resides at _____
       Street Address               City              State

Phone Number: _____ *SAME* _____ (If Dover Downs Employee, Substitute Department Name and Position for Residency)

1. *WIFE WERE THERE. DONALD STRAW, MARTY*
2. *(I DON'T KNOW HIS LAST NAME) CARLISLE,*
3. *SAM (I DON'T KNOW HIS LAST NAME, JERRY*
4. *CLIFTON WAS THERE. LINDA WAS THERE ALSO*
5. *IS THERE ANYTHING ELSE YOU CAN ADD TO*
6. *THIS STATEMENT?*
7. *NO.*
8. _____
9. _____
10. _____
11. _____
12. _____
13. _____
14. _____
15. _____
16. _____
17. _____
18. _____
19. _____      **D 0378**
20. _____

                                 **B-96**

Signature   *Donald M Sylvester*

Statement taken at   *SECURITY OFFICE*   Witnessed by   *Linda M Meling*   Date *12-2*



*NW 8*

SECURITY DEPARTMENT                    **STATEMENT**

Date Of Report  Dec 24, 2003                                        Case #  03- 2521

Time of Report  1130A                                              Page  1 of 3

The following statement taken from  DAVE PELLY      EMP NO. 6605 _____ who

resides at  MAINT DEPT / LANDSCAPE DIV      LANDSCAPE MANAGER _____
            Street Address                  City                              State

Phone Number:  (302) 674-4600 X3214 (If Dover Downs Employee, Substitute Department Name and Position for Residency)

1. RICH WERTZ IS MY BOSS.

2. I WAS AT THE CHALET AT APROX. 1030AM PREPING THE AREA FOR THE

3. CHRISTMAS PARTY. I LEFT THERE AND WENT TO THE MAINT. SHOP TO GET

4. MORE SUPPLIES ( I THINK IT WAS THE MEATBALLS) FOR THE PARTY. WHILE

5. THERE I HEARD A RADIO CALL THAT THERE WAS AN ACCIDENT ON THE

6. TRACK AND 911 WAS NEEDED. FRANK OUTEN, TOM CURTIS AND MYSELF

7. GOT INTO VEHICLES AND HEADED FOR THE TRACK. BOB MORRISON WAS

8. AT THE CHALET AND ASKED AS I PASSED THAT I KEEP HIM POSTED.

9. WHILE ON THE WAY PETE (MIKE PETERS) MADE A RADIO CALL THAT THE

10. BACK NEEDED TO BE OPENED AND TOM CURTIS SAID HE WAS ON IT.

11. ON ARRIVAL I NOTICED BRIAN'S CAR ON THE TRACK WITH RICH

12. WILLIAM THERE & JOHN PATTERSON HOLDING BRIAN'S NECK. ALSO THERE

13. WAS ERNIE CARLISLE, MIKE MONOHAN. I THINK TOM CURTIS AND

14. FRANK OUTTEN ARRIVED BEFORE ME.

15. THERE WAS SOME TALK OF A SEPERATE PIZZA PARTY BY THE

16. GUYS WHO DIDN'T WANT TO ATTEND THE REGULAR CHRISTMAS PARTY

17. BECAUSE OF BOB.

18. I HAD NO PREVIOUS KNOWLEDGE OF A RACE TO TAKE PLACE.

19. I HAVE NO KNOWLEGE OF PREVIOUS RACING. I HAVE HEARD OF PEOPLE

20. WHO HAVE TAKEN THEIR VEHICLE TO SEE HOW FAST IT WOULD GO,

Signature _____          Date _____

Statement taken at  VIA PHONE - SAFETY OFFICE   Witnessed by _____

B-97                                                           D 0379



*NW8*

SECURITY DEPARTMENT                    **STATEMENT**

Date Of Report Dec 24, 2003

Time of Report 1130A                              Case # 03-2521

The following statement taken from DAVE PELLY   EMP NO. 6605      Page 2 of 3 _____ who

resides at _____
              Street Address                    City                    State

Phone Number: _____ (If Dover Downs Employee, Substitute Department Name and Position for Residency)

1. BUT THEY HADN'T RACED. I AM UNSURE, NOT POSITIVE WHO, BUT

2. THE LAST I HEARD OF IT WAS 5 YRS AGO. POSSIBLY ERNIE CARLISLE.

3. AND JERRY CLIFTON.

4. I HAVE NO KNOWLEDGE OF ANYONE BEING GIVEN PERMISSION TO RACE ON

5. THE TRACK

6. NO ONE EVER TOLD ME THIS RACE WAS GOING TO HAPPEN.

7. I WAS NOT PRESENT WHEN THIS RACE OCCURRED. I WAS AT THE MAINT.

8. SHOP

9. NO ONE REALLY TALKED ABOUT THE INCIDENT. ERNIE DID ADMIT HE WAS

10. RACING DOWN PIT ROW AT THE SCENE AFTER WE SAW HIS CAR IN THE

11. BUSH GARAGE.

12. I HAVE NOT HEARD OF EMPLOYEES RACING ON THE TRACK IN THE PAST.

13. I WAS AT THE CHRISTMAS PARTY STARTING AT 1030A WHEN I BEGAN

14. SET UP TILL THE TIME I WENT TO THE MAINT SHOP FOR SUPPLIES. THEN

15. RETURNED AFTER RESPONDING TO THE ACCIDENT FROM THE MAINT. SHOP.

16. PEOPLE ATTENDING CHRISTMAS PARTY WERE MYSELF, BOB MORRISON,

17. ALYSA (SECRETARY), LINDA RENNINGER, RICH DUNCAN, STEVE MAHER, AND

18. DIFFERENT BUILDING MAINT PERSONNEL (I DON'T KNOW THEIR NAMES). ARRIVALS

19. AFTER THE INCIDENT WERE DON SLYVESTER AND JERRY CLIFTON.

20. RICH WERTZ IS MY SUPERVISOR AND I DON'T KNOW WHERE HE WAS AT THE

Signature _____ Date _____

Statement taken at VIA PHONE - SAFETY OFFICE   Witnessed by _____

B-98

D 0380



*NW 8*

SECURITY DEPARTMENT

## STATEMENT

Date Of Report Dec 24, 2003

Case # 03-2521

Time of Report 1130 A

Page 3 of 3

The following statement taken from DAVE PEZZY EMP NO. 6605 _____ who

resides at _____

Street Address _____ City _____ State

Phone Number: _____ (If Dover Downs Employee, Substitute Department Name and Position for Residency)

1. TIME OF THE RACE. I ASSUME AT THE CHRISTMAS PARTY.
2. RICH WERTZ WAS ON DUTY 12/23/03.
3. THERE WAS NO ALCOHOL AT THE PARTY.
4. _____
5. _____
6. _____
7. _____
8. _____
9. _____
10. _____
11. _____
12. _____
13. _____
14. _____
15. _____
16. _____
17. _____
18. _____
19. _____          D 0381
20. _____ B-99 _____

Signature _____          Date _____

Statement taken at VIA PHONE - SAFETY OFFICE Witnessed by E Ross



NW 9

**SECURITY DEPARTMENT**                    **STATEMENT**

Date Of Report  12-24-03                               Case #  03-2521

Time of Report  11:10 AM                               Page  1 of 3

The following statement taken from  FRANK DUTTEN                    who

resides at  18880 SMALL AVE          LINCOLN              DE.
            Street Address            City                State 19960

Phone Number:  302-422-7703    (If Dover Downs Employee, Substitute Department Name and Position for Residency)

1.  What is your name and position at Dover Downs?
2.  Frank Dutten and I am Outside Maintenance.
3.  Who is your boss?
4.  Bob Morrison.
5.  Tell me what you know about the accident on
6.  the track at noon on 12-23-03.
7.  I was standing at the Command Center. I went
8.  to the shop. Larry Barner was there then.
9.  Mike Monahan came across the radio screaming
10. call 911. Larry Barner ran in the shop and
11. called 911. I got in my van and went to see
12. what happened. John Patterson, Rich Williams,
13. Mike Monahan, Jon Curtis, and Ernie Carlisle.
14. That is all I can remember. When I walked
15. up to Brian's car John Patterson was rubbing
16. his neck. Rich Williams was checking his son
17. Brian's condition. Brian was laying across the
18. seat of his car. I went to the back of my
19. van and could not stand to watch as I lost
20. my eleven year old daughter recently. I pushed

Signature  Frank Dutten                    Date  12-24-03

Statement taken at  Security Office    Witnessed by  Frank A. Melf

D 0382

B-100



*Nw 9*

**SECURITY DEPARTMENT**

**STATEMENT**

Date Of Report  *12-24-03*

Case # *03-2521*

Time of Report  *11:10 A.M*

Page  *2 of 3*

The following statement taken from  *FRANK OUTTEN* _____ who

resides at  *SAME* _____
Street Address _____ City _____ State

Phone Number:  *SAME* _____ (If Dover Downs Employee, Substitute Department Name and Position for Residency)

1.  *the stretcher for the Ambulance Crew. I left*
2.  *To go to lunch at the Landscape Shop.*
3.  *Who was your boss at noon on 12-23-03?*
4.  *Bob Morrison.*
5.  *Where was he at that time?,*
6.  *He showed at the accident about five minutes*
7.  *after I got there.*
8.  *Was any alcoholic Beverage present during*
9.  *this time?*
10. *No.*
11. *Were you present at the Cholet party?*
12. *No, I was at the Landscape Shop.*
13. *Have you heard anyone racing before?*
14. *I have heard and never saw it.*  D 0383
15. *Who told you that they raced before?*
16. *They, Larry Barnes, Rich William, and*
17. *Jerry Clifton, I also have heard Ernie Carlisle*
18. *talk of doing this before.*
19. *Do you know was present during this race*  B-101
20. *I heard Mike Peters, Rich Williams, Mike Monahan,*

Signature  *Frank Outten*

Date  *12-24-03*

Statement taken at  *Security Office*    Witnessed by  *Fred G. Melroy*



*NW9*

SECURITY DEPARTMENT                    **STATEMENT**

Date Of Report _12-24-03_                                    Case # _03-2571_

Time of Report _11:10 AM_                                    Page _3 of 3_

The following statement taken from _FRANK OUTTEN_ _____ who

resides at _SAME_
            Street Address            City                    State

Phone Number: _SAME_ ___ (If Dover Downs Employee, Substitute Department Name and Position for Residency)

1. _and John Patterson, I don't know that as_
2. _fact._
3. 
4. 
5. 
6. 
7. 
8. 
9. 
10. 
11. 
12. 
13. 
14. 
15. 
16. 
17. 
18. 
19.                                              D 0384
                          B-102
20. 

Signature _Frank Outten_                          Date _12-24-03_

Statement taken at _Security Office_   Witnessed by _Frank R. Maley_



D 0385



D 0386

**EXHIBIT**
Suter 8
Coo  2/9/06

# DISCIPLINARY WARNING NOTICE

| Employee's Name: | Richard Williams | Date of Notice: | 12/31/03 |
|---|---|---|---|

| Department: | Maintenance | Position: | Maintenance Mechanic I |
|---|---|---|---|

**ACTION TAKEN** *(Depending on the type of offense, the Company may bypass any of these steps in its discretion)*

| | Verbal Warning |
|---|---|
| | Written Warning |
| | Final Written Warning    OR    Suspension    (From _____ To _____ ) |
| X | Termination |

DATE OF INCIDENT: __December 23, 2003__    INCIDENT REPORTED BY:    Security

*NATURE OF INCIDENT:*

As you know, you were issued a written warning on December 12, 2003 for insubordination and refusal to carry out a work request by your Manager. Eleven days after that warning was issued, on December 23, 2003, you were present during a "drag race" on Pit Road of the Dover International Speedway. This drag race was between two fellow maintenance employees in their own personal vehicles. In a conversation with Joe McNair, Security Investigator, on that same day, you admitted that you pulled your work vehicle next to Michael Peters' work vehicle, which was stationed at Gate 1, and that you thought that was a good idea since that would prevent anyone from coming in during the race. In addition, it was reported by several witnesses that the employees raced 3.5 times down Pit Road. At not time during these 3.5 "runs" did you report this event to Management or Security, or attempt to stop it from happening. As a Mechanic I it is your responsibility to report any suspicious, unsafe or reckless behavior of any type involving your fellow co-workers. You did not report this behavior to anyone. In view of the fact that you had very recently been issued a written warning for insubordination, and the fact that you did not report this very serious incident, you are hereby terminated.

---

### TO EMPLOYEE:

- **PLEASE READ THIS _ENTIRE_ DISCIPLINARY WARNING NOTICE CAREFULLY BEFORE SIGNING BELOW.**
- **You are being issued this Notice to make you aware of the severity of this situation.**
- **THIS NOTICE SHOULD NOT BE TAKEN LIGHTLY.**
- *ANY FURTHER VIOLATIONS OF ANY COMPANY RULES, POLICIES OR PROCEDURES MAY RESULT IN ADDITIONAL ACTION BEING TAKEN, UP TO AND INCLUDING TERMINATION OF YOUR EMPLOYMENT.*
- **If you have any questions regarding this matter, please discuss them with the head of your Department.**

---

| EMPLOYEE'S PRINTED NAME | EMPLOYEE'S SIGNATURE* | DATE SIGNED |
|---|---|---|
| Richard Williams | | |

* Signing this Notice does not imply that you agree with the action taken, only that you acknowledge receipt of this Notice.

* ☑ Check here if Employee refuses to acknowledge receipt of this Notice.

B-105    **D 0135**

The undersigned manager / supervisor has discussed this Notice and the action taken with the employee.

| MANAGER / SUPERVISOR'S PRINTED NAME | MANAGER / SUPERVISOR'S SIGNATURE | DATE SIGNED |
|---|---|---|
| Richard Wertz | *Richard Wertz* | 12·31·03 |
| HR REPRESENTATIVE'S PRINTED NAME | HR REPRESENTATIVE'S SIGNATURE | DATE SIGNED |
| | | 12·31·03 |

cc: in M. Roberts

Hilda 4
IRA
401K

## DOVER DOWNS
## EMPLOYMENT ACTION FORM

EMPLOYEE
NAME _____ Williams _____ Richard _____
　　　　　　last　　　　　　first　　　　　initial

EMPLOYEE NUMBER _____ H3304 _____ DEPARTMENT _Facilities - Outside Maintenance_

DEPT.NO. _939000_ _____ POSITION _Mechanic I_ _209090_

| | | | | | |
|---|---|---|---|---|---|
| **NAME** | ADDRESS | | | | |
| | Street | City | | State | Zipcode |
| **ADDRESS** | TELEPHONE# ( ) | | SS# | | D.O.B. |
| **TELEPHONE** | IN CASE OF EMERGENCY, NOTIFY | | | RELATIONSHIP | |
| | ADDRESS: | | | | |
| | Street | City | | State | Zipcode |
| | TELEPHONE# ( ) | | | | |

| | |
|---|---|
| ☐ NEW HIRE<br><br>☐ RE-HIRE<br><br>☐ REINSTATE | M - TU - WED - THUR - FRI<br>START DATE _12-22-98_ RATE _____ BI/WEEKLY<br>☑FULL TIME REG. ☐EXTRA<br>☑PART TIME REG. ☐SEASONAL<br>☐FULL TIME TEMP<br>☐PART TIME TEMP<br>LOCATION _____ ANNUAL REVIEW DATE _____ ☐DUAL RATE AT $ _____<br><br>EMPLOYEE SIGNATURE: _____ DATE: |
| **REASON** | ☐ ADDITION TO STAFF ☐REPLACEMENT ☐POSITION UPGRADE |
| **CHANGES:**<br>☐ DEPARTMENT | TO: DEPT _____ DEPT.# _____ POSITION _____ |
| ☐ POSITION | |
| ☐ RATE | RATE FR.$ _____ TO $ _____ PERCENTAGE _____ |
| ☐ STATUS | STATUS TO· ☐FULL TIME REG ☐FULL TIME TEMPORARY ☐EXTRA<br><br>☐PART TIME REG ☐PART TIME TEMPORARY ☐SEASONAL<br><br>REASON _____ PERFORMANCE REVIEW SCORE _____<br>EFFECTIVE DATE OF CHANGE _____ DATE OF NEXT PERFORMANCE REVIEW _____ |
| ☐ LEAVE OF ABSENCE | EFFECTIVE DATE _____ RETURN DATE _____ |
| ☐ RETURN FROM LEAVE | ☐PERSONAL ☐JOB-RELATED INJURY ☐MILITARY<br>☐MEDICAL ☐OTHER _____ |

ADJUSTED ANNIVERSARY DATE _____ VACATION ELIGIBILITY DATE _____

| | | ISSUED | | RETURNED | | |
|---|---|---|---|---|---|---|
| ☐ **EMPLOYMENT**<br><br>**PROCESSING**<br><br>☑ **TERMINATION** | | Y | N | Y | N | |
| | UNIFORM | ☐ | ☐ | ☐ | ☐ | LAST DAY WORKED _12-23-03_ |
| | EQUIPMENT | ☐ | ☐ | ☐ | ☐ | LAST DAY TO BE PAID _12-23-03_ |
| | I.D. BADGE | ☐ | ☐ | ☑ | ☐ | TERMINATION DATE _12-31-03_ |
| | KEYS | ☐ | ☐ | ☑ | ☐ | RESIGNATION CODE _____ |
| | BEEPER | ☐ | ☐ | ☑ | ☐ | EXPLANATION _Will Call Misconduct_<br>VACATION ACCRUED _____<br>PRO RATA _____ |

B-106

☐OK TO RE-HIRE ☐OK TO RE-HIRE IN ANOTHER DEPT. ☑DO NOT RE-HIRE

D 0059

DEPARTMENT MANAGER _Richard Whitty_ _____ DATE _12-31-03_

GENERAL MANAGER _____ DATE _____

HUMAN RESOURCES REP _____ DATE _____

HR-001

EXHIBIT

Sutor 9
Coe 2/9/06

# DISCIPLINARY WARNING NOTICE

ee's Name:    Michael Peters _____    Date of Notice:  12/31/03 _____

ment:    Maintenance _____    Position:  Maintenance Mechanic I _____

**ON TAKEN**  *(Depending on the type of offense, the Company may bypass any of these steps in its discretion)*

_____ Verbal Warning
_____ Written Warning
_____ Final Written Warning   *OR*   Suspension    (From _____ To _____ )
__X__ Termination

: OF INCIDENT:  12/23/03 _____    INCIDENT REPORTED BY:  Security _____

URE OF INCIDENT:

you know, you were issued a written warning on December 12, 2003 for insubordination and refusal to carry out a work request

your Manager. Eleven days after that warning was issued, on December 23, 2003, you were present during a "drag race" on Pitt

oad of the Dover International Speedway . This drag race was between two fellow maintenance employees in their own personal

ehicles. It has been reported that your work vehicle, which was stationed at Gate 1, was positioned so as to block anyone from

getting on to the track. In addition, you admitted seeing the two employees drag race 3.5 times. At no time during these 3.5 "runs"

did you report this event to Management or Security, or attempt to stop it from happening. As a Mechanic I it is your responsibility

to report any suspicious, unsafe  or reckless behavior of any type involving your fellow co-workers. You did not report this

behavior to anyone. In view of the fact that you had very recently been issued a written warning for insubordination, and the fact

that you did not report this very serious incident, you are hereby being terminated.

---

## TO EMPLOYEE:

- **PLEASE READ THIS _ENTIRE_ DISCIPLINARY WARNING NOTICE CAREFULLY BEFORE SIGNING BELOW.**
- You are being issued this Notice to make you aware of the severity of this situation.
- **THIS NOTICE SHOULD NOT BE TAKEN LIGHTLY.**
- *ANY FURTHER VIOLATIONS OF ANY COMPANY RULES, POLICIES OR PROCEDURES MAY RESULT IN ADDITIONAL ACTION BEING TAKEN, UP TO AND INCLUDING TERMINATION OF YOUR EMPLOYMENT.*
- If you have any questions regarding this matter, please discuss them with the head of your Department.

---

| EMPLOYEE'S PRINTED NAME | EMPLOYEE'S SIGNATURE | DATE SIGNED |
|---|---|---|
| Michael Peters | | |

- Signing this Notice does not imply that you agree with the action taken, only that you acknowledge receipt of this Notice.
- ☐ Check here if Employee refuses to acknowledge receipt of this Notice.

The undersigned manager / supervisor has discussed this Notice and the action taken with the employee.

| MANAGER / SUPERVISOR'S PRINTED NAME | MANAGER / SUPERVISOR'S SIGNATURE | DATE SIGNED |
|---|---|---|
| RICHARD WERTZ | *Richard Wertz* | |
| HR REPRESENTATIVE'S PRINTED NAME<br>Robin M. Roberts | *signature* | DATE SIGNED<br>12-31-02 |

D 0281

# DOVER DOWNS
## EMPLOYMENT ACTION FORM

EMPLOYEE
NAME _____ *PETERS* _____ *MIKE* _____
          last         first        initial

EMPLOYEE NUMBER _# 5373_ DEPARTMENT *FACILITIES- OUTSIDE MAINTENANCE*

DEPT.NO. _909 CCCC_ POSITION _MECHANIC I   209090_

| | | | | |
|---|---|---|---|---|
| **NAME** | ADDRESS | | | |
| | Street | City | State | Zipcode |
| **ADDRESS** | TELEPHONE# (   ) | SS# | | D.O.B. |
| **TELEPHONE** | IN CASE OF EMERGENCY, NOTIFY | | RELATIONSHIP: | |
| | ADDRESS: | | | |
| | Street | City | State | Zipcode |
| | TELEPHONE# (   ) | | | |

| | | | |
|---|---|---|---|
| ☐ NEW HIRE | M - TU - WED - THUR - FRI | ☑FULL TIME REG. | ☐EXTRA |
| ☐ RE-HIRE | START DATE *2-11-95* RATE _____ BI-WEEKLY | ☐PART TIME REG. | ☐SEASONAL |
| | | ☐FULL TIME TEMP | |
| ☐ REINSTATE | ANNUAL REVIEW | ☐PART TIME TEMP | |
| | LOCATION _____ DATE _____ | ☐DUAL RATE AT $ _____ | |

| | | | |
|---|---|---|---|
| **REASON** | EMPLOYEE SIGNATURE: | DATE: | |
| | ☐ ADDITION TO STAFF | ☐REPLACEMENT | ☐POSITION UPGRADE |
| **CHANGES:** ☐ DEPARTMENT | TO: DEPT _____ DEPT.# _____ POSITION _____ | | |
| ☐ POSITION | | | |
| ☐ RATE | RATE FR.$ _____ TO $ _____ PERCENTAGE _____ | | |
| ☐ STATUS | STATUS TO: ☐FULL TIME REG ☐FULL TIME TEMPORARY ☐EXTRA | | |
| | ☐PART TIME REG ☐PART TIME TEMPORARY ☐SEASONAL | | |
| | REASON _____ PERFORMANCE REVIEW SCORE _____ | | |
| | EFFECTIVE DATE OF CHANGE _____ | DATE OF NEXT PERFORMANCE REVIEW _____ | |
| ☐ LEAVE OF ABSENCE | EFFECTIVE DATE _____ RETURN DATE _____ | | |
| ☐ RETURN FROM LEAVE | ☐PERSONAL ☐JOB-RELATED INJURY ☐MILITARY | | |
| | ☐MEDICAL ☐OTHER _____ | | |
| | ADJUSTED ANNIVERSARY DATE _____ VACATION ELIGIBILITY DATE _____ | | |

| | | ISSUED | | RETURNED | | |
|---|---|---|---|---|---|---|
| | | Y | N | Y | N | |
| ☐ **EMPLOYMENT** | UNIFORM | ☐ | ☐ | ☐ | ☐ | LAST DAY WORKED ~~_____~~ *12-13-03* |
| **PROCESSING** | EQUIPMENT | ☐ | ☐ | ☐ | ☐ | LAST DAY TO BE PAID _12-27-03_ |
| | I.D. BADGE | ☐ | ☐ | ☑ | ☐ | TERMINATION DATE _12-31-03_ |
| | KEYS | ☐ | ☐ | ☑ | ☐ | RESIGNATION CODE _____ |
| ☑ **TERMINATION** | BEEPER | ☐ | ☐ | ☑ | ☐ | EXPLANATION _WILL NOT RETURN_ |
| | | | | | | VACATION ACCRUED _____ |
| | | | | | | PRO RATA _____ |

☐OK TO RE-HIRE   ☐OK TO RE-HIRE IN ANOTHER DEPT.   ☑DO NOT RE-HIRE

DEPARTMENT MANAGER _Richard Rhodes_ DATE _12-31-03_

GENERAL MANAGER _____ DATE _____

HUMAN RESOURCES REP. _____ DATE _____     D 0224



DOVER
DOWNS
INCORPORATED
P.O. Box 843
Dover, Delaware 19903
(302) 674-4600

December 17, 2003

This statement is in reference to the attached memorandum. The memorandum reiterated guidelines for appropriate conduct as stated in the employee handbook, specifically 'Refusing to carry out a work assignment or reasonable request by a supervisor or other member of management'[1].

The Manager of Outside Maintenance, Jerry Clifton, was on vacation therefore; I had to become acting Manager. On July 15th at approximately 4:45PM our department received a call for assistant; a freezer box-trailer was inoperable in front of the ticket office. The box trailer needed priming and fuel. At this point I requested assistance from Outside Maintenance personnel and was told "I am capped" and/or " I am off at 5:00PM". The individuals who knew about priming and diesel engines were not willing to help. With the assistance of Steve Webb, from Receiving, the call was handled.

Sincerely,

Dave Pelly
Landscaping Manager

DP/eg



[1]Section 6- (6.02) Page 25

B-110                                                        D 0138

Memorandum

**To:** All Dover International Speedway Employees
**CC:** Jerry Clifton, Rich Wertz
**From:** Dave Pelly
**Date:** 07/18/02
**Re:**    Refusing to Comply

---

## Please be advised of the following:

At any time when an employee is asked to perform a job while still on his or her shift, and that employee refuses to comply that individual will be clocked out and Human Resources will be informed for Disciplinary action.

Employee handbook

Section 6.02 # 19

Thank you,


Dave Pelly

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

RICHARD L. WILLIAMS and　　　　　　　:
MICHAEL E. PETERS,　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
　　　　　　　　Plaintiffs,　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
　　　　v.　　　　　　　　　　　　　　:　　Civil Action No.: 05-0435 (GMS)
　　　　　　　　　　　　　　　　　　　:
DOVER DOWNS, INC.,　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
　　　　　　　　Defendant.　　　　　　　:

## RESPONSE OF DEFENDANT DOVER DOWNS, INC.
## TO INTERROGATORIES OF PLAINTIFFS
## RICHARD L. WILLIAMS AND MICHAEL E. PETERS

Defendant Dover Downs, Inc. ("Defendant") hereby responds to the Interrogatories of

Plaintiffs Richard L. Williams and Michael E. Peters (collectively, "Plaintiffs") as follows:

### GENERAL OBJECTIONS
### APPLICABLE TO ALL INTERROGATORIES

　　　　1.　　Defendant objects to Plaintiffs' Interrogatories to the extent that they seek the

disclosure of information that is protected from disclosure by the attorney-client or other

privilege, the work product doctrine and/or the protection afforded mental impressions,

conclusions, opinions or legal theories of one or more attorneys and/or representatives of

Defendant concerning the litigation.

　　　　2.　　Defendant objects to Plaintiffs' Interrogatories to the extent that they are

unreasonably burdensome and oppressive and/or seek to require the making of an unreasonable

investigation on Defendant's behalf.

　　　　3.　　Defendant objects to Plaintiffs' Interrogatories to the extent that they seek the

disclosure of information that is not relevant to the subject matter involved in the pending action,

will not be admissible at trial and is not reasonably calculated to lead to the discovery of admissible evidence.

## RESPONSES AND OBJECTIONS TO SPECIFIC INTERROGATORIES

### Interrogatory No. 1

Identify the person or persons who made the decision to discharge Plaintiff and identify each person who provided input regarding the decisions, including but not limited to anyone who provided information considered by Defendant.

### Response to Interrogatory No. 1

Ed Sutor, Executive Vice President of Dover Downs, Inc., made the decision to terminate Plaintiffs' employment. Robin Roberts, Vice President of Human Resources, approved of Mr. Sutor's termination decision. Joe McNair, Security Investigator, provided the Security Investigation Report concerning the drag racing incident that led to Plaintiffs' termination. The following individuals were also involved in discussions regarding Plaintiffs' termination: Lee Ford, Director of Security; Gerald Dunning, Vice President and General Manager; Richard Wertz, Director of Facilities; Jerry Clifton, Harness Track Superintendent; and Robert Morrison, Facility Grounds Maintenance Manager. See also the individuals named in the Security Investigative Report.

### Interrogatory No. 2

Identify any and all documents reviewed in connection with the decision to discharge Plaintiff, or utilized in making such decision. If any draft of any such document cannot be produced because it has not been retained, explain who directed that the document not be retained and the date or approximate date that such direction was made. Also, for any such draft document, identify any person who read the draft document.

### Response to Interrogatory No. 2

Objection. Defendant is uncertain as to the meaning of the words "utilized in making

2

B-113

such decision." Subject to and without waiver or limitation of its objection, Defendant answers

Interrogatory No. 2 as follows:

The following documents support Defendant's decision to terminate Plaintiffs'

employment: the Disciplinary Warning Notices dated December 1, 2003 included in the

personnel documents of Richard L. Williams, which are attached at Exhibit A, and Michael E.

Peters, which are attached at Exhibit B; the Job Description for Maintenance Mechanic-1, which

is attached at Exhibit C; the Security Investigation Report, which is attached at Exhibit D; and

Dover Downs Employee Handbook, which is attached at Exhibit E.

## Interrogatory No. 3

Identify any document on which defendant presently relies to support the decision to terminate
the employment of Plaintiff.

### Response to Interrogatory No. 3

See Response to Interrogatory No. 2.

## Interrogatory No. 4

Identify any document contained at any time in Plaintiff's personnel file, including performance
evaluations and all other information in the file.

### Response to Interrogatory No. 4

See the personnel documents of Richard L. Williams, attached at Exhibit A, and the

personnel documents of Michael E. Peters, attached at Exhibit B.

3

## Interrogatory No. 5

Identify any document submitted to or received from the Delaware Department of Labor or the Equal Opportunity Employment Commission in connection with the Plaintiff's charge of discrimination.

## Response to Interrogatory No. 5

See the documents regarding the Charge of Richard L. Williams, which are attached at

Exhibit F, and the documents regarding the Charge of Michael E. Peters, which are attached at

Exhibit G.

## Interrogatory No. 6

Identify any document that is an employee handbook or manual that was in effect at the time the Plaintiff was discharged, and for any time within four years preceding the termination of the Plaintiff's employment.

## Response to Interrogatory No. 6

Objection.  Interrogatory No. 6 seeks information that is not relevant to the subject matter

involved in the pending action, will not be admissible at trial, and is not reasonably calculated to

lead to the discovery of admissible evidence the instant matter.  Subject to and without waiver or

limitation of its objection, Defendant answers Interrogatory No. 6 as follows:

See Dover Downs Employee Handbook and Dover Downs Code of Business Conduct,

attached at Exhibit E, which were in effect at the time of Plaintiffs' termination.

## Interrogatory No. 7

Identify any document containing a written policy or other statement which relates to motor vehicle racing on Defendant's premises.  With respect to each such document, identify its author or authors and the dates the policies were in effect.

## Response to Interrogatory No. 7

Objection. Interrogatory No. 7 is so broad in scope as to be unduly burdensome and oppressive and to seek information that is not relevant to the subject matter involved in the pending action, will not be admissible at trial, and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiver or limitation of its objections, Defendant answers Interrogatory No. 7 as follows:

See Dover Downs Employee Handbook, attached at Exhibit E, which was in effect at the time of Plaintiffs' termination.

## Interrogatory No. 8

Identify any other document which includes any reference to motor vehicle racing on Defendant's premises, including, but not limited to:

(a)    any memorandum or other document that discusses such activity;

(b)    any document reflecting that any of Defendant's employees, past or present, or the employees of companies affiliated with the Defendant, engaged in such activity;

(c)    any document which communicated to any of Defendant's employees that the activity was not allowed; and

(d)    any document reflecting knowledge on the part of any employee of Defendant that motor vehicle racing on Defendant's premises had at any time, taken place.

## Response to Interrogatory No. 8

Objection. Interrogatory No. 8 is so broad in scope as to be unduly burdensome and oppressive and to seek information that is not relevant to the subject matter involved in the pending action, will not be admissible at trial, and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiver or limitation of its objections, Defendant answers Interrogatory No. 8 as follows:

5

See Dover Downs Employee Handbook, attached at Exhibit E, which was in effect at the

time of Plaintiffs' termination.

## Interrogatory No. 9

Identify any individual who, while an employee of defendant or any company affiliated with
Defendant, engaged in motor vehicle racing on Defendant's premises. In each case, provide the
date or approximate dates of such racing, the identity of any witness to it, and the identity of any
spectator to such race.

### Response to Interrogatory No. 9

To the best of Defendant's knowledge and information, there are no individuals who,

while employed by Defendant, engaged in motor vehicle racing on Defendant's premises.

## Interrogatory No. 10

Explain what discipline, if any, was imposed on any individual who is identified in the previous
answer and identify any document that reflects such discipline was given or which in any other
way refers to the racing incident.

### Response to Interrogatory No. 10

See Response to Interrogatory No. 9.

## Interrogatory No. 11

Identify any tape recording of any conversation involving Plaintiff and, as to each, identify the
date or approximate date of the conversation, and who was present.

### Response to Interrogatory No. 11

Objection. Interrogatory No. 11 is so broad in scope as to be unduly burdensome and

oppressive and to seek information that is not relevant to the subject matter involved in the

pending action, will not be admissible at trial, and is not reasonably calculated to lead to the

discovery of admissible evidence. Subject to and without waiver or limitation of its objections,

Defendant answers Interrogatory No. 11 as follows:

Defendant has no tape recording of any conversations involving either of the Plaintiffs.


### Interrogatory No. 12

Identify any document relied upon by defendant to justify the discipline imposed upon the Plaintiff in December, 2003, for allegedly failing to carry out an instruction.

### Response to Interrogatory No. 12

See the Job Description for Maintenance Mechanic-1, attached at Exhibit C, and Dover

Downs Employee Handbook, attached at Exhibit E.


### Interrogatory No. 13

Identify any document related to the discipline imposed upon the Plaintiff in December, 2003, for allegedly failing to carry out an instruction of Robert Morrison.

### Response to Interrogatory No. 13

Objection. Interrogatory No. 13 is so broad in scope as to be unduly burdensome and

oppressive and to seek information that is not relevant to the subject matter involved in the

pending action, will not be admissible at trial, and is not reasonably calculated to lead to the

discovery of admissible evidence. Subject to and without waiver or limitation of its objections,

Defendant answers Interrogatory No. 13 as follows:

See the personnel documents of Richard L. Williams, attached at Exhibit A; the

personnel documents of Michael E. Peters, attached at Exhibit B; the Job Description for

Maintenance Mechanic-1, attached at Exhibit C; and Dover Downs Employee Handbook,

attached at Exhibit E.

7

## Interrogatory No. 14

Identify any document that reflects what benefits Plaintiff would have been entitled to, including health insurance, retirement, and all other benefits, if his employment with Defendant had not been terminated.

## Response to Interrogatory No. 14

See the personnel documents of Richard L. Williams, attached at Exhibit A; the

personnel documents of Michael E. Peters, attached at Exhibit B; and Dover Downs Employee

Handbook, attached at Exhibit E.

## Interrogatory No. 15

Identify the individual who is most familiar with the benefits to which the Plaintiff would have been entitled if his employment with Defendant had not been terminated.

## Response to Interrogatory No. 15

Robin Roberts, Vice President of Human Resources for Dover Downs, Inc., has

knowledge regarding the benefits to which Plaintiffs would have been entitled had they remained

employed by Defendant.

## Interrogatory No. 16

Identify any employee who has filed a charge of discrimination related to age discrimination against the Defendant.

## Response to Interrogatory No. 16

Objection. Interrogatory No. 16 is so broad in time as to be unduly burdensome and

oppressive and to seek information that is not relevant to the subject matter involved in the

pending action, will not be admissible at trial, and is not reasonably calculated to lead to the

discovery of admissible evidence. Subject to and without waiver or limitation of its objections, Defendant answers Interrogatory No. 16 as follows:

In addition to Plaintiffs, the following individuals filed charges of age discrimination against Defendant between 2000-present: Robert Faircloth; Robert Lewis; Frederick McDowell, and Brance Thompson. The Delaware Department of Labor dismissed all four charges and found in Defendant's favor.

## Interrogatory No. 17

Identify any employee of Defendant who filed a legal action against Defendant based on an age discrimination claim. Also, please identify the name or names of counsel who represented the employee in such action.

### Response to Interrogatory No. 17

Objection. Interrogatory No. 17 is so broad in time as to be unduly burdensome and oppressive and to seek information that is not relevant to the subject matter involved in the pending action, will not be admissible at trial, and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiver or limitation of its objections, Defendant answers Interrogatory No. 17 as follows:

Besides Plaintiffs, the only individual to file a legal action against Defendant based on an age discrimination claim between 2000-present was Brance Thompson. After receiving a "no cause" finding from the Delaware Department of Labor, Thompson brought a lawsuit against Defendant in 2005. Thompson is represented by Timothy Wilson of Margolis Edelstein.