Service: **Get by LEXSEE®**
Citation: **2002 us dist lexis 7696**

*2002 U.S. Dist. LEXIS 7696, \**

ROBERT BASELICE v. PHILADELPHIA FEDERATION OF TEACHERS HEALTH & WELFARE FUND

CIVIL ACTION NO. 01-477

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

2002 U.S. Dist. LEXIS 7696

May 1, 2002, Decided
May 1, 2002, Filed, Entered

**DISPOSITION:** Defendant's motion for summary judgment granted. Judgment is entered in favor of defendant and against plaintiff.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff employee sued defendant health and welfare fund asserting claims of termination based on age in violation of the Age Discrimination in Employment Act, 29 U.S.C.S. §§ 621-634, the Pennsylvania Human Relations Act, specifically 43 Pa. Cons. Stat. § 955, and for intentional infliction of emotional distress. The health and welfare fund moved for summary judgment.

**OVERVIEW:** In a reorganization of the health and welfare fund, one of the two retirement coordinator positions was to be eliminated. The employee was laid off as a full-time retirement coordinator, and given a newly created position of part-time retirement coordinator. Since the employee was the younger of the two full-time coordinators, he was unable to show that his termination was based on age discrimination. He failed to make out the fourth element of the McDonnell Douglas burden-shifting prima facie case. Even if he had made his prima facie case, the health and welfare fund met its burden of production by showing there was a legitimate nondiscriminatory reason for its action. It needed to expand its focus on teacher training and the employee did not have the necessary skills. The fact that the employee was the most senior worker at the health and welfare fund was immaterial since the Age Discrimination in Employment Act, 29 U.S.C.S. §§ 621-634, addressed employees who fell within a protected age category, not employees who had attained a given seniority status. The record did not support the employee's claim for intentional infliction of emotional distress.

**OUTCOME:** The health and welfare fund's motion for summary judgment was granted.

**CORE TERMS:** coordinator, retirement, age discrimination, teacher training, part-time, teacher, prima facie case, counseling, qualifications, younger, summary judgment, replaced, seniority, pretext, skill, training, staff, programming, proffered, collective bargaining agreement, developer, full-time, trainer, reduction in force, implausibility, factfinder, disparity, counselor, prong, reorganization

**LexisNexis(R) Headnotes**  Hide Headnotes

Labor & Employment Law > Discrimination > General Overview

Labor & Employment Law > Wrongful Termination > Constructive Discharge > Statutory Application >

Age Discrimination in Employment Act

Torts > Negligence > Standards of Care > Appropriate Standard > Objectivity

*HN1* A resignation is not actionable under the Age Discrimination in Employment Act, 29 U.S.C.S. §§ 621-634, unless it is a constructive discharge, which is measured by the high standard that the conduct complained of would have the foreseeable result that working conditions would be so unpleasant or difficult that a reasonable person in the employee's shoes would resign. More Like This Headnote

Labor & Employment Law > Discrimination > Age Discrimination > Coverage & Definitions > General Overview

Labor & Employment Law > Discrimination > Age Discrimination > Employment Practices > Discharges & Failures to Hire

*HN2* The Age Discrimination in Employment Act, 29 U.S.C.S. §§ 621-634, makes it unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age. 29 U.S.C.S. § 623(a)(1). More Like This Headnote

Labor & Employment Law > Discrimination > Age Discrimination > Proof > General Overview

Labor & Employment Law > Discrimination > Disparate Treatment > Proof > Burden Shifting

*HN3* In the context of a claim brought under the Age Discrimination in Employment Act, 29 U.S.C.S. §§ 612-634, the United States Court of Appeals for the Third Circuit has adapted the McDonnell Douglas burden-shifting framework to determine the sufficiency of evidence on summary judgment. More Like This Headnote

Labor & Employment Law > Discrimination > Age Discrimination > Proof > General Overview

Labor & Employment Law > Discrimination > Disparate Treatment > Proof > Burden Shifting

*HN4* Under the McDonnell Douglas burden-shifting analysis, the plaintiff must first produce enough evidence to convince a reasonable finder of fact of the prima facie case. The prima facie case of age discrimination consists of four elements: (1) the plaintiff was a member of the protected class of those forty or older, (2) the plaintiff suffered an adverse employment action, (3) the plaintiff was qualified for the position, and (4) the plaintiff was replaced by a sufficiently younger person, or there was other sufficient age disparity, to create an inference of age discrimination. More Like This Headnote

Evidence > Procedural Considerations > Burdens of Proof > Allocation

Evidence > Procedural Considerations > Burdens of Proof > Burden Shifting

Evidence > Procedural Considerations > Burdens of Proof > Ultimate Burden of Persuasion

*HN5* Under the McDonnell Douglas burden-shifting analysis, if the plaintiff can establish a prima facie case, the burden shifts to the defendant. The burden on the defendant is relatively light. The defendant must introduce evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision. While the burden of production shifts to the defendant, the

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 27696
Case 1:05-cv-00435-GMS   Document 42-2   Filed 06/21/2006   Page 3 of 20
Page 3 of 15

burden of persuasion does not, for the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. If the defendant cannot meet its burden of production, judgment should be entered for the plaintiff. If the defendant can articulate a legitimate nondiscriminatory reason for the employment action, the burden returns to the plaintiff.  More Like This Headnote

Labor & Employment Law > Collective Bargaining & Labor Relations > Arbitration > General Overview 

Labor & Employment Law > Discrimination > Disparate Treatment > Proof > Burden Shifting

HN6 Under the McDonnell Douglas burden-shifting analysis, the plaintiff may overcome summary judgment in one of two ways. The plaintiff generally must submit evidence which (1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication, or (2) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action. If the plaintiff attempts to use the first method and present evidence from which a reasonable jury could conclude the employer's proffered reason was a pretext or fabrication, the plaintiff generally must do more than show that the employer's purported reason for the employment decision is ill-advised. Federal courts are not arbitral boards ruling on the strength of cause for discharge. The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is discrimination.  More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment > Proof > Burden Shifting

HN7 To discredit the employer's proffered reason under the McDonnell Douglas burden-shifting analysis, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons.  More Like This Headnote

Labor & Employment Law > Discrimination > Age Discrimination > Proof > General Overview 

HN8 Under the Age Discrimination in Employment Act, 29 U.S.C.S. §§ 621-634, if the plaintiff attempts to show that discrimination is more likely than not the motivating factor for the adverse job action, he may do so with direct or circumstantial evidence of discrimination.  More Like This Headnote

Civil Procedure > Summary Judgment > Standards > Appropriateness 

Civil Procedure > Summary Judgment > Standards > Legal Entitlement 

Civil Procedure > Summary Judgment > Standards > Materiality 

HN9 Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c).  More Like This Headnote

Civil Procedure > Summary Judgment > Motions for Summary Judgment > General Overview

Civil Procedure > Summary Judgment > Standards > General Overview

HN10± In considering a motion for summary judgment, a court views the facts, and any inferences from them, in the light most favorable to the party opposing the motion. More Like This Headnote

Civil Procedure > Summary Judgment > Burdens of Production & Proof > General Overview

Evidence > Procedural Considerations > Burdens of Proof > Initial Burden of Persuasion

HN11± The party moving for summary judgment bears the initial burden of proving that no genuine issue of material fact is in dispute. More Like This Headnote

Civil Procedure > Summary Judgment > Burdens of Production & Proof > Nonmovants

HN12± Once the party moving for summary judgment satisfies its initial burden the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. The nonmoving party must present more than a mere scintilla of evidence. At bottom, he must come forward with sufficient evidence to enable a reasonable jury to find in his favor at trial. More Like This Headnote

Labor & Employment Law > Discrimination > Age Discrimination > Proof > General Overview

HN13± When there is reduction in force or other reorganization of the workplace, such a fact does not necessarily preclude employment discrimination. If the reduction in force is a sham, or if the employer in a legitimate business cutback uses age to decide which employees to lay off, the reduction in force may be a pretext for discrimination. More Like This Headnote

Education Law > Faculty & Staff > Personnel Actions > Personnel Reductions

Labor & Employment Law > Discrimination > Age Discrimination > Proof > General Overview

Pensions & Benefits Law > Governmental Employees > Teacher Pensions

HN14± When a plaintiff attempts to show discrimination by citing evidence from which a reasonable fact finder could conclude that discrimination based on age was more likely than not a motivating or determinative cause of the adverse job action, he must point to evidence that proves age discrimination in the same way that critical facts are generally proved, based solely on the natural probative force of the evidence. More Like This Headnote

Labor & Employment Law > Discrimination > Age Discrimination > Coverage & Definitions > General Overview

HN15± The Age Discrimination in Employment Act, 29 U.S.C.S. §§ 621-634, targets discrimination against employees who fall within a protected age category, not employees who have attained a given seniority status. More Like This Headnote

Civil Procedure > Summary Judgment > Supporting Materials > Memoranda of Law

Labor & Employment Law > Discrimination > General Overview

Torts > Intentional Torts > Intentional Infliction of Emotional Distress > General Overview 

HN16 The Age Discrimination in Employment Act (ADEA), 29 U.S.C.S. §§ 621-634 and the Pennsylvania Human Relations Act (PHRA), 43 Pa. Cons. Stat. § 955, impose identical standards of substantive liability for claims of discrimination based on age. When a defendant is entitled to summary judgment under the ADEA, it follows that it is also entitled to summary judgment under the PHRA. More Like This Headnote

Torts > Intentional Torts > Intentional Infliction of Emotional Distress > Elements 

HN17 To state a claim for intentional infliction of emotional distress, the record must disclose the existence of extreme and outrageous conduct so extreme in degree as to go beyond all possible bounds of decency, or medically determinable emotional injury. More Like This Headnote

**COUNSEL:** [*1] For ROBERT BASELICE, PLAINTIFF: DAVID P. BATEMAN, DELANY AND O'BRIEN, PHILA, PA USA. YVETTE D. COOPER, DELANY & O'BRIEN, PHILADELPHIA, PA USA.

For PHILADELPHIA FEDERATION OF TEACHERS HEALTH & WELFARE FUND, DEFENDANT: LINDA M. MARTIN, WILLIG, WILLIAMS AND DAVIDSON, PHILA, PA USA.

**JUDGES:** Stewart Dalzell, J.

**OPINIONBY:** Stewart Dalzell

**OPINION:** MEMORANDUM

Dalzell, J.

May 1, 2002

Robert Baselice brings this age discrimination case against the Philadelphia Federation of Teachers Health & Welfare Fund ("Fund"), his former employer, alleging that he was laid off as retirement coordinator, and given a newly created position of part-time retirement coordinator, because of his age. The alleged adverse job action occurred in the context of the reorganization of the Fund's staff.

Before the Court is defendant's motion for summary judgment.

Background n1

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 These facts are derived by construing the record in the light most favorable to the plaintiff.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The Fund is the employee benefits association which administers [*2] the employee health and welfare benefits guaranteed in the collective bargaining agreement between the Philadelphia Federation of Teachers ("Union") and the Philadelphia School District ("School

District"). The Fund is a separate entity from the Union. Its employees are Union members, on leave from their positions in the School District, and who pursuant to the collective bargaining agreement between the Union and the School District may return to their original positions in the District at any time. While at the Fund, however, they are not covered by any collective bargaining agreement. They are at-will employees.

Robert Baselice has a Bachelor of Arts Degree in history, a Masters Degree in education, and certifications in elementary school education and as a principal. He worked as an elementary school teacher in the School District for thirteen years and as a staff representative of the Union for two years. In 1983, the Fund hired Baselice as a retirement coordinator. As retirement coordinator, Baselice counseled employees who are planning their retirements; he also took phone calls from retirees who had questions about benefits or claims. n2 There is no reason to believe Baselice **[*3]** did not handle these responsibilities effectively.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 The in-person counseling is known as "retirement counseling." The counseling retirees by phone is known as "benefits counseling."

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

In the spring of 1999, just prior to the events giving rise to this lawsuit, the Fund had on its staff two retirement coordinators, two benefits coordinators, and one Reading Recovery Specialist. Robert Baselice (age 53) and Dorothea Bell (age 54) were retirement coordinators. Ernest Merriweather (age 55) and Philip Petrone (age 55) were benefits coordinators. Rosalind Johnson (52) was Reading Recovery Specialist. The Fund was governed by the Board of Trustees, and its Chairman, Jack Steinberg. Arthur Steinberg, Jack Steinberg's son, was the Fund's lead coordinator.

In May of 1999, Jack Steinberg summoned Baselice into his office. Arthur Steinberg also was present. Jack Steinberg asked Baselice whether he would be interested in returning to school so that he could then take on additional responsibilities at the Fund. Steinberg **[*4]** said that he had in mind college courses at night in such areas as statistics and educational research. Baselice told Steinberg he was hesitant to return to school because of the impact the stress of school could have on his health. n3 Baselice nevertheless said, in effect, if that is what the Steinbergs wanted, he would send for course catalogs. n4 Steinberg asked Baselice how long he planned to work at the Fund and remain a School District employee, and Baselice replied, "I told him I would like to work, definitely, three more years, and, hopefully, if my medical condition allowed it, to work three more." Id. at 55.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3

> I was a little bit tense because I had not been back to school for, approximately, seven years. And since that time I developed a medical condition, diabetes and high blood pressure, and I told Jack, with Art in attendance, that I was fearful of the stress of, you know, going back to class, taking exams, doing paperwork, how that might impact on my medical condition.

Baselice Dep. at 51.

n4

> But if that's what they wanted me to do, I would call the local university and ask for catalogs to be sent to me and see what was being offered in those areas.

Id. at 51-52.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*5]**

On June 1, 1999, about ten days after the May meeting, Jack Steinberg again called Baselice into his office. Arthur Steinberg was again present. Jack Steinberg told Baselice he was to be laid off as retirement coordinator effective the end of the month. He offered Baselice interim work in a full-time capacity during the summer (July and August). He also offered Baselice a position as part-time retirement coordinator effective September. Baselice acquiesced to both positions. Steinberg explained the reason for the layoff was the economic distress of the Fund. Baselice Dep. at 56-59.

At this time, it is undisputed that the Fund was undergoing reorganization. That is, in June, the Fund eliminated two retirement coordinator positions - laying off Robert Baselice as retirement coordinator and Ernest Merriweather as benefits coordinator. The Fund established a new part-time retirement coordinator position, the one Baselice filled. In August, it hired two new employees, James Madgey (age 50) and Crystal Barnett (age 42), to fill a newly created position that consisted of part-time (50%) benefits counseling and part-time (50%) teacher training and development. Thus, the employee roster was: **[*6]** Dorothea Bell was full-time retirement coordinator and Robert Baselice was part-time coordinator; Philip Petrone was benefits coordinator; James Madgey and Crystal Barnett were benefits coordinators/teacher training and development staff; and Rosalind Johnson was Reading Recovery Specialist.

Robert Baselice remained at the Fund until December 1999, when he left voluntarily. Baselice was replaced as part-time coordinator by Janice Bushman (age 65).

Baselice asserts claims of termination based on age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634, and in violation of the Pennsylvania Human Relations Act (PHRA), 43 Pa. C.S. § 955, as well as intentional infliction of emotional distress.

While the Complaint alleges age discrimination both with respect to Baselice's downgrade from full-time retirement coordinator to part-time coordinator and his eventual separation from the Fund, since the record discloses no evidence that Baselice's departure from the Fund was anything but voluntary, and Baselice has effectively waived any claim that he was constructively discharged n5 from the Fund because of his age by making no argument **[*7]** to that effect, we will analyze alleged age discrimination only with respect to Baselice's downgrade from full-time coordinator to part-time coordinator, not with respect to his departure from the Fund in December of 1999.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n5 HN1 A resignation is not actionable under the ADEA unless it is a constructive discharge,

which is measured by the high standard that "the conduct complained of would have the foreseeable result that working conditions would be so unpleasant or difficult that a reasonable person in the employee's shoes would resign." Gray v. York Newspapers, Inc., 957 F.2d 1070, 1079 (3d Cir. 1992).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Legal Standard

HN2 The Age Discrimination in Employment Act (ADEA) makes it "unlawful for an employer [] to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age." 29 U.S.C. § 623(a)(1). HN3 Our Court of Appeals [*8] has adapted the McDonnell Douglas burden-shifting framework to determine the sufficiency of evidence on summary judgment. Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997); see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141-42, 147 L. Ed. 2d 105, 120 S. Ct. 2097 (2000).

HN4 The plaintiff must first produce enough evidence to convince a reasonable finder of fact of the prima facie case. The prima facie case of age discrimination consists of four elements: (1) the plaintiff was a member of the protected class of those forty or older, (2) the plaintiff suffered an adverse employment action, (3) the plaintiff was qualified for the position, and (4) the plaintiff was replaced by a sufficiently younger person, or there was other sufficient age disparity, to create an inference of age discrimination. n6 Keller, 130 F.3d at 1108; Sempier v. Higgins, 45 F.3d 724, 728 (3d Cir. 1995).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n6 The customary formulation of this prong is that the plaintiff must be "replaced by a sufficiently younger person to create an inference of age discrimination." See, e.g., Keller, 130 F.3d at 1108; Sempier, 45 F.3d at 728. Several appellate decisions hold, however, that the plaintiff need not in all cases be replaced by a younger person. Rather, any age disparity between plaintiff and other employees which creates an inference of age discrimination will suffice. Especially in the reduction in force context, where the plaintiff is not replaced at all, and so cannot be replaced by a younger employee, our Court of Appeals urges a relaxed interpretation of the fourth prong. See Showalter v. Univ. of Pitt. Med. Ctr., 190 F.3d 231, 234-36 (3d Cir. 1999); Torre v. Casio, Inc., 42 F.3d 825, 830-31 (3d Cir. 1994); Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 353-354 (3d Cir. 1999); Martin v. Healthcare Bus. Res., No. 02-5117, 2002 U.S. Dist. LEXIS 5117, at *16 (E.D. Pa. March 26, 2002).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*9]

Second, HN5 if the plaintiff can establish a prima facie case, the burden shifts to the defendant. The burden on the defendant is "relatively light." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). The defendant must "introduce evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." Id. While the burden of production shifts to the defendant, the burden of persuasion does not, for "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Reeves, 530 U.S. at 143. If the defendant cannot meet its burden of production,

judgment should be entered for the plaintiff. Keller, 130 F.3d at 1108. If the defendant can articulate a legitimate nondiscriminatory reason for the employment action, the burden returns to the plaintiff. Id.; Fuentes, 32 F.3d at 763.

Third, <sup>HN6</sup>the plaintiff may overcome summary judgment in one of two ways. "The plaintiff generally must submit evidence which: 1) casts sufficient doubt upon each of the legitimate [*10] reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or 2) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." Fuentes, 32 F.3d at 762.

Under Fuentes, if the plaintiff attempts to use the first method and present evidence from which a reasonable jury could conclude the employer's proffered reason was a pretext or fabrication, the plaintiff generally must do more than show that the employer's purported reason for the employment decision is ill-advised. For "federal courts are not arbitral boards ruling on the strength of 'cause' for discharge. The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is discrimination." Keller, 130 F.3d at 1109 (internal punctuation omitted) (quoting Carson v. Bethlehem Steel Corp., 82 F.3d 157, 159 (7th Cir. 1996)). Importantly, the Court in Fuentes stated:

> <sup>HN7</sup>To discredit the employer's proffered reason, ... the plaintiff cannot simply show that the employer's decision [*11] was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence,' and hence infer 'that the employer did not act for the asserted non-discriminatory reasons.'"

Fuentes, 32 F.3d at 765 (internal citations and internal punctuation omitted).

<sup>HN8</sup>If the plaintiff attempts to show that discrimination is more likely than not the motivating factor for the adverse job action, he may do so with direct or circumstantial evidence of discrimination. Id. at 764, 767; Keller, 130 F.3d at 1111-13.

Analysis n7

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n7 <sup>HN9</sup>Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). <sup>HN10</sup>In considering a motion for summary judgment we view the facts, and any inferences from them, in the light most favorable to the party opposing the motion. Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995).

*HN11* The moving party bears the initial burden of proving that no genuine issue of material fact is in dispute. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585 n.10, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). *HN12* Once the moving party satisfies this initial burden, the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Id. at 587. The nonmoving party must present "more than a mere scintilla of evidence." Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989). At bottom, he must come forward with sufficient evidence to enable a reasonable jury to find in his favor at trial. Id.; Groman, 47 F.3d at 633.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*12]**

Baselice has not made out a prima facie case that he was laid off as retirement coordinator because of age discrimination. The Fund having decided to eliminate one retirement coordinator position, it had to lay off either Baselice or Bell. Baselice was the younger employee. Since there was no age disparity between Baselice and Bell (or any other employee for that matter) that is consistent with the inference of age discrimination, Baselice cannot make out element four of the prima facie case with respect to his layoff. See Showalter, 190 F.3d at 234-36; Torre, 42 F.3d at 830-31; Sempier, 957 F.2d at 1087.

Since there was, however, an age disparity between Baselice and Barnett and Madgey sufficient to support the inference that age discrimination accounts for the decision of the Fund not to offer Baselice the newly created position of benefits coordinator/teacher trainer and developer after it laid him off as retirement coordinator, we will proceed to examine the Fund's legitimate nondiscriminatory explanation for that decision. n8 n9 The Fund points to the need to expand its focus on teacher training, and tight budget constraints, **[*13]** as the reasons for the elimination of Baselice's position as retirement coordinator and its hiring of Madgey and Barnett (who were already skilled in teacher training) to undertake teacher training and development. These reasons also account, in the Fund's view, for its elimination of Merriweather's position as benefits coordinator. The Fund thus meets its burden of production.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n8 The difference in age between Baselice and Madgey is four years, and between Baselice and Barnett, twelve years. Construed liberally, this difference is sufficient to support an inference of age discrimination. See Sempier, 45 F.3d at 729-30 (holding that four years and eight years, respectively, was sufficient age difference between plaintiff and other relevant employees to sustain element four of plaintiff's prima facie case).

n9 The Fund makes a substantial argument that plaintiff does not meet prong three -- that the plaintiff was qualified for the position -- with respect to the benefits counselor and teacher trainer and developer position. While Baselice was qualified to perform benefits counseling, he did not have all of the requisite skills to perform teacher training and development programming. Ordinarily, this would disqualify plaintiff as it would preclude him from satisfying prong three of the prima facie case. However, here, the record unequivocally reflects that Jack and Arthur Steinberg considered Baselice for the new position, proposing to send him to school to make up for the shortcomings in his skills. Since the defendants, by their own admission, considered cultivating plaintiff for the newly established job despite the fact that he did not have all the qualifications, the inference remains possible that the real reason it did not give him the job was not because he was not qualified but because of age discrimination. See Torre, 42 F.3d at 830 ("'The nature of the required showing' to establish a prima facie case of disparate treatment by indirect evidence 'depends on the circumstances

of the case.'" (quoting Massarsky v. General Motors Corp., 706 F.2d 111, 118 n.13 (3d Cir. 1983)).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*14]

According to the affidavit of Jack Steinberg, beginning in 1997, the Fund revised its mission. "Due to the influx of new teachers into the School District, and the constant criticism that teachers were not being trained properly, the Fund decided to become more involved in the professional training and development of teachers." J. Steinberg Aff. at P 4. Rosalind Johnson was hired as "Reading Recovery Specialist." Philip Petrone, benefits coordinator, was given an added responsibility of tracking the scores in the School District on statewide tests. Id. at PP 4, 19.

In the spring of 1999, the Fund decided to expand its teacher training program. Id. at P 19. Specifically, the Fund set out to improve training of teachers in reading and math; expand teacher training to cover areas of classroom management and classroom support; and intensify tracking of test scores. Id. To implement and sustain these programs, the Fund needed to employ qualified professionals. Id. at P 20. No current employee of the Fund had the necessary skills. Id. at P 21; A. Steinberg at P 9; see also Baselice Dep. at 52-53, 77-78. Furthermore, while teacher training was a new imperative, the [*15] Fund had to provide the desired programming within its limited budget, and without adversely impacting the provision of other health and welfare benefits to Union members. J. Steinberg Dep. at P 20.

Although no Fund employee was qualified to perform training and development of teachers, the Fund initially considered sending a coordinator to school at night. Id. at PP 21-22. Indeed, Jack and Arthur Steinberg met with Baselice in May of 1999 and broached with him the possibility of returning to night school to acquire supplementary education. Based upon Baselice's unenthusiastic reception, see supra notes 1 and 2 and accompanying text, Jack Steinberg and Arthur Steinberg concluded that Baselice was not interested. J. Steinberg Aff. at P 23; A. Steinberg Aff. at P 11.

The Fund thus in the end concluded that it would be best to hire an employee from outside the Fund. It decided not to groom a coordinator from within for several reasons. First, "the Fund did not want to put off instituting the training and development programs for two to three years while someone went to school." Second, "depending on the number of courses the coordinator needed to take to become proficient and [*16] the university s/he attended, the cost of sending someone to school could be expensive." Third, the existing collective bargaining agreement was slated to expire in August of 2001. Experience proved that contributions for health and welfare benefits were slack during the first year of any collective bargaining agreement; the Fund therefore thought it prudent to devote resources to teacher training and development before expiration of the contract. J. Steinberg Aff. at P 24.

Accordingly, the Fund sought individuals skilled from outside the Fund, and reorganized its staff to absorb the new hires without unduly impacting its budget. Thus, the Fund eliminated two coordinator positions -- one retirement coordinator and one benefits coordinator -- and created a part-time retirement coordinator position. It hired two employees, Madgey and Barnett, to perform benefits counseling half the day and teacher training and development programming the other half.

As to the Fund's reason for eliminating Baselice, rather than Bell, as retirement coordinator, that decision was rooted in money. Baselice, who earned $ 88,510.14 per year, was much more highly paid than Bell, who earned $ 58,210.80. [*17] Id. at P 37. The Fund laid off Merriweather, rather than Petrone, as benefits coordinator because Petrone had developed more versatile skills. Id. at P 27.

Since the Fund has proffered a legitimate nondiscriminatory explanation for Baselice's change in status from full-time to part-time retirement coordinator, the burden returns to Baselice.

Of course, [HN13] when there is reduction in force or other reorganization of the workplace, such a fact does not necessarily preclude employment discrimination. "If the reduction in force is a sham, or if the employer in a legitimate business cutback uses age to decide which employees to lay off, [the reduction in force] may be a pretext for discrimination." 8 Lex K. Larson, Employment Discrimination (MB) § 132.03 (Oct. 1999) (footnotes omitted); see Showalter v. Univ. of Pitt., 190 F.3d 231 (3d Cir. 1999) (finding pretext in the context of reorganization); Armbruster v. Unisys Corp., 32 F.3d 768 (3d Cir. 1994) (same).

Baselice argues that the Fund has not convincingly demonstrated the need to hire Barnett and Madgey rather than train him to perform the job of teacher trainer and developer/benefits counselor. [*18] The very implausibility of its position, he argues, reveals that it is a pretext.

The Fund maintains that neither Baselice nor any other coordinator at the Fund was qualified to do teacher training and development programming. Baselice's own deposition testimony supports the Fund's position. Baselice recalls that Jack Steinberg asked him in the May meeting to consider taking courses in educational research and statistics. Baselice admits that he has little or no education or background in both of those areas. Baselice Dep. at 51-53. Baselice also denies having training and experience in peer intervention, and concedes having no background in behavior modification, apart from using it in the classroom sixteen years ago when he was a teacher. Id. at 77. Baselice also acknowledges having no background in reading recovery and Web page fabrication. Id. at 78. Finally, Baselice's lack of qualifications to perform teacher training and development programming is confirmed by the undisputed fact that Steinberg proposed to send Baselice to school so that he could assume that responsibility.

Baselice reasons that the Fund could have inexpensively trained him to take on the responsibilities [*19] that Madgey and Barnett assumed. True, Baselice was qualified to perform benefits counseling, which Madgey and Barnett performed half of the time. However, the undisputed fact remains that Baselice would have had to have gone to school to undertake teacher training and development, and Madgey and Barnett did not. Baselice provides no suggestion of how much such additional school would have cost to support his conclusory assertion that "Plaintiff would not have required a substantial time and monetary investment" in school. Pl.'s Mem. L. in Opp. to Summ. J. at 13. Nor does he venture what classes would have been necessary, and how long such school would have taken to complete.

Baselice also attempts to negate the asserted difference in qualifications between Barnett and Madgey and him. He maintains that there is no discernible difference, and that the proffered difference is merely a pretext for age discrimination. Barnett and Madgey are, as noted, younger than he.

Baselice points out that he has a Masters Degree in education, elementary-education and principal certifications, and taught elementary school for fourteen years. Baselice also was a Union staff representative, as was Barnett. [*20] These credentials, impressive as they are, absent other evidence are not weighty enough by themselves to permit a reasonable jury to conclude that Baselice had comparable credentials for teacher training and development to Barnett and Madgey. Barnett was experienced in behavior shaping modification and elementary reading research and analysis. J. Steinberg Dep. at P 35. Madgey was a peer intervener. He also could help maintain the Fund's Web site. Id. at P 36. Baselice has not presented any evidence that Madgey and Barnett did not have these qualifications, or that Baselice did.

Furthermore, Baselice has not produced evidence discrediting the Fund's assertion about the

Get a Document - by Citation - 2002 U.S. Dist. LEXIS 7696
Case 1:05-cv-00405-GMS  Document 42-2  Filed 06/21/2006  Page 13 of 20
Page 13 of 15

skills needed for the job -- such as statistics, peer intervention, and educational research. Baselice has not deposed Barnett or Madgey about what they do from day to day and what experiences they have, nor has he peeled away with any evidence of his own the Fund's representations about the qualifications necessary to perform teacher training and development. Consequently, Baselice has not demonstrated "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered **[*21]** legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.'" Fuentes, 32 F.3d at 765.

Baselice similarly asserts:

> Notably, Mr. Madgey and Ms. Barnett did not possess similar experience to each other, within a particular skill set from which Plaintiff was excluded. Their particular 'qualifications' for the training and development aspect of their positions were as disparate from each other as they were from Plaintiff's.

Pl.'s Mem. L. in Opp. Mot. Summ. J. at 13-14. This observation may be suggestive that the qualifications for the job of benefits coordinator/teacher training and development programmer were not as rigorous nor as specialized as the defendant has said. The fact alone that Barnett, Madgey and Baselice may, somehow, have different work histories does not convert the Fund's reasons for hiring Barnett and Madgey over Baselice into a pretext. The plaintiff has demonstrated no "weaknesses, implausibilities . . . or contradictions", but merely proffers unsupported conclusions.

HN14 Baselice next attempts the alternate route of citing evidence from which a reasonable fact finder could conclude **[*22]** that discrimination based on age was more likely than not a motivating or determinative cause of the adverse job action. Fuentes, 32 F.3d at 764. Under this method, he "must point to evidence that proves age discrimination in the same way that critical facts are generally proved -- based solely on the natural probative force of the evidence." Keller, 130 F.3d at 1111. Here, he stresses that he was laid off as retirement coordinator and passed over for the new position of benefits counselor/teacher trainer and developer ten days after he told Jack Steinberg that he only planned to work three to six more years.

The time one will continue to occupy a job is not an automatic surrogate for age. n10 It is legitimate for an employer to consider how long an employee states he wishes to remain in a job before investing in supplementary education or other substantial outlays that only yield a marginal return later. n11 Of course, a manager's reference to an employee's eventual retirement can constitute evidence of age discrimination. Here, however, the surrounding facts make Baselice's and Steinberg's discussion of Baselice's retirement date insufficiently **[*23]** suggestive of age discrimination to present a genuine issue of fact of discrimination under Fuentes.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n10 Cf. Gray, 957 F.2d at 1087 (holding seniority -- or the length of time one has held a job -- as a distinct factor from age).

n11 In this case, Baselice's night school classes were expected to last two to three years. J. Steinberg Aff. at P 23.

Get a Document by Citation - 2002 U.S. Dist. LEXIS 7696
Case 1:05-cv-00405-GMS Document 42-2 Filed 06/21/2006 Page 14 of 20
Page 14 of 15

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

It will be recalled that Jack Steinberg's question to Baselice about how long Baselice intended to work was prompted by Steinberg's proposition to Baselice about returning to school and Baselice's response that he was concerned about the impact of his health problems. Jack Steinberg merely followed up on the natural consequences of what Baselice himself put in issue -- his health -- as it related to the position of benefit counselor/teacher trainer and developer. In that context, Steinberg's conversation with Baselice about his retirement date is insufficient evidence from which a jury could reasonably infer age discrimination. Indeed, [*24] it is worth noting that if Steinberg were motivated by age discrimination it is a wonder he would have offered to send Baselice to school to assume the additional responsibilities in the first place. Furthermore, recalling this workplace -- in which Baselice was by no means the oldest employee but in the middle, younger than the retirement coordinator retained, and ultimately replaced as part-time retirement coordinator by an older employee -- all the surrounding circumstances neutralize any reasonable inference of age discrimination that could be made from Jack Steinberg's single conversation with Baselice about Baselice's retirement. See Keller, 130 F.3d at 1111-12; Fuentes, 32 F.3d at 767.

Baselice also states that he was the most senior employee at the Fund, and one of the most highly compensated, factors which he posits are suggestive that he was laid off and given the replacement position of part-time retirement coordinator because of his age. It is clear, as noted above, that seniority is a distinct factor from age, and one which, when not used as a proxy for age, is permissible. Our Court of Appeals has stated:

> [Plaintiff] cites [*25] no support for his proposition that the ADEA protects an employee from an adverse employment decision based on seniority even if it cannot be demonstrated that chronological age was a factor. Indeed, it has been recognized that "seniority and age discrimination are unrelated. HN15 The ADEA targets discrimination against employees who fall within a protected age category, not employees who have attained a given seniority status."

Gray, 957 F.2d at 1087 (citation omitted). The ADEA proscribes employment decisions based on age, but not on seniority vel non.

HN16 The ADEA and PHRA impose identical standards of substantive liability for claims of discrimination based on age. See Martin, No. 00-3244, 2002 U.S. Dist. LEXIS 5117, at *14; Harris v. Smithkline Beecham, 27 F. Supp. 2d 569, 576 (E.D. Pa. 1998), aff'd, 203 F.3d 816 (3d Cir. 1999). Since the Fund is entitled to summary judgment under the ADEA, it follows that it is also entitled to summary judgment under the PHRA. Baselice has waived his claim of intentional infliction of emotional distress, as he has not addressed it in his responsive brief. n12

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n12 Furthermore, HN17 the record does not disclose the existence of "extreme and outrageous conduct" "so extreme in degree[] as to go beyond all possible bounds of decency..." or medically determinable emotional injury necessary to make this legal theory tenable. Kazatsky v. King David Memorial Park, 515 Pa. 183, 527 A.2d 988, 991, 995 (Pa.

1987).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*26]**

We will grant summary judgment to defendant Fund. An appropriate Order follows.

ORDER

AND NOW, this 1st day of May, 2002, upon consideration of defendant's motion for summary judgment, plaintiff's response thereto, and defendant's reply thereto, and in accordance with the foregoing Memorandum, it is hereby ORDERED that:

1. Defendant's motion for summary judgment is GRANTED;

2. JUDGMENT IS ENTERED in favor of defendant Philadelphia Federation of Teachers Health and Welfare Fund and against plaintiff Robert Baselice; and

3. The Clerk shall CLOSE this case statistically.

BY THE COURT:

Stewart Dalzell, J.

Service: **Get by LEXSEE®**
Citation: **2002 us dist lexis 7696**
View: Full
Date/Time: Wednesday, June 21, 2006 - 9:41 AM EDT

* Signal Legend:
- Warning: Negative treatment is indicated
- Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

 About LexisNexis | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Source: Legal > / . . . / > 3rd Circuit - US Court of Appeals Cases
Terms: **name(goin)**  (Edit Search | Suggest Terms for My Search)

◆Select for FOCUS™ or Delivery
☐

*148 Fed. Appx. 96, \*; 2005 U.S. App. LEXIS 18871, \*\**

PAULINE R. **GOINS,** Appellant v. ECHOSTAR COMMUNICATIONS CORPORATION

NO. 05-1354

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

148 Fed. Appx. 96; 2005 U.S. App. LEXIS 18871

August 30, 2005, Submitted Under Third Circuit L.A.R. 34.1(a)
August 31, 2005, Filed

**NOTICE:** [\*\*1] RULES OF THE THIRD CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**PRIOR HISTORY:** On Appeal From the United States District Court For the Western District of Pennsylvania. (D.C. Civ. No. 02-cv-00648). District Judge: Honorable Terrence F. McVerry.

## CASE SUMMARY

**PROCEDURAL POSTURE:** After she was terminated for the use of profanity and abusive behavior, plaintiff sued defendant, her former employer for race and sex discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e, and the Pennsylvania Human Rights Act, Pa. Stat. Ann. tit. 43, §§ 951-63. The United States District Court For the Western District of Pennsylvania granted summary judgment to the employer, and plaintiff appealed.

**OVERVIEW:** The court denied plaintiff's petition for leave to supplement the record because it found no reason to employ Fed. R. App. P. 10(e) or any equitable power it had to include extra-record items where the documents were previously available and merely supported what was already in the record. The district court concluded that the individual that plaintiff was in the altercation with was not similarly situated because she quit before management conducted an investigation and reached any termination decision. Also, another disruptive white male trainee was not similarly situated because the relevant decision maker did not know about that trainee's statements or disruptive behavior. An operative employment decision made by a different independent manager asserting her discretion was sufficient to differentiate two otherwise similarly situated employees. The record did not give rise to an inference of discrimination.

**OUTCOME:** The judgment of the district court was affirmed.

**CORE TERMS:** similarly situated, manager, summary judgment, trainee, decision maker, disruptive behavior, prima facie case, motion to strike, informally, profanity, training, quit

**LexisNexis(R) Headnotes** ◆ Hide Headnotes

Civil Procedure > Summary Judgment > Appellate Review > Standards of Review

Civil Procedure > Summary Judgment > Standards > General Overview

Civil Procedure > Appeals > Standards of Review > De Novo Review

*HN1* Appellate courts exercise plenary review over the grant of a motion for summary judgment and apply the same test as the district court. More Like This Headnote

Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > General Overview

Civil Procedure > Appeals > Records on Appeal

*HN2* Appellate courts cannot consider material on appeal that is outside of the district court record. However, in exceptional cases the appellate court may open the record either under Fed. R. App. P. 10(e) or under any inherent equitable power. More Like This Headnote

Civil Procedure > Appeals > Records on Appeal

*HN3* Fed. R. App. P. 10(e) permits correction or modification of the record if anything material to either party is omitted from the record by error or accident. More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment > Proof > Burden Shifting

Labor & Employment Law > Discrimination > Gender & Sex Discrimination > Federal & State Interrelationships

Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview

*HN4* To prevail under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., or its analogous provision in the Pennsylvania Human Rights Act, a plaintiff must satisfy the three-step burden shifting inquiry under McDonnell Douglas. First, she must establish a prima facie case. If she succeeds, the burden shifts to the employer to advance a legitimate, non-retaliatory reason for its adverse employment action. If the employer advances such a position, the burden shifts back to the employee to prove that the non-discriminatory explanation is merely a pretext for discrimination. The establishment of a prima facie case produces a presumption of discrimination, which means a finding of predicate fact produces a required conclusion in the absence of explanation. More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment > Proof > Burden Shifting

Labor & Employment Law > Discrimination > Racial Discrimination > Coverage & Definitions

Labor & Employment Law > Discrimination > Racial Discrimination > Proof > Burdens of Proof > Employee Burdens

*HN5* In employment actions alleging sex and race discrimination, establishing a presumption of discrimination requires a showing that a similarly situated employee received more favorable treatment. More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment > Proof > Burden Shifting

HN6 In an employment discrimination action, the fact that an operative employment decision is made by a different independent manager asserting her discretion is sufficient to differentiate two otherwise similarly situated employees. More Like This Headnote

**COUNSEL:** PAULINE R. GOINS, Appellant, Pro se, McKeesport, PA.

For ECHOSTAR COMM CORP, Appellee: Gregory A. Miller, John A. Goodman, Buchanan Ingersoll, Pittsburgh, PA.

**JUDGES:** BEFORE: SLOVITER, BARRY and FISHER, CIRCUIT JUDGES.

**OPINION:**

[*97] PER CURIAM

Appellant Pauline Goins appeals pro se the District Court's grant of EchoStar Communication's motion for summary judgment on her complaint alleging sex and race discrimination under 42 U.S.C. §§ 2000e to 2000e-17 (Title VII), and 43 Pa. Cons. Stat. Ann. §§ 951-63 (PHRA). For the reasons that follow, we will affirm.

The parties are familiar with the facts, thus, we will only briefly summarize them here. Goins was hired as a customer service representative on January 8, 2001. She was placed in a training class with Jeff Hack (white), Susan Roach (white), and several other black and [**2] white new hires of both genders. The class was led by Stephanie Blissman. During a training class on January 18, 2001, an incident occurred between Roach and Goins which ended with the two women cursing at each other.

Management was notified of the incident and suspended both Roach and Goins, but Roach chose to quit. Management conducted an investigation and terminated Goins for the use of profanity and abusive behavior. Goins then retained counsel and brought the current action. She alleges that Blissman mischaracterized her conduct during the dispute with Roach because of race and/or gender bias. Goins also claims that Blissman and management were aware of another disruptive white male trainee, Jeff Hack, who was chastised informally, but never reported to management. EchoStar moved for summary judgment, which was granted. Goins then filed this appeal. n1

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 We have jurisdiction pursuant to 28 U.S.C. § 1291. HN1 We exercise plenary review over the grant of a motion for summary judgment and apply the same test as the District Court. See Wastak v. Lehigh Valley Health Network, 342 F.3d 281, 285 (3d Cir. 2003).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [**3]

Initially, Goins petitions for leave to supplement the record. We have continuously held that HN2 this Court "cannot consider material on appeal that is outside of the district court record." In re Capital Cities/ABC, Inc.'s Application for Access to Sealed Transcripts, 913 F. 2d 89, 96 (3d Cir. 1990) (citations omitted). However, in exceptional cases we may open the record either under Federal Rule of Appellate Procedure 10(e) or under any "inherent equitable power." Id. (stating without deciding that our equitable powers may permit us to grant leave to supplement the record).

HN3 Rule 10(e) permits correction or modification of the record "if anything material to either party is omitted from . . . the record by error or accident . . . ." We see no reason to employ Rule 10(e) or any equitable power we may have to include extra-record items where the documents were previously available and merely support what is already in the record. Appellee moved to strike these additional exhibits as well as several portions of Goins' informal brief where she argues theories inconsistent with those presented to the District Court. We deny the [**4] Appellee's motion to strike, but consistent with the above position, we will not consider exhibits or arguments not presented to the District Court. See United States v. Donsky, [*98] 825 F.2d 746, 749 (3d Cir. 1987). The motion to supplement the record is denied.

HN4 To prevail under Title VII or its analogous provision in the PHRA, see Jones v. Sch. Dist. of Philadelphia, 198 F.3d 403, 409 (3d Cir. 1999), Goins must satisfy the three-step burden shifting inquiry under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973). First, she must establish a prima facie case. If she succeeds, "the burden shifts to the employer to advance a legitimate, non-retaliatory reason for its adverse employment action." Id. at 802-03. If the employer advances such a position, the burden shifts back to the employee to prove that the non-discriminatory explanation is merely a pretext for discrimination. Id. at 804. The establishment of a prima facie case produces a presumption of discrimination, which means "a finding of predicate fact . . . produces a required conclusion in the absence of explanation. [**5] " St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506, 125 L. Ed. 2d 407, 113 S. Ct. 2742 (1993) (internal quotation omitted); Jones, 198 F.3d at 410-11. HN5 In the instant type of employment action, establishing this presumption requires a showing that a similarly situated employee received more favorable treatment. See, e.g., Lanear v. Safeway Grocery, 843 F.2d 298, 301 (8th Cir. 1988); Mitchell v. Toledo Hosp., 964 F.2d 577, 586 (6th Cir. 1992). We agree with the District Court that Goins fails to make this showing.

Goins argues that trainees Roach and Hack were similarly situated but received different treatment. The District Court concluded that Roach was not similarly situated because she quit before management conducted an investigation and reached any termination decision. The record supports this conclusion. The District Court also found that Hack was not similarly situated because the relevant decision maker, Mike Duplessis, did not know about Hack's statements or disruptive behavior. Although there is some controversy over whether anyone in management knew of Hack's conduct, the record is void of any indication that Duplessis [**6] personally knew of Hack's misconduct. Even if a different manager knew about Hack's behavior and chose to do little, or nothing at all, HN6 the operative employment decision made by a different independent manager asserting her discretion is sufficient to differentiate two otherwise similarly situated employees. See Radue v. Kimberly-Clark Corp, 219 F.3d 612, 617-18 (7th Cir. 2000) (citing several other circuits supporting this view).

Goins, however, makes a creative argument that Stephanie Blissman, not Mike Duplessis, was the relevant decision maker because she was the gatekeeper of any information that was or was not conveyed to management. Even if we assume that "evidence of a subordinate's bias is relevant where the relevant decision maker is not insulated from the subordinate's influence," Griffin v. Wash. Convention Ctr., 330 U.S. App. D.C. 81, 142 F.3d 1308, 1312 (D.C. Cir. 1998); see also Stacks v. Southwestern Bell Yellow Pages, Inc., 27 F. 3d 1316, 1323 (8th Cir. 1994) ("an employer cannot escape responsibility for discrimination when the facts on which the reviewers rely have been filtered by a manager determined to purge [**7] the labor force of [women]."), the record does not support the inference that Blissman reported either Goins or Roach to management. Instead, Goins admits that Heather Langsdorf, another trainee, informed operations manager Royna Abdulnour that the incident between the two women occurred. Only then was management formally involved. While

Blissman's account of the incident is different than Goins' and the other trainees', the record [*99] reveals that management interviewed Goins and Roach, and despite the differences regarding tones of voice, levels of responsibility, and who may have been the provocateur, the basic facts of the words used and arguments presented remain consistent throughout the various recitations.

Additionally, that Blissman did not report Hack to management for profanity or disruptive behavior does not mean that she treated Goins differently. To the contrary, the record reveals that Blissman initially attempted to handle the Goins/Roach conflict informally, as she handled Hack's disruptions, but without success because a manager took notice of the argument through other channels. Blissman discussed her perception of the Goins/Roach incident with management because [**8] she was specifically asked to do so, not because she chose to treat Goins and Hack differently. The record does not give rise to an inference of discrimination by either Duplessis or Blissman.

For the foregoing reasons, we will affirm the District Court's grant of summary judgment. Appellant's motion to supplement the record is denied. Appellee's motion to strike is denied.

Source: Legal > / . . . / > **3rd Circuit - US Court of Appeals Cases**
Terms: **name(goin)** (Edit Search | Suggest Terms for My Search)
View: Full
Date/Time: Wednesday, June 21, 2006 - 9:43 AM EDT



About LexisNexis | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.