# EXHIBIT 3



STATE OF DELAWARE
DEPARTMENT OF LABOR
DIVISION OF INDUSTRIAL AFFAIRS
The Windsor
24 N. W. Front Street
Suite 100
Milford, DE 19963

Telephone: (302) 422-1134
Fax: (302) 422-1137

December 8, 2004

Kymberly Hankinson
Montgomery, McCracken, Walker & Rhoads, LLP
Attorneys at Law
123 South Broad Street
Philadelphia, PA 19109

RE: Peters v. Dover Downs Entertainment
Case No.: 04020274/17CA400269
<u>Notice of Preliminary Determination</u>

Dear Ms. Hankinson:

As you know I have been assigned to investigate the allegation of age discrimination filed against Dover Downs Entertainment (Respondent) by Michael Peters (Charging Party). I have reviewed the information submitted by both parties in this matter. However, additional information would be beneficial at this time.

According to Respondent, Charging Party was terminated for being a spectator of a drag race and insubordination in another unrelated incident. The disciplinary warning issued to Charging Party indicates that "any further conducted of this kind can result in a Final Written Warning and/or your immediate termination." Being a spectator in a drag race is not the same as insubornation. It would seem logical that Charging Party should have been disciplined in the same manner as the other individuals who were spectators. Respondent had several choices in the method of disciplining Charging Parties but appears to have chosen to take most severe disciplinary action.

1) Please provide the disciplinary records for all employees involved in the drag race incident for the past five years.
2) How long was each individual employed by Respondent? Include date of hire.
3) Please provide the notice of termination given to Charging Party.
4) Please provide a copy of Charging Party's previous history of discipline.

Page Two
Peters v. Dover Downs Entertainment

5) What is the age of the individual who has replaced Charging Party?
6) Please provide a workforce analysis for the year of 2003 of all employees containing the following:
    a) Date of birth
    b) Date of hire
    c) Title and Department
    d) Date of termination, if applicable
    e) Reason for termination

Please provide your response no later than December 20, 2004. You may submit any additional substantive information/evidence to support your position. If no additional substantive information is provided a "cause" finding may occur. Respondent also may consider a possible "No Fault Settlement" in this matter. Feel free to contact me at the above address or via telephone at (302) 422-1134 x15. You may also fax your response to me at (302) 422-1137.

Sincerely,

*Andre Boggerty*
Andre Boggerty
Labor Law Enforcement Officer

# EXHIBIT 4

# MONTGOMERY, MCCRACKEN, WALKER & RHOADS, LLP
## ATTORNEYS AT LAW

KYMBERLY HANKINSON
ADMITTED IN PENNSYLVANIA, MARYLAND, & WASHINGTON D.C.

DIRECT DIAL
215-772-7325

khankinson@mmwr.com

123 SOUTH BROAD STREET
AVENUE OF THE ARTS
PHILADELPHIA, PA 19109
215-772-1500
FAX 215-772-7620

LIBERTYVIEW
457 HADDONFIELD ROAD, SUITE 600
CHERRY HILL, NJ 08002
856-488-7700
FAX 856-488-7720

300 DELAWARE AVENUE, SUITE 750
WILMINGTON, DE 19801
302-504-7800
FAX 302-504-7820

1235 WESTLAKES DRIVE, SUITE 200
BERWYN, PA 19312
610-889-2210
FAX 610-889-2220

April 5, 2004

**VIA U.S. MAIL & FACSIMILE**

Trina R. D. Wheedleton
Labor Law Enforcement Officer II
Delaware Department of Labor
24 N.W. Front Street, Suite 100
Milford, DE 19963

Re:  Michael Peters v. Dover Downs, Inc.
     04020274/17CA400269

Dear Ms. Whittington:

This is the position statement of Dover Downs, Inc. ("Dover Downs").

Michael Peters ("Peters" or "Charging Party") alleges that his employment was terminated because of his age in violation of the Delaware Fair Employment Practices Act and federal law. Dover Downs denies that the Charging Party's age played any role in any decisions made and denies all allegations of unlawful conduct.

**FACTS.** At the time of his termination, Charging Party worked for Dover Downs in the Outside Maintenance Department as a Maintenance Mechanic I.

On December 23, 2003, Dover police and paramedics were called to the facility of Dover Downs in response to a 911 call. Two employees had been drag racing on the Dover Downs NASCAR racetrack. One driver lost control of his vehicle and hit a barrier at the end of the track. The driver of the crashed vehicle sustained neck injuries and was transported to an area hospital for treatment.

This unauthorized drag race violated several provisions of Section 6 of the Dover Downs Employee Handbook. See Exhibit 1. These violations include unauthorized or illegal use of the

MONTGOMERY, MCCRACKEN, WALKER & RHOADS, LLP

Trina R. D. Wheedleton
April 5, 2004
Page 2

Dover Downs facilities, unauthorized or illegal use of customer facilities, misconduct and disregarding safety procedures. Id. Eight employees were involved in the drag race (the two drivers and six spectators). Charging Party was a spectator. Dover Downs immediately placed all eight on investigative suspension.

Three weeks prior to the unauthorized drag race, Charging Party received a written warning for insubordination and refusing to carry out a work order. See Exhibit 2. At that time, Charging Party was informed that further violations could result in termination. Id.

On December 31, 2003, Dover Downs disciplined all eight employees involved in the unauthorized and prohibited drag race. The drivers, Brian Williams (Landscape Mechanic, age 29) and Ernest Carlisle (Mechanic II, age 71), were terminated for willful misconduct in planning and conducting the unauthorized drag race.

Four spectators, William Larnick (Landscape Mechanic II, age 45), Michael Monahan (Mechanic I, age 38), John Patterson (Mechanic III, age 24) and Russell Hand (Mechanic II, age 68) were suspended for three days without pay for failing to report the reckless and unsafe activity to any management or security staff. This is the most severe punishment short of termination. The two remaining spectators, the Charging Party and Richard L. Williams (Mechanic I, age 55), were terminated for failing to report the reckless and unsafe activity to any management or security staff and previous misconduct.

The instant charge was filed on February 20, 2004.

**ARGUMENT.** All of Charging Party's allegations of unlawful treatment are without merit.

Charging Party alleges he was treated differently than Larnick, Monahan and Patterson. Charging Party alleges his punishment was more severe because of his age. These allegations are without merit.

Approximately three weeks prior to the unauthorized drag race, on December 1, 2003, Charging Party received a written warning for failing to carry out a work order of a supervisor and insubordination. That Charging Party had received a written warning, so close in proximity to the December 23, 2003 event, warranted immediate termination rather than suspension. Of the four employees issued suspensions for their involvement in the drag race, not one had a record of disciplinary action, let alone a disciplinary action that occurred within a month of the unauthorized drag race.

MONTGOMERY, MCCRACKEN, WALKER & RHOADS, LLP

Trina R. D. Wheedleton
April 5, 2004
Page 3

      Charging Party's allegations are further refuted by Dover Downs' disciplining of Russell Hands and William Larnick. Mr. Hands, who was 68 at the time of the drag race, received a three-day suspension rather than termination. Mr. Larnick, who was 45, also was suspended rather than terminated. That employees over 40, and in the case of Mr. Hand older than the Charging Party, were not terminated demonstrates Charging Party's age did not motivate or have a determinative influence on the decision to terminate Mr. Peters.

      Those employees terminated for the December 23, 2003 drag race were either driving one of the vehicles (Brian Williams and Ernest Carlisle), or like the Charging Party, had a record of disciplinary actions (Richard L. Williams). The decision by Dover Downs to terminate the Charging Party was legitimate and non-discriminatory. The decision was based solely on Charging Party's misconduct on December 23, 2003 and December 1, 2003.

      The Charging Party's allegations of discrimination based on age are without merit.

      **Conclusion.** For these reasons, Dover Downs requests that the charges be dismissed or a no cause determination issued.

Sincerely,

*Kymberly Hankinson*
Kymberly Hankinson

# EXHIBIT 1



# EMPLOYEE HANDBOOK

*For Employees of*
*Dover Downs Gaming & Entertainment, Inc.*
*and Its Subsidiaries*

EMPLOYEE HANDBOOK FOR DOVER DOWNS GAMING & ENTERTAINMENT, INC. and its SUBSIDIARIES
© 2002 DOVER DOWNS GAMING & ENTERTAINMENT, INC.
ALL RIGHTS RESERVED

# SECTION 6: EMPLOYEE CONDUCT

## 6.01   COMPLIANCE WITH LAWS

We strive to operate in a manner that complies with all applicable laws. This applies to dealings with customers, suppliers, competitors, governmental authorities, employees, shareholders and other security holders, and the general public.

It is our policy to cooperate (and to require that our employees cooperate) with all governmental authorities having jurisdiction over our affairs. Although we strongly believe in providing full service to our customers, if a conflict arises between our basic goals of compliance and customer service, we place legal compliance ahead of our customers. As such, customers shall not be served in any fashion that might involve us in a violation of law. Contact your Manager or the Legal Department if you have any questions.

## 6.02   GUIDELINES FOR APPROPRIATE CONDUCT

You are expected to accept certain responsibilities, adhere to acceptable business principles in matters of personal conduct, and exhibit a high degree of personal integrity at all times as one of our employees. This not only involves respect for the rights and feelings of others but also demands that both in your business and in your personal life you refrain from any behavior that might be harmful to yourself, your co-workers, and/or us, or that might be viewed unfavorably by current or potential customers or by the public at-large. Whether you are on or off duty, your conduct reflects on us. You are, consequently, encouraged to observe the highest standards of professionalism at all times. If your performance, work habits, overall attitude, conduct, or demeanor becomes unsatisfactory in our judgment, based on violations of any of our policies, procedures, rules, or regulations, you will be subject to disciplinary action up to and including termination.

Listed below are types of behavior and conduct we consider inappropriate and which could lead to disciplinary action up to and including termination of employment. It is impossible to list all types of behavior which may lead to corrective action:

### This List Should Not Be Considered All-Inclusive

1. Criminal conduct while either on or off duty.
2. Possession of firearms or other weapons while on our property or while on Company business.
3. Stealing property from co-workers, customers, clients or us.
4. Unauthorized possession, destruction or removal of property belonging to co-workers, customers, clients or us.

5. Unauthorized use of customer facilities and/or privileges either while you are on or off duty.
6. Unauthorized or illegal use of our facilities or equipment.
7. Being unfit for duty.
8. Reporting to work under the influence of alcohol or non-prescribed drugs.
9. Possession of or being under the influence of alcohol or non-prescribed drugs while on duty or on our property.
10. Illegally manufacturing, possessing, using, selling, distributing, or transporting drugs.
11. Bringing or using alcoholic beverages on our property or using alcoholic beverages while engaged in Company business off our property, except where authorized.
12. Discrimination or harassment based on race, color, religion, sex, national origin, age or disability.
13. Violating our electronic information policy.
14. Fighting or using obscene, abusive, or threatening language or gestures.
15. Rudeness or discourtesy to customers or co-workers.
16. Misconduct (e.g., rowdiness).
17. Carelessness or negligence in the performance of your duties.
18. Engaging in insubordination.
19. Refusing to carry out a work assignment or reasonable request by your supervisor or other member of management.
20. Failing to use safety equipment issued to you.
21. Failing to report a work error, accident or injury.
22. Failing to cooperate with a Company investigation.
23. Falsification of your employment application or other Company records or reports.
24. Disclosing any confidential or proprietary information of the Company, a customer, or client.
25. Asking or soliciting a customer for a tip, arguing with another employee over a tip, or not providing the same level of service when a tip is not involved.
26. Misappropriation of Company property or the property of co-workers, customers or suppliers.
27. Engaging in excessive, unnecessary or unauthorized use of our supplies, particularly for personal use.
28. Disregarding safety or security regulations.
29. Leaving your assigned workstation during scheduled working hours without authorization.
30. Excessive absenteeism or lateness or an established pattern of absenteeism or lateness.
31. Signing in or out for another employee.
32. Solicitation or distribution of written material in working areas or during working time.
33. Sleeping or loitering on the job.
34. Smoking on our property while on duty except in a designated smoking area.
35. Parking in public parking lots while on duty.

Certain conduct may subject an employee to IMMEDIATE TERMINATION without prior warning because it is considered so serious. Any violation which does not warrant immediate termination, in our sole discretion, may be handled with a verbal warning, a written warning, and/or suspension without pay for 1 to 3 days. In certain cases, if you are within your first 90 days of employment, you may be terminated in lieu of warnings or suspension.

If you are involved in an incident that involves further investigation, you may be placed on investigative suspension without pay.

At the conclusion of any investigation, you will be advised of our decision with respect to your continued employment.

If you are ARRESTED, you must immediately notify your Manager. Failure to provide such a notice may subject you to termination. Depending upon the charge, you may be placed on investigative suspension without pay. It is our policy to cooperate with investigations of employees conducted by law enforcement or regulatory agencies.

### 6.03. CODE OF BUSINESS CONDUCT

We have a Code of Business Conduct which you are expected to know, understand, and abide by. A copy of this Code is provided to you separately. The Code addresses the following topics:

- Competition (Antitrust Laws)
- Business Accounting Practices
- Conflicts of Interest
- Customer, Supplier and Competitor Relations
- Environment, Health and Safety
- Fair Employment Practices
- Controlled Substance and Alcohol Policy
- Trading in Stock
- Fraud, Bribes and Improper Conduct
- Political Contributions and Political Activity
- Protection of Company Assets
- Protecting Confidential Information
- Compliance With the Code

### 6.04 ATTENDANCE STANDARDS (ABSENTEEISM AND LATENESS)

We expect you to assume diligent responsibility for your attendance and promptness. You must report to work on time and maintain a good attendance record. If you will be absent due to illness, you

# EXHIBIT 2

# DISCIPLINARY WARNING NOTICE

Employee: Williams, Richard  H-8304          Date: 1 December 2003

Department: MAINTENANCE          Position: MECH I

TYPE OF NOTICE ISSUED:
(Note: Depending on the nature of the offense, the Company may bypass any of these steps at it's discretion.)

RECOMMENDED ACTION
- ___ Verbal Warning
- _X_ Written Warning
- ___ Suspension  (From _____ To _____ )
- ___ Termination

Date of Incident: 1 Dec 2003          Incident Reported By: Bob Morrison

**Nature of Incident:** On December 1, 2003 I requested that Richard Williams lead a work force of four employees in their daily activities for that day. This work order is in direct compliance with job description of a Maintenance Mechanic I. Mr. Williams informed me that if he was to be in charge of anybody, he would need more money. He therefore refused to lead this crew. This is a violation of employee conduct as stated in the Employee Handbook on page 26, Number 18 – Engaging in insubordination and number 19 – Refusing to carry out a work assignment or reasonable request by your supervisor or other member of management. You are being issued a Written Warning. Any further conduct of this kind can result in issuing a Final Written Warning and / or your immediate termination.

**TO EMPLOYEE: PLEASE READ CAREFULLY BEFORE SIGNING BELOW:** You are being issued this formal warning notice to bring to your attention the severity of this situation. **THIS WARNING SHOULD NOT BE TAKEN LIGHTLY** and any further violations of Company rules will result in additional action being taken up to and including termination of your employment. If you have any questions regarding this matter, please discuss them with your Department Head.

| * EMPLOYEE'S PRINTED NAME | * EMPLOYEE'S SIGNATURE | DATE |
|---|---|---|
| Williams, Richard   H-8304 | | |

* Signing this form does not imply that you agree with the action taken, only that you are acknowledging receipt of such notice.
* [X] Check here if Employee refuses to acknowledge receipt.

The undersigned (manager/supervisor) has discussed this disciplinary action with above named employee.

| SUPERVISOR' PRINTED NAME | SUPERVISOR'S SIGNATURE | DATE |
|---|---|---|
| BOB MORRISON  H-5369 | Bob Morrison | 1 December 2003 |
| HR REPRESENTATIVE PRINTED NAME | HR REPRESENTATIVE SIGNATURE | DATE |
| MARIE A. ISENBERG | Marie A. Isenberg | 12-12-03 |