**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| RICHARD L. WILLIAMS and ) <br> MICHAEL E. PETERS, ) <br> ) <br>           Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> DOVER DOWNS INC., ) <br> a Delaware Corporation ) <br> ) <br>           Defendant. ) <br> _____) | Civil Action No.: 05-CV-435 (GMS) |

**MEMORANDUM**

**I.    INTRODUCTION**

On June 27, 2005, Plaintiffs Richard L. Williams ("Williams") and Michael E. Peters ("Peters"), (collectively "the plaintiffs") filed this action against Defendants Dover Downs, Inc. ("Dover Downs") and Dover Downs Gaming & Entertainment Inc.,[1] alleging unlawful age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634. (D.I. 1.) On July 21, 2005, the defendants filed their Answer, denying the claim of age discrimination. (D.I. 5.) Presently before the court is Dover Downs' Motion for Summary Judgment ("Motion"). (D.I. 34.) For the following reasons, the court will grant Dover Downs' Motion.

**II.    BACKGROUND**

Williams, age 55, and Peters, age 52, worked for Dover Downs since December 22, 1978 and February 10, 1985, respectively. (D.I. 1, at ¶ 7-8, 12-13.) The plaintiffs were terminated on

---

[1] Dover Downs Gaming & Entertainment Inc. was terminated from this action on October 21, 2005. (D.I. 16.)

December 31, 2003, and they contend that age was a determinative reason for their discharge. (*Id.* at ¶ 7-8, 14.)

At the time of their termination, the plaintiffs worked in the Outside Maintenance Department, as Maintenance Mechanic I's, the highest of three levels of Maintenance Mechanics. (D.I. 36, at 2.) The plaintiffs were expected, among other duties, to "perform[] maintenance service and repairs in the areas of air conditioning/heating, electrical, kitchen, plumbing, machine service, fireboard, carpentry, upholstery, painting, plastering, landscaping, Harness Track preparation, auto track, welding, and general maintenance," "direct tasks for Maintenance Mechanic II & III," and "perform any reasonable tasks as directed by management." (*Id.* at A0064.)

The plaintiffs were supervised by Tom Curtis ("Curtis"), the Outside Maintenance Supervisor, who reported to Robert Morrison ("Morrison") the Outside Maintenance Manager. (D.I. 36, at 3.) Due to Curtis's temporary absence on December 1, 2003, Morrison requested first Williams and then Peters, individually, to lead a work force of four employees in their daily activities for that day. (*Id.* at A0072-75.) Williams declined because "he wanted more money" and Peters declined, stating "I'll do anything else you ask me, I just don't want to be in charge of anybody." (*Id.* at A0045, 37:2-8.) The plaintiffs characterize the incidents as being asked to perform the request, rather than being directed. (*Id.* at A0021 52:10-24; D.I. 41, at B-154, 71:6-16.) Neither Williams nor Peters believed that they had received a command, threat, or directive that had to be completed. (*Id.*) On December 12, 2003, Morrison issued written warnings to Williams and Peters for the incidents of insubordination. (D.I. 36, at A0072-75.) The plaintiffs were both cited for refusing to carry out a work assignment or reasonable request of their supervisor. (*Id.*)

On December 23, 2003, two Dover Downs employees, Ernie Carlisle ("Carlisle") and Brian Williams ("B. Williams"), the son of Plaintiff Richard Williams, raced their personal motor vehicles on Dover Downs property. (D.I. 36, at A0063, 23:5.) Six employee spectators were present at the drag race, including the plaintiffs, Williams and Peters. (D.I. 35, at 7.) Carlisle and B. Williams raced their cars three times on Pit Road at approximately 80 to 90 miles per hour. (D.I. 36 at A0063, 23:10-19.) On the fourth attempt, B. Williams "failed to negotiate the curve at the end of Pit Road and hit the inside of the ad wall [a wall with advertising] with the left front of his car." (*Id.* at A0063, 32:20-22; D.I. 41, at B156, 103:24, 104:1-2.) B. Williams was injured in the crash and taken away by ambulance. (*Id.* at A0026, 85:9-11.)

Of the two plaintiffs, Peters was the first to arrive at the race site. (D.I. 41, at B-156 101:5-7.) After Peters parked his van at the entrance gate,[2] Williams arrived in his company owned pick up truck. (*Id.*) Peters described Williams as parking "across the gate," (*Id.* at B-156, 101:5-24, 102:1), which Williams does not dispute, because he was "trained" to block the gate in this way "anytime activity is on the speedway" to protect "spectators, dogs, kids . . . [from] coming down through there." (D.I. 36, at A0024, 80:18-24.)

The following four employee observers received a suspension for watching the race: Russell Hands, age 68, Maintenance Mechanic II; William Larnick, age 45, Maintenance Mechanic II; Michael Monahan, age 38, Maintenance Mechanic I; John Patterson, age 24, Maintenance Mechanic III. (D.I. 35, at 7.) Unlike the aforementioned witnesses, Williams and Peters were suspended and

---

[2]Peters disputes Dover Downs' contention that he was blocking the gate entrance to the race site. (D.I. 40, at 6.)

later terminated.[3] (D.I. 41, at B-105-09.) Dover Downs cited the following reasons for Williams' termination:

> As you know, you were issued a written warning on December 12, 2003 for insubordination and refusal to carry out a work request by your Manager. Eleven days after that warning was issued, on December 23, 2003, you were present during a "drag race" on Pit Road of the Dover International Speedway . . . . In a conversation with Joe McNair, Security Investigator, on that same day, you admitted that you pulled your work vehicle next to Michael Peters' work vehicle, which was stationed at Gate 1, and that you thought that was a good idea since that would prevent anyone from coming in during the race. In addition, it was reported by several witnesses that the employees raced 3.5 times down Pit Road. At no[] time during these 3.5 "runs" did you report this event to Management or Security, or attempt to stop it from happening. As a Mechanic I it is your responsibility to report any suspicious, unsafe or reckless behavior of any type involving your fellow co-workers. You did not report this behavior to anyone. In view of the fact that you had very recently been issued a written warning for insubordination, and the fact that you did not report this very serious incident, you are hereby terminated.

(*Id.* at B-105.) Dover Downs provided the same rationale for the termination of Peters and stated further:

> It has been reported that your work vehicle, which was stationed at Gate 1, was positioned so as to block anyone from getting on to the track.

(*Id.* at B-107.)

The ultimate decision to terminate the plaintiffs rested with Chief Operating Officer Edward Sutor ("Sutor").[4] (D.I. 36, at A0053, 14:22-24, 15:1-10.) Sutor testified in his deposition that he considered the plaintiffs more culpable than the remaining spectators because he believed "they had a greater degree of responsibility for reporting things because of their age and experience. And . . . there was a gentleman's son . . . involved in the illegal activity. I thought they should have stopped

---

[3]B. Williams and Carlisle were also terminated for their participation in the incident.

[4]The evidence suggests that Vice President of Human Resources, Robin Roberts ("Roberts") was involved in the termination decision; however, Sutor clarified that Roberts did not approve his decision. (D.I. 36, at A0053 15:2.)

it and reported it." (*Id.* at A0057, 48:7-13.) Sutor explained that "[s]omeone who has 25 years of experience in this type of business should understand that that illegal activity is not only forbidden by the company but unsafe." (*Id.* at A0059 53:1-4.) As to Sutor's mention of age, he testified that age and experience, "sometimes . . . go hand in hand." (*Id.* at A0058 52:15-16.) When asked, however, if he had a "higher standard for employees who are older," Sutor responded, "[n]o." (*Id.* at A0058, 52:17-19.)

Sutor determined that Williams and Peters were not merely observers, like those suspended, but participants. "The mere parking of his vehicle in such a manner as to block other management personnel, citizens from seeing what was going on, to me, was a severe breach of responsibility by a person at that level, meaning that they were trying to protect that knowledge from getting to the proper personnel." (D.I. 36, at A0059, 55:10-15.)

When asked to explain the relevance of the plaintiffs' prior incidents of insubordination, Sutor said: "Very little. The incident itself was of such an egregious nature that the insubordination warnings were just piling on for what I consider – I would have made that decision regardless of the prior incident. But it did come up during the discussion that it occurred within a short time frame of when this activity occurred." (D.I. 36, at A0055, 26:10-16.)

The plaintiffs filed a charge of discrimination with the Delaware Department of Labor ("DDOL") and the United States Equal Employment Opportunity Commission ("EEOC"). (D.I. 5, at ¶ 19-20, Exh. A, B.) In an April 5, 2004 position statement, Dover Downs asserted the same position previously stated that the "decision" to terminate the plaintiffs "was based solely on the [plaintiffs'] misconduct on December 23, 2003 and December 1, 2003." (D.I. 41, at B-1.) Dover Downs reiterated that position in letters submitted to the DDOL on December 23, 2004, and January

5

28, 2005. (*Id.* at B-14, 36.) On February 22, 2005, DDOL issued a "Final Determination and Right to Sue Notice" with a "Reasonable Cause Determination." (*Id.* at B-38.)

## III.    STANDARD OF REVIEW

"Summary judgment is proper when, viewing the evidence in the light most favorable to the nonmovant, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *DeGrange v. West*, 196 Fed. Appx. 91, 93 (3d Cir. 2006) (citing *Saldana v. Kmart Corp.*, 260 F.3d 228, 231 (3d Cir. 2001)). When deciding a motion for summary judgment, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Saldana*, 260 F.3d at 232 (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994)). "A court should find for the moving party "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Saldana*, 260 F.3d at 232 (3d Cir. 2001) (citations omitted). "The party opposing summary judgment 'may not rest upon the mere allegations or denials of the . . . pleading'; its response, 'by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (citations omitted).

## IV.    DISCUSSION

It is unlawful under the ADEA "for an employer to fire a person who is at least forty years old because of his or her age." 29 U.S.C. §§ 623(a), 631(a). "To prevail on an ADEA termination claim, a plaintiff must show that his or her age 'actually motivated' and 'had a determinative influence on' the employer's decision to fire him or her." *Fakete,* 308 F.3d at 337 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000)). Age discrimination allegations

brought under the ADEA are analyzed under either the *Price Waterhouse* burden-shifting framework (for cases involving "direct evidence" of discrimination), or the *McDonnell Douglas* burden-shifting framework (for cases involving "indirect evidence" of discrimination). *Peace v. Shellhorn & Hill, Inc.*, 2005 WL 408052, *3 (D. Del. Feb. 18, 2005). *See also*, *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

### A.    *Price Waterhouse* Analysis

*Price Waterhouse* is applicable when an ADEA plaintiff presents direct evidence that age was a substantial factor in the decision to terminate. *Fakete*, 308 F.3d at 338. "Direct evidence" is defined as "evidence sufficient to allow the jury to find that the decision makers placed substantial negative reliance on [the plaintiff's age] in reaching their decision to fire him." *Id.* (internal quotations and citations omitted). "Such evidence leads not only to a ready logical inference of bias but also to a rational presumption that the person expressing bias acted on it when he made the challenged employment decision." *Id.* (internal quotations and citations omitted). The statements, constituting direct evidence, need not be made contemporaneously with the adverse employment decision, despite the fact that they are circumstantial evidence that an impermissible motive substantially motivated the decision. *Id.* at 339. Once the plaintiff presents direct evidence, "the burden of persuasion on the issue of causation shifts, and the employer must prove that it would have fired the plaintiff even if it had not considered his age." *Id.* (citing *Price Waterhouse*, 490 U.S. at 265-66).

The Third Circuit, in *Fakete*, had "little difficulty" finding that a reasonable jury could have found that age was more likely than not a substantial factor in the defendant's decision to fire the plaintiff. *Fakete*, 308 F.3d at 339. The court considered the import of the employer's statement that

7

he was "looking for young single people" and that as a consequence the plaintiff, Fakete, "wouldn't be happy [at Aetna] in the future." *Id.* Despite the district court's conclusion that this "was a stray remark that did not directly reflect the decision making process of any particular employment decision," on review, the Third Circuit found that the "statement show[ed] that Larkin preferred 'younger' employees and planned to implement his preference by getting rid of Fakete. *Id.* Further, "a reasonable jury could find that Larkin's statement was a clear, direct, warning to Fakete that he was too old to work for Larkin and that he would be fired soon if he did not leave Aetna on his own initiative." *Id.*

Plaintiff's contention that *Price Waterhouse* applies in this case rests largely upon Sutor's statement that: "I [Sutor] believe that they [the plaintiffs] had a greater degree of responsibility for reporting things because of their supervisory capacity, because of their age and experience . . . I thought they should have stopped it and reported it."[5] (D.I. 36, A0057, 48:7-13.) Sutor explained that "sometimes they go hand in hand, age and experience," but there is no higher standard for employees who are older. (*Id.* at A0058, 52:15-19.)

Unlike *Fakete*, a reasonable jury would not find that Sutor's statement was a clear, direct statement revealing that age was the basis for termination. At best, Sutor's comment suggests that, given Williams' and Peters' seniority at Dover Downs, they should have reported the drag race to Management or Security. When Sutor used the term "age," he did not reveal that age played a substantial, or even minor, role in the decision making process. Instead, he provided insight into

---

[5] Williams and Peters contend that Dover Downs gave inconsistent reasons for terminating the plaintiffs. These statements do not rise to the level of direct evidence and the court does not find that they are inconsistent. The court will address the issue more fully under the *McDonnell Douglas* analysis, *infra*.

why he, Sutor, expected the plaintiffs to report the dangerous activity. Sutor felt that "[s]omeone who has 25 years of experience in this type of business should understand that [drag-racing] is not only forbidden by the company, but unsafe." (*Id.* at A0059, 53:1-4.)

The United States Supreme Court explained that "because age and years of service are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily 'age based.'" *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993). *See also*, *Baselice v. Philadelphia Fed'n of Teachers Health & Welfare Fund*, C.A. No. 01-477, 2002 U.S. Dist. LEXIS 7696, *24 (E.D. Pa. May 1, 2002) ("Seniority is a distinct factor from age and one which, when not used as a proxy for age is permissible."); *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1087 (3d Cir. 1992) (finding "[t]he ADEA targets discrimination against employees who fall within a protected age category, not employees who have attained a given seniority status"). In the case of Williams and Peters, years of service and experience weighed heavily on Sutor, who expected that the most senior employees would have the wherewithal to report such dangerous and illegal activity. The plaintiffs have failed to present direct evidence such that a reasonable jury could find that age was a substantial factor in the decision to fire them.

### B.     *McDonnell Douglas* Analysis

Under the *McDonnell Douglas* framework, the plaintiff "bears the initial burden of 'establishing a *prima facie* case of unlawful discrimination.'" *Peace v. Shellhorn & Hill, Inc.,* C.A. 03-1007-GMS, 2005 WL 408052, *3 (D. Del. Feb. 18, 2005) (citing *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994)). The plaintiff must "produce evidence that (1) he was 40 years old or older at the time of termination (2) he was qualified for the position, (3) he was terminated, and (4) he was

replaced by a sufficiently younger person to create an inference of age discrimination." *Peace*, 2005 WL 408052, *3 (citing *Keller v. Orix Credit Alliance*, 130 F.3d 1101, 1108 (3d Cir. 1997).

If the plaintiff can "successfully establish[] a *prima facie* case, the burden shifts to the defendant to proffer a nondiscriminatory reason for the plaintiff's termination." *Peace*, 2005 WL 408052, *3 (citing *Fuentes*, 32 F.3d at 763). "The defendant need not 'persuade' the factfinder that the reason offered was its true reason; it must merely 'articulate[]' such a reason." *Clancy v. Preston Trucking Co., Inc.*, 967 F. Supp. 806, 810 (D. Del. 1997). "The burden then shifts back to the plaintiff to 'point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated reasons (*Fuentes* prong 1); or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action (*Fuentes* prong 2).'" *Peace*, 2005 WL 408052, *3 (citing *Fuentes*, 32 F.3d at 764).

Under the first prong of *Fuentes*, "[t]o discredit the employer's proffered reason, . . . the plaintiff[s] cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer was wise, shrewd, prudent, or competent." *Fuentes*, 32 F.3d at 765 (citations omitted). "[T]he non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions, in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Id.* (internal quotations and citations omitted). The court recognizes that this is a difficult burden on the plaintiff, however, "[i]t arises from an inherent tension between the goal of all discrimination law and our society's commitment to free decisionmaking by the private sector in economic affairs." *Id.* (internal

quotations and citations omitted). Alternatively, under the second prong, the plaintiff "must point to evidence that proves age discrimination in the same way that critical facts are generally proved—based solely on the natural probative force of the evidence." *Peace*, 2005 WL 408052, *3 (citing *Keller*, 130 F.3d at 1111). Therefore, in order to survive summary judgment, Williams and Peters must present sufficient evidence under one of the two *Fuentes* prongs. *Peace*, 2005 WL 408052, *4.

Dover Downs does not contest for the purpose of the Motion that the plaintiffs have established a *prima facie* case of age discrimination.[6] The court accepts as true that (1) Williams was 55 and Peters was 52, (D.I. 1, at ¶ 12-13, D.I. 5, at ¶ 12-13); (2) they were qualified for the position of Mechanic I; (3) they were terminated by Dover Downs, (D.I. 1, at ¶ 12-13, D.I. 5, at ¶ 12-13), and; (4) they were replaced by sufficiently younger people. The burden, therefore, shifts to Dover Downs to proffer a nondiscriminatory reason for the plaintiffs' termination. Dover Downs maintains that the plaintiffs were terminated due to the recency of their prior insubordination, their participation in the drag race, and their failure as senior employees at Dover Downs to report the incident.

While the court agrees that this is a legitimate reason, that determination, alone, does not entitle Dover Downs to summary judgment. The inquiry shifts back to the plaintiffs. Under the first prong of *Fuentes*, Williams and Peters suggest that Sutor's subsequent explanations for the terminations contradicts prior statements; therefore, there is reason to disbelieve the employer's

---

[6]As noted by the plaintiffs, Dover Downs makes no argument that the plaintiffs do not have a *prima facie* case of discrimination under *McDonnell Douglas*. Dover Downs hinges the bulk of its analysis on its belief that "Plaintiffs' claim cannot pass the requisite test to survive summary judgment, as Dover Downs had a legitimate, nondiscriminatory reason for terminating their employment - which Plaintiffs cannot rebut." (D.I. 35, at 9, D.I. 42, at 6-8.)

11

articulated reasons. Specifically, the plaintiffs believe that the termination notices cite the plaintiffs' prior insubordination as a reason for termination and this is contradicted by Sutor's deposition statement that the prior insubordination had "[v]ery little" relevance to the decision. (D.I. 36, at A0055, 26:10-16.)

The court finds, however, that the employer's reasons for terminating the plaintiffs are not inconsistent. Each termination notice stated clearly that the employer perceived that Peters and Williams participated in the drag race and "[i]n view of the fact that [they] had very recently been issued a written warning for insubordination, and the fact that [they] did not report this very serious incident, [they] are hereby terminated." (D.I. 41, at B-105-09.) The employer took the same position in its April 5, 2004 position statement and other letters addressed to the DDOL that the "decision" to terminate the plaintiffs "was based solely on the [plaintiffs'] misconduct on December 23, 2003 and December 1, 2003." (*Id.* at B-1, 14, 36.) While Sutor stated that the incidents had "very little" relevance, the incidents "did come up" because they "occurred within a short time frame of when this activity occurred." (D.I. 36, at A0055, 26:10-16.) While the plaintiffs may perceive this as a "flip-flop," the court finds that the position of Dover Downs has remained consistent. The plaintiffs were terminated because of their very recent notices of insubordination and their perceived participation in the drag race.

The court will not determine whether Dover Downs correctly decided that Williams and Peters participated in the drag race. The court must, instead, find whether inconsistencies exist such that there is a reason to disbelieve the employer's articulated reasons. There is no such inconsistency in this case such that a reasonable factfinder could rationally find Dover Downs' reasons for firing the plaintiffs unworthy of credence.

12

Under prong two of *Fuentes*, the plaintiffs must show evidence from which a factfinder could reasonably disbelieve that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action. The plaintiffs most persuasive evidence is Sutor's statement, in which he uses the word "age." The court has determined that this statement, at best, reflects the employer's interest in the senior status and experience of the plaintiffs rather than their ages. Further, the plaintiffs were not the oldest employees disciplined. Russell Hands, at 68 years of age, was the oldest employee present at the race. He was suspended, not fired. This fact belies Dover Downs' contention that age was a motivating factor in the plaintiffs' dismissal.

While Williams and Peters contend that one could make a "reasonable inference . . . that defendant used the non-insubordination incident to set plaintiffs up for the termination that followed approximately two weeks later," there is no evidence that the employer could have contemplated such a scheme by predicting a major supervening incident like an illegal drag race on company property. The court accepts Dover Downs's position that the drag race was significant. Even if Dover Downs misconstrued the actions of Williams and Peters as participation in the drag race, the fact of the matter is that Dover Downs believed that two of its senior Maintenance Mechanics I's, with over 40 years of combined experience, were involved and did not take any steps to notify Management or Security of a dangerous and illegal activity on company grounds.

**V.    CONCLUSION**

Because Williams and Peters have failed to carry their burden under both *Price Waterhouse* and *McDonnell Douglas* analyses, the court will grant Dover Downs' motion for summary judgment.


Dated: May 2, 2007                                         /s/ Gregory M. Sleet
                                                                        UNITED STATES DISTRICT JUDGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RICHARD L. WILLIAMS and MICHAEL E. PETERS, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>DOVER DOWNS INC., )<br>a Delaware Corporation )<br>)<br>Defendant. )<br>_____) | Civil Action No.: 05-CV-435 (GMS) |

### **ORDER**

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:

1. The Defendant's Motion for Summary Judgment is GRANTED.

2. The above-captioned action is DISMISSED.


Dated: May 2, 2007                                /s/ Gregory M. Sleet
                                                  UNITED STATES DISTRICT JUDGE